IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| AMERICAN PHYSICIAN PARTNERS, LLC, *et al.*,[1] | ) Case No. 23-11469 (___) |
| | ) |
| Debtors. | ) (Joint Administration Requested) |
| | ) |

**DEBTORS' APPLICATION FOR ENTRY OF AN ORDER (I) APPROVING THE RETENTION AND APPOINTMENT OF EPIQ CORPORATE RESTRUCTURING, LLC AS THE CLAIMS AND NOTICING AGENT TO THE DEBTORS, EFFECTIVE *NUNC PRO TUNC* TO THE PETITION DATE, AND (II) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") hereby submit this application (this "Section 156(c) Application"), pursuant to section 156(c) of title 28 of the United States Code, section 105(a) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2002 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rules 2002-1(f) and 9013-1(m) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), and the Bankruptcy Court's *Protocol for the Employment of Claims and Noticing Agents under 28 U.S.C. § 156(c)*, instituted by the Office of the Clerk of the Bankruptcy Court (the "Clerk") on February 1, 2012 (the "Claims Agent Protocol"), seeking entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), appointing Epiq Corporate Restructuring, LLC ("Epiq") as the claims and noticing agent in the Debtors' chapter 11 cases (the "Claims and Noticing Agent") effective as of the Petition Date (as defined below). In support of this Section 156(c) Application, the Debtors rely upon the *Declaration of Kathryn Tran*

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/AmericanPhysicianPartners. The location of American Physician Partners, LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 5121 Maryland Way, Suite 300, Brentwood, TN 37027.

*in Support of Application of Debtors for Entry of Order Appointing Epiq Corporate Restructuring, LLC as Claims and Noticing Agent Effective as of Petition Date* (the "Tran Declaration"), a copy of which is attached hereto as **Exhibit B**. In further support of this Section 156(c) Application, the Debtors respectfully state as follows:

## Jurisdiction and Venue

1. The United States District Court for the District of Delaware has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, which was referred to the United States Bankruptcy Court for the District of Delaware (the "Court") under 28 U.S.C. § 157 pursuant to the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent pursuant to Local Rule 9013-1(f) to the entry of a final order by the Court in connection with this Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2. Venue in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for the relief requested herein are section 156(c) of title 28 of the United States Code, section 105(a) of the Bankruptcy Code, Bankruptcy Rule 2002, Local Rules 2002-1(f) and 9013-1(m), and the Claims Agent Protocol.

## General Background

4. On the date hereof (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases"). The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee

or examiner has been made in the Chapter 11 Cases, and no committees have been appointed or designated.

5.      Founded in 2015, the Debtors were one of the fastest growing, scaled emergency department and hospitalist management platforms in the U.S. Headquartered in Brentwood, the Debtors had management and related contracts with more than 100 hospitals (including freestanding emergency departments) and other sites in fifteen states primarily in the southeastern, midwestern and southwestern United States, utilizing over 2,500 physicians who served over 4 million patients each year. Prior to the Petition Date, the Debtors explored alternative strategies to address cash shortfalls, including the refinancing of existing secured indebtedness and a potential sale of substantially all the Debtors' service contracts and other assets. Such efforts by the Debtors proved to be unsuccessful despite extensive negotiations with multiple parties. In July 2023, the Debtors made the difficult decision to begin transitioning substantially all of their medical service contracts to alternative service providers (competitors) and its health system hospital partners (customers), in order to avoid any interruptions in its critical life-saving service to the patients. After successfully transitioning all its medical service contracts without interruption, the Debtors have commenced these bankruptcy cases to facilitate and complete the wind-down process and liquidate their remaining assets in an orderly fashion.

6.      A detailed description of the Debtors' business and the facts precipitating the filing of the Chapter 11 Cases are set forth in the *Declaration of John C. DiDonato in Support of the Debtors' Chapter 11 Petitions and First Day Relief* (the "<u>First Day Declaration</u>"), which is incorporated herein by reference.[2]

---

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

**Relief Requested**

7. By this Section 156(c) Application, the Debtors seek entry of the Proposed Order appointing Epiq, effective as of the Petition Date, to act as the claims and noticing agent in the Chapter 11 Cases to assume full responsibility for the distribution of notices and the maintenance, processing, and docketing of proofs of claim filed in the Chapter 11 Cases. The terms of Epiq's proposed retention are set forth in that certain Standard Services Agreement between Epiq and the Debtors, dated as of June 30, 2023 (the "Engagement Agreement"),[3] a copy of which is attached hereto as **Exhibit C**. Notwithstanding the terms of the Engagement Agreement, the Debtors are seeking to retain Epiq solely on the terms set forth in this Section 156(c) Application and the Proposed Order.

8. Although the Debtors have not yet filed their schedules of assets and liabilities, they anticipate that there will be in excess of 9,000 entities to be noticed. Local Rule 2002-1(f) provides that "[i]n all cases with more than 200 creditors or parties in interest listed on the creditor matrix, unless the Court orders otherwise, the debtor shall file [a] motion [to retain a claims and noticing agent] on the first day of the case or within seven (7) days thereafter." In view of the number of anticipated claimants and the complexity of the Debtors' businesses, the Debtors submit that the appointment of a claims and noticing agent is required by Local Rule 2002-1(f) and is otherwise in the best interests of both the Debtors' estates and their creditors.

9. By separate application, the Debtors may seek authorization to retain and employ Epiq as administrative advisor in the Chapter 11 Cases pursuant to section 327(a) of the

---

[3] Epiq has agreed to provide claims and noticing services to the Debtors at the rates stated on the pricing schedule attached to the Engagement Agreement. Epiq may provide such services at the same rates to counsel for any official committee appointed in these chapter 11 cases, and any other party in interest upon request.

Bankruptcy Code, as the administration of the Chapter 11 Cases may require Epiq to perform duties outside the scope of 28 U.S.C. § 156(c).

### Epiq's Qualifications and Need for Epiq's Services

10. Epiq is one of the country's leading chapter 11 administrators, with significant expertise in noticing, claims administration, soliciting, balloting, and facilitating other administrative aspects of chapter 11 cases. Epiq has acted as the claims and noticing agent in numerous recent cases of varying size and complexity, including a number of recent cases filed in this District.[4]

11. The appointment of Epiq as the Claims and Noticing Agent in these Chapter 11 Cases will expedite the distribution of notices and the processing of claims, facilitate other administrative aspects of these Chapter 11 Cases, and relieve the Clerk of the administrative burden of processing what may be an overwhelming number of claims. The Debtors believe that the appointment of Epiq as the Claims and Noticing Agent will thus serve to maximize the value of the Debtors' estates for all stakeholders.

---

[4] *See, e.g.*, *In re Armstrong Flooring, Inc.*, No. 22-10426 (MFW) (Bankr. D. Del. May 8, 2022); *In re Gulf Coast Health Care, LLC*, No. 21-11336 (KBO) (Bankr. D. Del. Oct 14, 2021); *In re Alamo Drafthouse Cinemas Holdings, LLC*, No. 21-10474 (MFW) (Bankr. D. Del. Mar. 3, 2021); *In re RTI Holding Co., LLC*, No. 20-12456 (JTD) (Bankr. D. Del. Oct 7, 2020); *In re Town Sports Int'l LLC*, No. 20-12168 (CSS) (Bankr. D. Del. Sept. 16, 2020); *In re RGNGroup Holdings, LLC*, No. 20-11961 (BLS) (Bankr. D. Del. Aug. 19, 2020); *In re Tonopah Solar Energy, LLC*, No. 20-11884 (KBO) (Bankr. D. Del. July 31, 2020); *In re Lucky Brand Dungarees, LLC*, No. 20-11768 (CSS) (Bankr. D. Del. July 6, 2020); *In re Advantage Holdco, Inc.*, No. 20-11259 (JTD) (Bankr. D. Del. May 29, 2020); *In re BroadVision, Inc.*, No. 20-10701 (CSS) (Bankr. D. Del. Apr. 1, 2020); *In re Earth Fare, Inc.*, No. 20-10256 (KBO) (Bankr. D. Del. Feb. 6, 2020); *In re Southland Royalty Co. LLC*, No. 20-10158 (KBO) (Bankr. D. Del. Jan. 29, 2020); *In re RUI Holding Corp.*, No. 19-11509 (JTD) (Bankr. D. Del. Jul. 7, 2019); *In re THG Holdings LLC*, No. 19-11689 (JTD) (Bankr. D. Del. Jul 30, 2019); *In re HDR Holding, Inc.*, No. 19-11396 (MFW) (Bankr. D. Del. Jun. 24, 2019); *In re Joerns WoundCo Holdings, Inc.*, No. 19-11401 (JTD) (Bankr. D. Del. June 24, 2019); *In re Insys Therapeutics, Inc.*, No. 19-11292 (KG) (Bankr. D. Del. Jun 10, 2019); *In re The Weinstein Company Holdings LLC*, No. 18-10601 (MFW) (Bankr. D. Del. Apr. 18, 2018).

**Scope of Services Provided**

12. This Section 156(c) Application pertains only to the services to be performed by Epiq under the Clerk's delegation of duties permitted by 28 U.S.C. § 156(c) and Local Rule 2002-1(f). Any services to be performed by Epiq that are set forth in the Engagement Agreement but outside of the scope of 28 U.S.C. § 156(c) are not covered by this Section 156(c) Application or by the Proposed Order. Specifically, Epiq will perform the following tasks in its role as the Claims and Noticing Agent, as well as all quality control relating thereto (collectively, the "Claims and Noticing Services"), to the extent requested by the Debtors:

   a. Prepare and serve required notices and documents in the Chapter 11 Cases in accordance with the Bankruptcy Code and the Bankruptcy Rules in the form and manner directed by the Debtors or the Court, including, if applicable: (i) notice of the commencement of the Chapter 11 Cases and the initial meeting of creditors under section 341(a) of the Bankruptcy Code (as applicable); (ii) notices of transfers of claims; (iii) notices of objections to claims and objections to transfers of claims; (iv) notice of any auction or sale proceeding; (v) notices of any hearings on a disclosure statement and confirmation of a plan or plans of reorganization, including under Bankruptcy Rule 3017(d); (vi) notice of the effective date of any plan or plans; and (vii) all other notices, orders, pleadings, publications, and other documents as the Debtors or the Court may deem necessary or appropriate for an orderly administration of the Chapter 11 Cases;

   b. If applicable, maintain an official copy of the Debtors' schedules of assets and liabilities and statements of financial affairs listing the Debtors' known creditors and the amounts owed thereto;

   c. Maintain: (i) a list of all potential creditors, equity holders, and other parties in interest; and (ii) a "core" mailing list consisting of all parties described in Bankruptcy Rules 2002(i), (j), and (k) and those parties that have filed a notice of appearance pursuant to Bankruptcy Rule 9010; update said lists and make said lists available upon request by a party in interest or the Clerk (within forty-eight (48) hours);

   d. Furnish a notice to all potential creditors of the last date for the filing of proofs of claim and a form for the filing of a proof of claim;

   e. Maintain a post office box or address for the purpose of receiving claims and returned mail, and process all mail received;

f.     For all notices, motions, orders, and other pleadings or documents served, prepare and file or caused to be filed with the Clerk an affidavit or certificate of service within seven (7) business days of service that includes: (i) either a copy of the notice served or the docket number(s) and title(s) of the pleading(s) served; (ii) a list of persons to whom it was mailed (in alphabetical order) with their addresses; (iii) the manner of service; and (iv) the date served;

g.     Process all proofs of claim received, including those received by the Clerk, check said processing for accuracy, and maintain the original proofs of claim in a secure area;

h.     Maintain an electronic platform for purposes of filing proofs of claim;

i.     Maintain the official claims register for the Debtors (the "Claims Register") on behalf of the Clerk; upon the Clerk's request, provide the Clerk with a certified, duplicate unofficial Claims Register; and specify in the Claims Register the following information for each claim docketed: (i) the claim number assigned; (ii) the date received; (iii) the name and address of the claimant and agent, if applicable, who filed the claim; (iv) the amount asserted; (v) the asserted classification(s) of the claim (*e.g.*, secured, unsecured, priority, etc.); and (vi) any disposition of the claim;

j.     Provide public access to the Claims Register, including complete proofs of claim with attachments, if any, without charge;

k.     Implement necessary security measures to ensure the completeness and integrity of the Claims Register and the safekeeping of the original proofs of claim;

l.     Record all transfers of claims and provide any notices of such transfers as required by Bankruptcy Rule 3001(e);

m.     File a quarterly updated claims register with the Court in alphabetical and numerical order; if there has been no claims activity, file a Certification of No Claim Activity;

n.     Relocate, by messenger or overnight delivery, all of the Court-filed proofs of claim to Epiq's offices, not less than weekly;

o.     Upon completion of the docketing process for all claims received to date for each case, turn over to the Clerk copies of the Claims Register for the Clerk's review (upon the Clerk's request);

p. Monitor the Court's docket for all notices of appearance, address changes, and claims-related pleadings and orders filed, and make necessary notations on, or changes to, the Claims Register and any service or mailing lists, including to identify and eliminate duplicate names and addresses from such lists;

q. Identify and correct any incomplete or incorrect addresses in any mailing or service lists;

r. Assist in the dissemination of information to the public and respond to requests for administrative information regarding the Chapter 11 Cases as directed by the Debtors or the Court, including through the use of a case website or call center;

s. Monitor the Court's docket in the Chapter 11 Cases and, when filings are made in error or containing errors, alert the filing party of such error and work with such party to correct any such error;

t. If the Chapter 11 Cases are converted to cases under chapter 7 of the Bankruptcy Code, contact the Clerk's office within three (3) days of the notice to Epiq of entry of the order converting the Chapter 11 Cases;

u. Thirty (30) days prior to the closing of the Chapter 11 Cases, to the extent practicable, request that the Debtors submit to the Court a proposed order dismissing Epiq as Claims and Noticing Agent and terminating its services in such capacity upon completion of its duties and responsibilities and upon the closing of the Chapter 11 Cases;

v. Within fourteen (14) days of notice to Epiq of entry of an order dismissing or converting the Chapter 11 Cases, or within twenty-eight (28) days of entry of a final decree closing the Chapter 11 Cases: Epiq shall (a) forward to the Clerk an electronic version of all imaged claims, (b) upload the creditor mailing list into CM/ECF and (c) docket a Final Claims Register; and

w. Within the earlier to occur of (a) fourteen (14) days of entry of an order converting the chapter 11 cases and (b) entry of a termination order, Epiq shall (i) forward to the Clerk an electronic version of all imaged claims; (ii) upload the creditor mailing list into CM/ECF and (iii) docket a Final Claims Register.

13. The Claims Register shall be open to the public for examination without charge during regular business hours and on a case-specific website maintained by Epiq.

**Professional Compensation**

14. The Debtors are proposing to compensate Epiq for the Claims and Noticing Services set forth above in accordance with the pricing schedule attached to the Engagement Agreement. The Debtors respectfully request that the undisputed fees and expenses incurred by Epiq in the performance of the Claims and Noticing Services be treated as administrative expenses of the Debtors' chapter 11 estates pursuant to 28 U.S.C. § 156(c) and section 503(b)(l)(A) of the Bankruptcy Code, and that such fees and expenses be paid in the ordinary course of business without further application to or order of the Court.

15. Epiq agrees to maintain records of all Claims and Noticing Services, including dates, categories of Claims and Noticing Services, fees charged, and expenses incurred, and to serve monthly invoices on the Debtors, the Office of the United States Trustee, counsel for the Debtors, counsel for any statutory committee, and any party in interest that specifically requests service of the monthly invoices. If any dispute arises relating to the Engagement Agreement or monthly invoices, the parties shall meet and confer in an attempt to resolve the dispute. If resolution is not achieved, the parties may seek resolution of the matter from the Court.

16. Before the Petition Date, the Debtors provided Epiq a retainer in the amount of $25,000.00. Epiq seeks first to apply the retainer to all prepetition invoices, which retainer shall be replenished to the original retainer amount of $25,000.00 and, thereafter, to hold the retainer as security of payment of Epiq's final invoice for services rendered and expenses incurred in performing the Claims and Noticing Services.

17. Additionally, under the terms of the Engagement Agreement, the Debtors have agreed to indemnify, defend, and hold harmless Epiq and its members, directors, officers, employees, representatives, affiliates, consultants, subcontractors, and agents under certain

circumstances specified in the Engagement Agreement, except in circumstances resulting solely from Epiq's gross negligence or willful misconduct or as otherwise provided in the Engagement Agreement or Proposed Order. The Debtors believe that such an indemnification obligation is customary, reasonable, and necessary to retain the services of a Claims and Noticing Agent in these Chapter 11 Cases.

## Epiq's Disinterestedness

18. Although the Debtors do not propose to employ Epiq under section 327 of the Bankruptcy Code pursuant to this Section 156(c) Application (such retention may be sought by separate application), Epiq has nonetheless reviewed its electronic database to determine whether it has any relationships with the creditors and parties in interest provided by the Debtors, and, to the best of the Debtors' knowledge, information, and belief, and except as disclosed in the Tran Declaration, Epiq has represented that it neither holds nor represents any interest materially adverse to the Debtors' estates in connection with any matter on which it would be employed.

19. Moreover, in connection with its retention as Claims and Noticing Agent, Epiq represents in the Tran Declaration, among other things, that:

   a. Epiq is not a creditor of the Debtors;

   b. Epiq will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the Claims and Noticing Agent in the Chapter 11 Cases;

   c. By accepting employment in the Chapter 11 Cases, Epiq waives any rights to receive compensation from the United States government in connection with the Chapter 11 Cases;

   d. In its capacity as the Claims and Noticing Agent in the Chapter 11 Cases, Epiq will not be an agent of the United States and will not act on behalf of the United States;

  e. Epiq will not employ any past or present employees of the Debtors in connection with its work as the Claims and Noticing Agent in the Chapter 11 Cases;

  f. Epiq is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code with respect to the matters upon which it is engaged;

  g. In its capacity as Claims and Noticing Agent in the Chapter 11 Cases, Epiq will not intentionally misrepresent any fact to any person;

  h. Epiq shall be under the supervision and control of the Clerk's office with respect to the receipt and recordation of claims and claim transfers;

  i. Epiq will comply with all requests of the Clerk's office and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c); and

  j. None of the services provided by Epiq as Claims and Noticing Agent in the Chapter 11 Cases shall be at the expense of the Clerk's office.

20. In view of the foregoing, the Debtors believe that Epiq is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code.

21. Epiq will supplement its disclosure to the Court if any facts or circumstances are discovered that would require such additional disclosure.

## Compliance with Claims Agent Protocol

22. This Application complies with the Claims Agent Protocol and substantially conforms to the standard Application in use in this Court. In accordance with the Claims Agent Protocol, prior to the selection of Epiq as the Claims and Noticing Agent, the Debtors reviewed and compared engagement proposals from three court-approved Claims and Noticing Agents, including Epiq, to ensure selection through a competitive process. The Debtors submit, based on all engagement proposals obtained and reviewed, that Epiq's rates, as set forth in the Engagement Agreement, are competitive and reasonable given its quality of services and expertise.

23. Based on the foregoing, the Debtors submit that they have satisfied the requirements of 28 U.S.C. § 156(c), the Local Rules, and the Claims Agent Protocol. Accordingly, the Debtors respectfully request entry of the Proposed Order authorizing the Debtors to retain and employ Epiq as Claims and Noticing Agent, effective as of the Petition Date.

**Basis for Relief**

24. The Court is permitted to appoint Epiq as Claims and Noticing Agent in the Chapter 11 Cases. Pursuant to 28 U.S.C. § 156(c), the Court is authorized to use agents and facilities other than the Clerk for the administration of bankruptcy cases. Specifically, 28 U.S.C. § 156(c) provides, in relevant part, as follows:

> Any court may utilize facilities or services, either on or off the court's premises, which pertain to the provision of notices, dockets, calendars, and other administrative information to parties in cases filed under the provisions of title 11, United States Code, where the costs of such facilities or services are paid for out of the assets of the estate and are not charged to the United States.

28 U.S.C. § 156(c). Moreover, Bankruptcy Rule 2002, which regulates the notices that must be provided to creditors and other parties in interest in a bankruptcy case, provides that the Court may direct that a person other than the Clerk give notice of the various matters described therein. *See* Fed. R. Bankr. P. 2002. In addition, Local Rule 2002-1(f) provides that "[u]pon motion of the debtors or trustee, at any time without notice or hearing, the Court may authorize the retention of a notice and/or claims clerk under 28 U.S.C. § 156(c)." Del. Bankr. L.R. 2002-1(f).

25. In view of the number of anticipated claimants and the complexity of the Debtors' business, the Debtors submit that the appointment of Epiq as the Claims and Noticing Agent is both necessary and in the best interests of the Debtors' estates, creditors, and other parties in interest because the Debtors will be relieved of the burdens associated with the Claims and

Noticing Services. Accordingly, the Debtors will be able to devote their full attention and resources to their restructuring efforts.

### Relief as of the Petition Date is Appropriate

26. In accordance with the Debtors' request, Epiq has agreed to serve as Claims and Noticing Agent on and after the Petition Date with assurances that the Debtors would seek approval of its employment and retention, effective as of the Petition Date, so that Epiq can be compensated for services rendered before approval of this Section 156(c) Application. No party in interest will be prejudiced by the granting of relief as of the Petition Date as proposed in this Section 156(c) Application, because Epiq has provided and continues to provide valuable services to the Debtors' estates during the interim period.

27. Accordingly, the Debtors respectfully request entry of the Proposed Order authorizing the Debtors to retain and employ Epiq as Claims and Noticing Agent effective as of the Petition Date.

### Waiver of Bankruptcy Rule 6004(a) and 6004(h)

28. To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

### Notice

29. The Debtors will provide notice of this Motion to: (a) the Office of the U.S. Trustee for the District of Delaware; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) counsel to the lenders under the Debtors' prepetition credit facility; and (d) any party that requests service pursuant to Bankruptcy Rule 2002. As this Motion is seeking "first day" relief, within two business days of the hearing on the Motion, the Debtors

will serve copies of the Motion and any order entered in respect to this Motion as required by Local Rule 9013-1(m).

## No Prior Request

30.    No prior request for the relief sought in this Application has been made to this Court or any other court.

WHEREFORE, the Debtors respectfully request that the Bankruptcy Court enter an order, substantially in the form attached hereto as Exhibit A, granting the relief requested herein and granting such other relief as is just and proper.

Dated: September 18, 2023

AMERICAN PHYSICIAN PARTNERS, LLC AND ITS AFFILIATES

By: */s/ John C. DiDonato*
John C. DiDonato
Chief Restructuring Officer