# EXHIBIT A

**Proposed Order**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| AMERICAN PHYSICIAN PARTNERS, LLC, *et al.*,[1] | ) Case No. 23-11469 (___) |
| | ) |
| Debtors. | ) (Joint Administration Requested) |
| | ) |
| | ) **Ref. Docket No. ____** |

## ORDER APPOINTING EPIQ CORPORATE RESTRUCTURING, LLC AS CLAIMS AND NOTICING AGENT EFFECTIVE AS OF THE PETITION DATE

Upon consideration of the application (the "Section 156(c) Application")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order, pursuant to section 156(c) of title 28 of the United States Code, section 105(a) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2002 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rules 2002-1(f) and 9013-1(m) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), and the Bankruptcy Court's *Protocol for the Employment of Claims and Noticing Agents under 28 U.S.C. § 156(c)*, instituted by the Office of the Clerk of the Bankruptcy Court (the "Clerk") on February 1, 2012 (the "Claims Agent Protocol"), appointing Epiq Corporate Restructuring, LLC ("Epiq") as the Claims and Noticing Agent in the Chapter 11 Cases, effective as of the Petition Date, to, among other things: (i) distribute required notices to parties in interest; (ii) receive, maintain, docket, and otherwise administer the proofs of claim filed in the Chapter 11 Cases; and (iii) provide such other administrative services as required by the

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/AmericanPhysicianPartners. The location of American Physician Partners, LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 5121 Maryland Way, Suite 300, Brentwood, TN 37027.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Section 156(c) Application.

Debtors that would fall within the purview of services to be provided by the Clerk's office, all as more fully set forth in the Section 156(c) Application; and the United States District Court for the District of Delaware having jurisdiction over this matter pursuant to 28 U.S.C. § 1334, which was referred to this Court under 28 U.S.C. § 157 pursuant to the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and that the Court may enter a final order consistent with Article III of the United States Constitution; and the Court having found that venue of this proceeding and the Application in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Section 156(c) Application having been provided to the Notice Parties under the circumstances, and it appearing that no other or further notice need be provided; and upon the First Day Declaration and the Tran Declaration; and the Court having determined that the legal and factual bases set forth in the Section 156(c) Application establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

IT IS HEREBY ORDERED THAT:

1. The Section 156(c) Application is GRANTED as set forth herein.

2. Notwithstanding the terms of the Engagement Agreement attached to the Section 156(c) Application, the Section 156(c) Application is granted solely as set forth in this Order and solely with respect to the "Claims Management" and "Noticing" services set forth in the Services Schedule attached to the Engagement Agreement.

3. Pursuant to section 156(c) of title 28 of the United States Code, section 105(a) of the Bankruptcy Code, Bankruptcy Rule 2002, Local Rules 2002-1(f) and 9013-1(m), and the Claims Agent Protocol, the Debtors are authorized to retain Epiq as Claims and Noticing Agent

in the Chapter 11 Cases, effective as of the Petition Date, under the terms of the Engagement Agreement, and Epiq is authorized and directed to perform the Claims and Noticing Services and to receive, maintain, record, and otherwise administer the proofs of claim filed in the Chapter 11 Cases and to perform all related tasks as set forth in the Section 156(c) Application.

4. Epiq shall serve as the custodian of court records and shall be designated as the authorized repository for all proofs of claim filed in the Chapter 11 Cases, and Epiq is authorized and directed to maintain the official Claims Register for the Debtors, to provide public access to every proof of claim unless otherwise ordered by the Court, and to provide the Clerk with a certified duplicate thereof upon request of the Clerk.

5. Epiq is authorized and directed to obtain a post office box or address for the receipt of proofs of claim.

6. Epiq is authorized to take such other actions as required to comply with all duties set forth in the Section 156(c) Application and this Order.

7. Epiq shall comply with all requests of the Clerk and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c).

8. Without further order of the Court, the Debtors are authorized to compensate Epiq in accordance with the terms and conditions of the Engagement Agreement upon receipt of reasonably detailed monthly invoices setting forth the services provided by Epiq and the rates charged for each, and to reimburse Epiq for all reasonable and necessary expenses it may incur, upon the presentation of appropriate documentation, without the need for Epiq to file fee applications or otherwise seek Court approval for the compensation of its services and reimbursement of its expenses as the Claims and Noticing Agent.

9. Epiq shall maintain records of all services showing dates, categories of services, fees charged, and expenses incurred, and Epiq shall serve monthly invoices on the Debtors, the Office of the United States Trustee for the District of Delaware, counsel for the Debtors, counsel for any statutory committee, and any party in interest that specifically requests service of the monthly invoices.

10. The parties shall meet and confer in an attempt to resolve any dispute that may arise relating to the Engagement Agreement or monthly invoices, and the parties may seek resolution of the matter from the Court if resolution is not achieved.

11. Pursuant to section 503(b)(1)(A) of the Bankruptcy Code, Epiq's fees and expenses incurred in connection with the Claims and Noticing Services shall be an administrative expense of the Debtors' chapter 11 estates.

12. Epiq may apply its retainer to all prepetition invoices, which retainer shall be replenished to the original retainer amount of $25,000.00, and thereafter Epiq may hold its retainer under the Engagement Agreement during the Chapter 11 Cases as security for payment of Epiq's final invoice for services rendered and expenses incurred under the Engagement Agreement.

13. The Debtors are authorized to indemnify Epiq under the terms of the Engagement Agreement, subject to the following modifications:

   a. Epiq shall not be entitled to indemnification, contribution, or reimbursement pursuant to the Engagement Agreement for services other than the Claims and Noticing Services provided under the Engagement Agreement, unless such services and the indemnification, contribution, or reimbursement therefor are approved by this Court;

   b. Notwithstanding anything to the contrary in the Engagement Agreement, the Debtors shall have no obligation to indemnify Epiq, or provide contribution or reimbursement to Epiq, for any claim or expense that is either: (i) judicially determined (the determination having become final) to

    have arisen from Epiq's gross negligence, willful misconduct, or fraud; (ii) for a contractual dispute in which the Debtors allege the breach of Epiq's contractual obligations if the Court determines that indemnification, contribution, or reimbursement would not be permissible pursuant to *In re United Artists Theatre Co.*, 315 F.3d 217 (3d Cir. 2003); or (iii) settled prior to a judicial determination under (i) or (ii), but determined by the Court, after notice and a hearing, to be a claim or expense for which the Claims and Noticing Agent should not receive indemnity, contribution, or reimbursement under the terms of the Engagement Agreement as modified by this Order;

  c. If, before the earlier of: (i) the entry of an order confirming a chapter 11 plan in the Chapter 11 Cases (that order having become a final order no longer subject to appeal); or (ii) the entry of an order closing the Chapter 11 Cases, Epiq believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution, or reimbursement obligations under the Engagement Agreement (as modified by this Order), including the advancement of defense costs, Epiq must file an application therefor with the Court, and the Debtors may not pay any such amounts to Epiq before the entry of an order by the Court approving the payment. This paragraph is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by Epiq for indemnification, contribution, or reimbursement, and not a provision limiting the duration of the Debtors' obligation to indemnify Epiq. All parties in interest shall retain the right to object to any demand by Epiq for indemnification, contribution, or reimbursement.

14. Notwithstanding anything to the contrary in the Engagement Agreement, during the Chapter 11 Cases, the limitation of liability contained in paragraph 8 of the Agreement shall be given no effect.

15. In the event Epiq is unable to provide the Claims and Noticing Services, Epiq shall immediately notify the Clerk and the Debtors' counsel and cause all original proofs of claim and computer information to be turned over to another claims and noticing agent with the advice and consent of the Clerk and the Debtors' counsel.

16. The Debtors may submit a separate retention application, pursuant to section 327 of the Bankruptcy Code or any applicable law, for services that are to be performed by Epiq but are not specifically authorized by this Order.

17. Epiq shall not cease providing Claims and Noticing Services during the Chapter 11 Cases for any reason, including nonpayment, without an order of the Court.

18. In the event of any inconsistency between the Engagement Agreement, the Section 156(c) Application, and this Order, this Order shall govern.

19. The Debtors and Epiq are authorized to take all actions necessary to effectuate the relief granted in this Order.

20. After entry of an order terminating Epiq's services as the Claims and Noticing Agent, upon the closing of the Chapter 11 Cases, or for any other reason, Epiq shall be responsible for (a) forwarding to the Clerk an electronic version of all imaged claims, (b) uploading the creditor mailing list into CM/ECF and (c) docketing a Final Claims Register.

21. Notice of the Section 156(c) Application as provided therein shall be deemed good and sufficient notice of such Section 156(c) Application, and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

22. Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

23. The Court shall retain jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.