IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| AMERICAN PHYSICIAN PARTNERS, LLC, *et al.*,[1] | Case No. 23-11469 (BLS) |
| Debtors. | (Joint Administration Requested) |

**RESERVATION OF RIGHTS OF AD HOC COMMITTEE OF HEALTHCARE PROVIDERS REGARDING FIRST DAY PLEADINGS OF DEBTORS AMERICAN PHYSICIAN PARTNERS, LLC, *ET AL*.**

The Ad Hoc Committee of Healthcare Providers (the "Ad Hoc Committee"), comprised of approximately 165 of the Debtors' former physicians and midlevels (including physician assistants and nurse practitioners), by and through its undersigned counsel, hereby submits this reservation of rights (the "Reservation of Rights") regarding the Debtors' first-day motions [D.I. 3-13 & 15] (the "First Day Motions"). In support of this Reservation of Rights, the Ad Hoc Committee respectfully states as follows:

1. After being told in early July 2023 that the Debtors were being acquired, members of the Ad Hoc Committee were shocked to learn on July 17—exactly two weeks later—that the business was shutting down and all clients would be transitioned to alternative service providers by July 31. The Ad Hoc Committee has spent August and September working to obtain information regarding wages, tax returns, and medical malpractice insurance coverage, given the abrupt shutdown of the business operations and loss of firm leadership, including the chief

---

[1] A complete list of each of the debtors in these chapter 11 cases (the "Debtors"), may be obtained on the website of the Debtors proposed claims and noticing agent at https://dm.epiq11.com/case/americanphysicianpartners. The location of American Physician Partners, LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 5121 Maryland Way Suite 300, Brentwood, TN 37027.

1

financial officer, who resigned weeks before the shutdown. Despite these efforts, the Ad Hoc Committee has been able to obtain only limited information from the Debtors.

2.  Perhaps most troubling, despite the Debtors' affirmative obligation to provide members of the Ad Hoc Committee (and the Debtors' other healthcare providers) with medical malpractice tail coverage, they have in many cases failed to do so. Given the controversy regarding the expiration date of primary malpractice coverage, providers who have bought or received tail coverage cannot be certain of its efficacy. The Ad Hoc Committee members remain in a state of uncertainty about whether, and to what extent, any claims now made related to the practice of medicine prior to the Debtors' cessation of operations would be deemed covered claims under any insurance policy.

3.  Without the services and expertise provided by the members of the Ad Hoc Committee and similarly situated healthcare providers, the Debtors could not have operated. In return for their services, the members of the Ad Hoc Committee, in addition to their wages and other contractual and employment rights, reasonably (and contractually) expected to be protected from medical malpractice claims against them through medical malpractice insurance coverage. In fact, it was not until shortly before the filing the Debtors' bankruptcy cases that members of the Ad Hoc Committee were informed that the Debtors' medical malpractice insurance allegedly was terminated as of June 30, 2023, which was before the Debtors ceased operations. To add further insult to injury, the Debtors now seek court approval to cause the individuals who were the lifeline of the Debtors' operations to bear the full burden of the Debtors' failure by not allocating funds to ensure that proper insurance coverage is in place, especially if those individuals provided services following the alleged lapse of the Debtors' malpractice insurance.

4.     The Ad Hoc Committee notes with further concern that all of this occurs against a backdrop of a proposal that the very lenders who took prepetiton total control of the Debtors should receive all but $250,000 of the value of the estates from all sources.

5.     The Ad Hoc Committee recognizes that the Debtors need certain first-day relief, and is not necessarily opposed to the Debtors' efforts to winddown through an organized process in bankruptcy. However, the Ad Hoc Committee is concerned that the relief sought in the First Day Motions may prejudice its rights at the outset of the case.

6.     First, the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing Debtors to (A) Continue to Maintain Their Insurance Policies and Programs, (B) Honor All Insurance Obligations, (C) Renew, Amend, Supplement, Extend, or Purchase and Finance Insurance Policies and (II) Granting Related Relief* [D.I. 9] (the "Insurance Motion") lists certain insurance policies that the Debtors identify as current policies that they seek to continue. While Exhibit C of the Insurance Motion identifies one tail policy for professional liability coverage issued for nurses, there are several other professional liability policies that are not listed on the chart and which the Ad Hoc Committee has been led to believe are still in existence. Thus, to avoid any potential argument by carriers that a policy may have lapsed and in the interest of transparency, the Ad Hoc Committee requests that all insurance policies issued to the Debtors on or before September 18, 2023 be specifically identified in the Insurance Motion.

7.     Second, in the *Motion of the Debtors Pursuant to Sections 105, 361, 362, 363, and 507 of the Bankruptcy Code, Bankruptcy Rule 4001, and Local Rule 4001-2 for Interim and Final Orders (A) Authorizing Debtors to Use Cash Collateral, (B) Granting Adequate Protection to Prepetition Secured Parties, (C) Modifying the Automatic Stay, and (D) Scheduling a Final Hearing* [D.I. 10] (the "Cash Collateral Motion"), the Debtors seek to provide extensive

3

protections to the Prepetition Lenders for use of cash collateral, based upon the Prepetition Credit Agreement,[2] which is not attached to the motion. As set forth more fully below, without the benefit of the Prepetition Credit Agreement, the Ad Hoc Committee is unable to determine which specific Debtors are actually obligated under the Prepetition Credit Agreement and granted liens to the Prepetition Lenders. Any interim, let alone final, relief must also be protective of the potential for creditors and interest holders, including healthcare providers, to assert lender liability or (including as further described below) infirmities in the lenders' liens and obligor structure.

8. As described in the First Day Declaration, many of the Debtors are Professional Entities, which own the "clinical assets" that were used to provide healthcare services to patients nationwide. The Professional Entities employed all clinical staff, including members of the Ad Hoc Committee. Thus, the Ad Hoc Committee's claims (such as claims for failure to provide tail coverage) are held against the Professional Entities.[3]

9. In many physician practice management structures, potentially like the Debtors, secured lenders do not (especially when impermissible under applicable law) obtain liens on clinical assets, including any income that is derived from the clinical assets. Instead, the professional entities typically enter into management service agreements (or MSAs), as the Debtors have done here, under which other entities (known as management services organizations, or MSOs) effectively manage the non-clinical business operations for the benefit of the professional entities. As part of the MSA, a certain portion of income generated by the

---

[2] Capitalized terms used and not defined herein shall have the meaning ascribed to them in the Cash Collateral Motion.

[3] For the avoidance of doubt, the members of the Ad Hoc Committee reserve all rights to assert claims against other Debtors.

professional entities is paid as a fee to the MSO.  However, the fee is often set to be paid after the expenses of the professional entities, including for wages and benefits (such as insurance coverage).  In other words, amounts needed to pay claims at the professional entities are typically reserved to pay those claims.

10. The Ad Hoc Committee has not yet received copies of the Debtors' loan agreements and related documents, such as the MSAs.  However, the cash sitting at the Professional Entities may not constitute Prepetition Collateral.  And any cash that may have been transferred by the Professional Entities to the MSO may be subject to avoidance if, for example, such transfers were inconsistent with the applicable MSA.  The Ad Hoc Committee is concerned that some of the Professional Entities may in fact be solvent and have funds (or may be able to claw back funds) sufficient to pay all creditor claims at those specific entities, such as the claims of the members of the Ad Hoc Committee, but that these funds will instead be used to fund these Chapter 11 Cases.

11. The Ad Hoc Committee intends to request additional information from the Debtors that will allow the Ad Hoc Committee to more appropriate analyze these, and many other, issues.  In the meantime, the Ad Hoc Committee requests that any relief granted by the Court with respect to the First Day Motions be without prejudice to any rights, claims, and remedies of the members of the Ad Hoc Committee against any Debtor or other person or entity.

12. The Ad Hoc Committee reserves all rights to further object to the First Day Pleadings on any grounds and to respond to any reply filed by the Debtors or any other Party in interest, either by further submission to this Court or at oral argument.

Dated: September 20, 2023
Wilmington, Delaware

| **MCDERMOTT WILL & EMERY LLP** | **FAEGRE DRINKER BIDDLE & REATH LLP** |
|---|---|
| */s/ Maris J. Kandestin* | */s/ Patrick A. Jackson* |
| Maris J. Kandestin (No. 5294) | Patrick A. Jackson (No. 4976) |
| 1000 N. West Street, Suite 1400 | 222 Delaware Ave., Suite 1410 |
| Wilmington, Delaware 19801 | Wilmington, DE 19801 |
| Telephone: (302) 485-3900 | Telephone: (302) 467-4200 |
| Facsimile: (302) 351-8711 | Facsimile: (302) 467-4201 |
| Email: mkandestin@mwe.com | E-mail: patrick.jackson@faegredrinker.com |
| -and- | -and- |
| Darren Azman | Laura Appleby |
| Kristin Going | 1177 Avenue of the Americas, 41st Floor |
| One Vanderbilt Avenue | New York, NY 10036 |
| New York, New York 10017-3852 | Telephone: (212) 248-3140 |
| Telephone: (212) 547-5400 | Facsimile: (212) 248-3141 |
| Facsimile: (646) 547-5444 | E-mail: laura.appleby@faegredrinker.com |
| Email: dazman@mwe.com | |
|        kgoing@mwe.com | |

*Counsel to the Ad Hoc Committee of Healthcare Providers*