# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) Chapter 11 |
| AMERICAN PHYSICIAN PARTNERS, LLC, *et al.*,[1] | ) Case No. 23-11469 (BLS) |
| Debtors. | ) (Jointly Administered) |
|  | ) **Re: Docket Nos. 97, 114, 228, 235** |

## DEBTORS' OMNIBUS OBJECTION TO VARIOUS
## MOTIONS FOR RELIEF FROM THE AUTOMATIC STAY

The above-captioned debtors and debtors in possession (the "Debtors") hereby file this objection (this "Objection") in response to all motions to lift the automatic stay (collectively, the "Motions")[2] filed by or on behalf of plaintiffs (collectively, the "Movants") seeking to proceed with litigation and recover against the Debtors and/or under the Debtors' medical malpractice insurance policies or professional liability policies, including those policies with Professional Security Insurance Co., a subsidiary of MagMutual Insurance Co. ("MagMutual") or any other potentially applicable insurance policy on account of personal injury (collectively the "Insurance Policies"). In support of this Objection, the Debtors respectfully state as follows:

---

[1] A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/AmericanPhysicianPartners. The location of American Physician Partners, LLC's principal place of business and the Debtors' service address in these Chapter 11 Cases is 5121 Maryland Way Suite 300 Brentwood, TN 37027.
.

[2] The Motions include: *Motion of Aumkar Renavikar for Relief from Stay Under Section 362 of the Bankruptcy Code* [Docket No. 97]; *Motion for Relief from Stay by Chaya Hendrie* [Docket No. 114]; *Motion of Larry Ricky Kincer for Relief from the Automatic Stay to the Extent of Liability Insurance Proceeds* [Docket No. 228]; and *Motion for Relief from the Automatic Stay by Maria Morales* [Docket No. 235]. For the avoidance of doubt, pursuant to this Objection, the Debtors object to any motion to lift the automatic stay filed by or on behalf of any plaintiff seeking to recover under the Debtors' Insurance Policies, whether or not such motion is included in the foregoing list.

**Preliminary Statement**

1. The Movants, unsecured creditors, seek relief from the automatic stay to prosecute claims for prepetition personal injuries or wrongful death claims against one or more Debtors or their agents or physician providers and seek recovery from the Debtors and/or the Debtors' Insurance Policies. The automatic stay affords debtors a breathing spell to develop, confirm, and consummate a chapter 11 plan, while protecting other creditors from a race to procure judgments outside the bankruptcy court. All unsecured creditors, like Movants, must establish "extraordinary circumstances" to lift the stay and jump ahead of other litigants patiently waiting for the chapter 11 process to conclude. Stay relief is the exception, not the rule. The Movants do not meet the heavy burden of lifting the automatic stay and prioritizing themselves ahead of other unsecured claimants. The Motions should be denied.

2. First, the Movants' requests to prosecute their claims solely to collect on the proceeds of the Debtors' Insurance Policies must be denied at this time. Importantly, the Debtors have already filed the Combined DS/Plan and expect to proceed quickly to confirmation.[3] After the plan is confirmed, a liquidating trustee will succeed to the rights of the Debtors' estates, including with respect to rights under insurance policies, and the liquidating trustee will then be the sole representative responsible for making decisions regarding claims against insurance. The Debtors should not be forced to make rushed decisions now about insurance that could trigger a run on the policies from other personal injury claimants, particularly when the Debtors expect they will soon no longer be the controlling decision maker. Instead, the process should be managed in a controlled way that preserves the most value for all beneficiaries under the confirmed plan. Further, in the event proceedings or litigation are necessary to determine the extent of coverage

---

[3] *See* Docket Nos. 17, 77.

under the Debtors' Insurance Policies, any decisions regarding insurance should be made by the post-confirmation liquidating trustee, not by the Debtors. So denial of the Motions is in the best interest of the Debtors' estates at this time.

3. Second, permitting the Movants to pursue their claims at this critical juncture in the chapter 11 cases could force the Debtors to incur significant administrative costs – in the event there are coverage disputes and depending on the existing scope of defense in the underlying lawsuits -- to address litigation across multiple judicial forums. The Debtors do not currently have the liquidity to undertake such an administrative burden. The Debtors are hyper focused on proceeding towards confirming a chapter 11 plan to effectuate an orderly and value maximizing wind-down of the Debtors' estates. Permitting the Movants to pursue their claims would disrupt the Debtors' plan solicitation and confirmation process and distract from the Debtors' ongoing efforts to maximize the value of their estates.

4. Third, the Movants have not identified any cognizable harm that would be suffered if the stay is not lifted. Instead, the Movants maintain that they will be prejudiced because of delay. The Movants may timely file a proof of claim to preserve their claims and—just like every other prepetition litigation claimant—must now allow such claim to be adjudicated through the claims administration process or through some other relief as determined by, or negotiated with, the liquidating trustee. The Movants will not be prejudiced, nor have the Movants shown they would sustain meaningful, extraordinary harm, by a short wait until a chapter 11 plan is expected by the Debtors to be confirmed to prosecute their claims.

5. In summary, there is no cause to lift the stay under the circumstances of these chapter 11 cases and the Debtors are working diligently with parties in interest to proceed

with solicitation and confirmation of their plan. For the reasons set forth herein, the Debtors request that the Court deny the Motions.

## Background

### A.  General Background

6. On September 18, 2023 and continuing on September 19, 2023 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in the Debtors' chapter 11 cases (the "Chapter 11 Cases"). On October 2, 2023, the Office of the United States Trustee appointed the Official Committee of Unsecured Creditors (the "Committee") in these Chapter 11 Cases.

7. Founded in 2015, the Debtors were one of the fastest growing, scaled emergency department and hospitalist management platforms in the U.S. Headquartered in Brentwood, Tennessee, the Debtors had management and related contracts with more than 100 hospitals (including freestanding emergency departments) and other sites in fifteen states primarily in the southeastern, midwestern and southwestern United States, utilizing over 2,500 physicians who served over 4 million patients each year. Prior to the Petition Date, the Debtors explored alternative strategies to address cash shortfalls, including the refinancing of existing secured indebtedness and potential sale of substantially all the Debtors' service contracts and other assets. Such efforts by the Debtors proved to be unsuccessful despite extensive negotiations with multiple parties. In July 2023, the Debtors made the difficult decision to begin transitioning substantially all of their medical service contracts to alternative service providers (competitors) and their health system/hospital partners (customers), in order to avoid any interruptions in its critical life-saving service to the patients. After successfully transitioning all its medical service

contracts without interruption, the Debtors have commenced these bankruptcy cases to facilitate and complete the wind-down process and liquidate their remaining assets in an orderly fashion.

8. The factual background regarding the Debtors, including their historical business operations and the events precipitating the chapter 11 filing, is set forth in detail in the *Declaration of John C. DiDonato in Support of the Debtors' Chapter 11 Petitions and First Day Relief* [Docket No. 18] and fully incorporated herein by reference.[4]

9. On September 19, 2023, the *Debtors filed the Chapter 11 Combined Plan & Disclosure Statement of American Physician Partners, LLC and Its Affiliated Debtors* (the "Combined DS/Plan") [Docket No. 17].

10. On September 28, 2023, the Debtors filed the *Debtors' Motion for Entry of an Order (I) Granting Conditional Approval of the Adequacy of Disclosures in the Combined Disclosure Statement and Plan; (II) Scheduling a Combined Confirmation Hearing and Setting Deadlines Related Thereto; (III) Approving Solicitation Packages and Procedures; (IV) Approving Form of Ballots; and (V) Granting Related Relief* (the "Solicitation Motion") [Docket No. 77]. The Solicitation Motion was scheduled for a hearing on October 18, 2023, but has been adjourned to the hearing on October 31, 2023.

11. The Solicitation Motion provides for a proposed confirmation schedule, subject to Court approval, that provides for a voting deadline by November 22, 2023 and a confirmation hearing on November 29, 2023.

---

[4] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

### B. Plan Provisions Regarding Insurance

12. The Combined DS/Plan provides that to the extent the Debtors' "Insurance Polices"[5] provide coverage to the Debtors for causes of action, the Debtors will assign all rights under the policies to the Liquidating Trustee. *See* Combined DS/Plan at §13.3.

13. The Combined DS/Plan also provides that the Liquidating Trustee will be the sole representative of the Debtors' estates' post-confirmation and will have the power to make decisions regarding retained causes of action, litigation, and the liquidating trust assets. To that end, the Plan provides:

- "Except as otherwise provided herein and except as to Causes of Action assigned to third parties prior to the Effective Date, all Litigation is retained, vested in the Liquidating Trustee and preserved pursuant to Section 1123(b) of the Bankruptcy Code. From and after the Effective Date, all Litigation will be prosecuted or settled by the Liquidating Trustee in accordance with the terms of the Plan and the Liquidating Trust Agreement, as applicable. To the extent any Litigation is already pending on the Effective Date, the Liquidating Trustee, as successor to the Debtors or the Committee (in any derivative capacity or as an intervening party), may in the Liquidating Trustee's discretion continue the prosecution of such Litigation and shall be substituted as plaintiff, defendant, or in any other capacity for the Debtors or the Committee pursuant to the Plan and the Confirmation Order on the Effective Date, without need for any further motion practice or notice in any case, action, or matter." Combined DS/Plan §14.10; and

- The Liquidating Trustee shall be deemed the Estates' representative with respect to the Liquidating Trust Assets in accordance with Section 1123 of the Bankruptcy Code and shall have all the rights and powers set forth in the Liquidating Trust Agreement, including, without limitation, the powers of a trustee under Sections 704 and 1106 of the Bankruptcy Code and Rule 2004 of the Bankruptcy Rules to act on behalf of the Liquidating Trust. Without limiting the foregoing, the Liquidating Trustee will have the right to, among other things, (1) effect all actions and execute all agreements, instruments and other documents necessary to implement the applicable provisions of the Plan and the Liquidating Trust Agreement; (2) liquidate the Liquidating Trust Assets; (3) investigate, prosecute, settle, abandon or compromise any Causes of Action the Debtors hold or may hold against any Entity that constitute Liquidating Trust Assets; (4) make all

---

[5] "Insurance Policies" is defined as "all insurance policies maintained by the Debtors as of the Petition Date, specifically including, but not limited to, director and officer insurance and malpractice insurance policies." Combined DS/Plan §3.63.

6

Distributions to Beneficiaries in accordance with the Plan and the Liquidating Trust Agreement; (5) administer the Liquidating Trust and pursue Causes of Action that constitute Liquidating Trust Assets in accordance with the Plan and the Liquidating Trust Agreement; (6) establish and administer any necessary reserves for Disputed Unsecured Claims that may be required; (7) object to Disputed Unsecured Claims and prosecute, settle, compromise, withdraw or resolve in any manner approved by the Bankruptcy Court such objections . . . ." Combined DS/Plan § 14.7.

### B.    The Debtors' Liability Insurance

14.    The Debtors have numerous liability Insurance Policies, certain of which may be applicable to the Movants' asserted claims, which seek many millions of dollars of damages against the Debtors for alleged injuries that occurred in 2018, 2019, and 2020. Certain of the Insurance Policies have shared or separate limits ranging from $200,000 per claim or occurrence to $5 million per claim or occurrence and $600,000 in the aggregate to $10 million in the aggregate depending on the implicated policy and divisional nature of coverage between covered physicians and covered entities. Certain of the Insurance Policies for certain policy years also have deductibles ranging from $500,000 per claim to $2 million in the aggregate.

### Objection

### A.    The Automatic Stay Protects Against Piecemeal Litigation of Claims in Other Courts.

15.    The automatic stay of section 362 of the Bankruptcy Code is "one of the most fundamental protections granted the debtor under the Bankruptcy Code." *Izzarelli v. Rexene Prods. Co. (In re Rexene Prods. Co.)*, 141 B.R. 574, 576 (Bankr. D. Del. 1992) (citing *Midlantic Nat'lBank v. N.J. Dep't of Envtl. Prot.*, 474 U.S. 494, 503 (1986)). The purpose of the automatic stay is threefold: "to prevent certain creditors from gaining a preference for their claims against the debtor; to forestall the depletion of the debtor's assets due to legal costs in defending proceedings against it; and, in general, to avoid interference with the orderly liquidation or rehabilitation of the debtor." *Borman v. Raymark Ind., Inc.*, 946 F.2d 1031, 1036 (3d Cir. 1991) (quoting *St. Croix Condo. Owners v. St. Croix Hotel*, 682 F.2d 446, 448 (3d Cir. 1982)), *quoted in*

7

*Rexene Prods.*, 141 B.R. at 576.

16. Indeed, the automatic stay operates primarily to "stop all creditor collection efforts, stop all harassment of a debtor seeking relief, and to maintain the status quo between the debtor and [its] creditors, thereby affording the parties and the Court an opportunity to appropriately resolve competing economic interests in an orderly and effective way." *Taylor v. Slick*, 178 F.3d 698, 702 (3d Cir. 1999) (emphasis omitted). It is designed, *inter alia*, to give the debtor a "breathing spell" after the commencement of a chapter 11 case, shielding debtors from creditor harassment and a multitude of litigation in a variety of forums at a time when the debtor's personnel should be focusing on restructuring. *See, e.g., Borman v. Raymark Indus., Inc.*, 946 F.2d 1031, 1036 (3d Cir. 1991).

17. This "breathing spell" is designed to halt lawsuits and collection actions while the debtor attempts to reorganize or otherwise maximize value for stakeholders through an orderly wind-down of its affairs. *See Maritime Elec. Co. v. United Jersey Bank*, 959 F.2d 1194, 1204 (3d Cir. 1991); H.R. Rep. No. 595, 95th Cong. 1st Sess. 340 (1977). Implementation and maintenance of the automatic stay is fundamental to the effective administration of pending bankruptcy cases as it provides a debtor protection from "a chaotic and uncontrolled scramble for the debtor's assets in a variety of uncoordinated proceedings in different courts." *In re Frigitemp Corp.*, 8 B.R. 284, 289 (S.D.N.Y. 1981) (internal citations omitted).

18. Not only does the automatic stay prevent disparate actions against debtors, it also protects creditors in a manner consistent with the Bankruptcy Code's goal of equal treatment for similarly situated creditors, "replac[ing] the 'unfair race to the courthouse' with orderly liquidation that treats all creditors equally." *In re Univ. Med. Ctr.*, 973 F.2d 1065, 1074 (3d Cir. 1992) (quoting *United States v. Nicolet, Inc.*, 857 F.2d 202, 207 (3d. Cir. 1988)); *see also In re*

WEIL:\97600174\1\78028.0003

*M.J. & K. Co.*, 161 B.R. 586 (Bankr. S.D.N.Y. 1993) (finding that the automatic stay is intended to protect the debtor from its creditors and to provide for the orderly administration of the debtor's estate) (citations omitted); *Fid. Mortg. Invs. v. Camelia Builders, Inc. (In re Fid. Mortg. Invs.)*, 550 F.2d 47, 55 (2d Cir. 1976) ("The stay insures that the debtor's affairs will be centralized, initially, in a single forum in order to prevent conflicting judgments from different courts and in order to harmonize all of the creditors' interests with one another"). Section 362 of the Bankruptcy Code prevents "creditors from reaching the assets of the debtor's estate piecemeal and preserves the debtor's estate so that *all* creditors and their claims can be assembled in the bankruptcy court for a single organized proceeding." *AP Indus., Inc. v. SN Phelps & Co. (In re AP Indus., Inc.)*, 117 B.R. 789, 798 (Bankr. S.D.N.Y. 1990) (quoting *In re Colin, Hochstin Co.*, 41 B.R. 322, 325 (Bankr. S.D.N.Y. 1984)) (emphasis added).

19. Section 362(d)(1) of the Bankruptcy Code permits a court to grant relief from the automatic stay "for cause." 11 U.S.C. § 362. "The term "cause" as used in section 362(d) has no obvious definition and is determined on a case-by-case basis." *See In re Integrated Health Servs., Inc.*, 2000 WL 33712483, *1 (Bankr. D. Del. Aug. 11, 2000); *In re Lincoln*, 264 B.R 370, 372 (Bankr. E.D. Pa. 2001) ("Each request for relief for 'cause' under [section] 362(d)(1) must be considered on its own facts."). In determining whether "cause" exists, courts in this district consider the following three "*Rexene* Factors":

    a.    the prejudice that would be suffered by the debtors should the stay be lifted;

    b.    the balance of the hardships facing the parties if the stay is lifted; and

    c.    the probable success on the merits if the stay is lifted.

*In re Pursuit Athletic Footwear, Inc.*, 193 B.R. 713, 718 (Bankr. D. Del. 1996) (citing *Rexene Prods.,* 141 B.R. at 576). "To establish cause, the party seeking relief from the stay must show that 'the balance of hardships from not obtaining relief tips *significantly* in [its] favor.'" *Atl.*

9

27215098.3 *Marine Inc. v. Am. Classic Voyages, Co. (In re Am. Classic Voyages, Co.)*, 298 B.R. 222, 225 (D. Del. 2003) (alteration in original) (quoting *In re FRG,* 115 B.R. 72, 74 (E.D. Pa. 1990)); *see also In re DBSI, Inc.*, 407 B.R. 159, 166 (Bankr. D. Del. 2009) (listing as the second prong "whether the hardship to the non-bankrupt party by maintenance of the stay considerably outweighs the hardship to the debtor" (internal citations omitted)).

**B.     No Cause Exists To Lift the Stay**

20.     Section 362(d)(1) of the Bankruptcy Code provides, in relevant part, that the automatic stay may be modified by the bankruptcy court "for cause." Pursuant to section 362 of the Bankruptcy Code, the automatic stay will be lifted in favor of unsecured claimants only in "the most extraordinary set of circumstances." *See In re Stranahan Gear Co.*, 67 B.R. 834, 838 (Bankr. E.D. Pa. 1986); *accord In re Leibowitz*, 147 B.R. 341, 345 (Bankr. S.D.N.Y. 1992) (finding that the general rule is that claims that are not viewed as secured should not be granted relief from the automatic stay unless extraordinary circumstances are established to justify such relief); *In re Tristar Auto. Grp., Inc.*, 141 B.R. 41, 44 (Bankr. S.D.N.Y. 1992) (finding that an unsecured creditor would not be entitled to relief from the automatic stay unless it can establish extraordinary circumstances); *In re Pioneer Com. Funding Corp.*, 114 B.R. 45 (Bankr. S.D.N.Y. 1990).

21.     Under the *Rexene* Factors analysis, "[t]he movant has the initial burden of proof to put forth a *prima facie* case for cause before the debtor must then rebut the case." *In re Scarborough—St. James Corp.*, 535 B.R. 60, 68 (Bankr. D. Del. 2015). In this case, the three-prong balancing test clearly weighs in the Debtors' favor.

    **1.     Significant Prejudice to the Debtors and the Debtors' Estates**

22.     Contrary to Movants' assertions, the Debtors will be severely prejudiced if the automatic stay is lifted and the Movants' claims are permitted to move forward now. As stated,

10

were Movants allowed to proceed with their lawsuits now, the Debtors would potentially be forced to devote their resources and attention from the Debtors' restructuring efforts—and potentially expend funds on account of defense costs to liquidate general unsecured claims at this early stage of the chapter 11 cases, to the detriment of all other stakeholders—during this critical period.

23. Moreover, the Debtors will be prejudiced if the automatic stay is lifted here because such an order would open the flood gates to numerous other, similar motions being filed in this Court requesting relief from stay. Indeed, merely having to respond to the inevitable flurry of stay relief motions and requests will have the effect of diverting the Debtors' key personnel and advisors from other tasks that are central to the administration of these chapter 11 cases. The Debtors are subject to more than 170 open claims asserted against them for medical malpractice, personal injury, and/or wrongful death. The sheer amount of time and resources that would be required to defend such a plethora of stay-relief motions—not to mention the underlying lawsuits—would be a tremendous burden on the estates and would undermine the Bankruptcy Code's policy of favoring a centralized forum to resolve all claims against the Debtors. The Debtors' Insurance Policies and proceeds of such policies are property of the bankruptcy estates and should not be picked apart piecemeal in a haphazard manner before the Debtors have an opportunity to confirm a plan that will permit a liquidating trustee to manage the insurance assets in a controlled and fair way that treats creditors in accordance with the confirmed plan.[6]

24. Lifting the stay for Movants to prosecute their claims would deplete the Debtors' limited resources and undermine one of the key objectives of the stay. *See Rexene*, 141

---

[6] "It has long been the rule in this circuit that insurance policies are considered part of the property of the bankruptcy estate." *ACandS v. Travelers Cas. & Surety Co.*, 435 F.3d 252, 260 (3d Cir. 2006); *In re Nutraquest, Inc.*, 434 F.3d 639, 647 n.4 (3d Cir. 2006) (debtor's right to insurance policy proceeds is property of the estate); *In re Vitek, Inc.*, 51 F.3d 530, 535 (5th Cir. 1995) (noting that "almost all" courts have held that proceeds of a debtor's liability policies are property of the debtor's estate).

11

B.R. at 576; *Borman*, 946 F.2d at 1036 ("The automatic stay was designed . . . to forestall the depletion of the debtor's assets due to legal costs in defending proceedings against it . . . ."). As a result, the lifting of the stay to allow the claims to proceed would be value destructive and prejudice the Debtors and their other creditors. *See In re Continental Airlines*, 177 B.R. 475, 481 (D. Del. 1993) (upholding bankruptcy court's finding that the automatic stay applied and further enjoining prosecution of litigation based, in part, on the direct impact on the debtor's assets caused by the debtor having to bear indemnification obligations and advancement of defense costs in the absence of insurance); *Majestic Star Casino v. City of Gary (In re Majestic Star Casino, LLC)*, 2010 WL 2540457, *2 (Bankr. D. Del. Apr. 28, 2010) ("In addition, the Debtors will have to advance defense costs thereby, at the very least, temporarily diverting much needed funds—and funds which they do not have to expend absent their lenders' acquiescence." (citing *Continental,* 177 B.R. at 481)). The Debtors' budget is already tightly constrained. Any additional expenses will therefore frustrate the Debtors' efforts to maximize value for the benefit of all stakeholders.

25. Additionally, allowing the Movants' claims to proceed outside of an eventual chapter 11 plan process ahead of other similarly-situated creditors is contrary to the priority scheme set forth in the Bankruptcy Code and the principle of bankruptcy law that all of the Debtors' interests in property are to be distributed equitably. The Debtors expect to quickly confirm a plan and a liquidating trustee will make the necessary decisions on how to approach the Movants' claims and the various competing interests against the insurance policies – it makes no sense to force the Debtors into that decision now or to give a few of the many medical malpractice, personal injury, or wrongful death claimants an unfair advantage against other similarly-situated creditors.

26. Stay relief for the Movants would encourage others to race to the courthouse to seek similar relief as quickly as possible and would undermine the Debtors' chapter 11 efforts and hamper their ability to conduct a focused and structured claims reconciliation process. *See In re SNLiquidation, Inc.*, 388 B.R. 579, 584 (Bankr. D. Del. 2008); *DBSI*, 407 B.R. at 167 (denying stay relief where it may encourage "a race to the courthouse by parties seeking similar orders, which will cause undue hardship and expense to the estate"); *In re Bally Total Fitness of Greater N. Y., Inc.*, 402 B.R. 616, 623 (Bankr. S.D.N.Y. 2009) (denying a motion for relief from the automatic stay where "granting relief could open the floodgates to a multitude of similar motions causing further interference with the bankruptcy case").

27. Now is simply not the time to grant relief from the automatic stay to permit creditors to liquidate their prepetition claims on an ad hoc basis, which would result in unnecessary expense to the Debtors' estates and interference with the Debtors' administration of these chapter 11 cases, including the confirmation of a chapter 11 plan. Indeed, as a practical matter, the vast majority of the claims against the Debtors' Insurance Policies will be resolved (or adjudicated) on a final basis post-confirmation by a liquidating trustee, so the decision about whether to lift the automatic stay (or provide for relief from a plan injunction) should be a decision made solely by a liquidating trustee.

28. There are already significant, and conflicting, demands on management's time, which include: (a) working with counsel and advisors to prepare, prosecute, and respond to pleadings in connection with these chapter 11 cases; (b) communicating and negotiating with certain parties in interest regarding the Debtors' remaining operational issues; (c) complying with certain disclosure requirements as required in these chapter 11 cases; (d) working with counsel and advisors to assess and process the universe of claims; and (e) most importantly, assisting

13

counsel and advisors with the negotiations and preparation of the various documents in connection with confirmation of the Combined DS/Plan. The automatic stay is meant to allow the Debtors to concentrate on these critical chapter 11 tasks without the distraction of ancillary litigation. *See In re W.R. Grace*, 2007 WL 1129170 at *2 n.7 (Bankr. D. Del. Apr. 13, 2007).

**2.      Minimal Prejudice to Movants**

29.     The prejudice to Movants if the Motions are not granted is considerably outweighed by the harm to the Debtors if the stay is lifted. And despite the Movants' assertions, any resulting prejudice to Movant is minimal. First, Movants may preserve their claims by filing a proof of claim, and then will need only wait a short period until the Debtors expect the plan to be confirmed and a liquidating trustee can make decisions on how to approach the various medical malpractice, personal injury, or wrongful death actions asserting claims against insurance. Second, Movants generally assert that the delays of their cases occasioned by operation of the automatic stay furthers the hardships placed on them. However, even if Movants were to succeed on the merits at a trial there likely would be a subsequent appeals process, and the underlying lawsuits would continue for some time, otherwise delaying any compensation to which Movants may be entitled.

30.     Given the need for the Debtors to conserve their time and resources to focus on their restructuring efforts, the Debtors submit that any inconvenience caused to Movants is outweighed by the benefit to the estates by ultimately administering a centralized claims reconciliation process in this Court and in this District. *In re Stranahan Gear Co.,* 67 B.R. 834 (Bankr. E.D. Pa. 1986) (denying a motion for relief from the automatic stay and noting the need to maintain all proceedings relevant to the debtor in a single forum convenient to the debtor, particularly in large chapter 11 cases, because subjecting a debtor to litigation in distant or diverse forums may prove disruptive of the debtor's restructuring efforts). Any prejudice that Movant will

14

experience certainly does not "considerably outweigh the hardship of the debtor." *Rexene Prods.*, 141 B.R. at 576.

### 3. The Balance of Harms Weighs Against Granting the Motions.

31. The most important factor to consider when addressing whether cause exists to lift the automatic stay is the effect on the administration of the chapter 11 cases. *See In re W.R. Grace*, 2007 WL 1129170 at *2 n.7 ("Even slight interference [to the administration of the case] . . . may be enough to preclude relief in the absence of a commensurate benefit."); *see also DBSI*, 407 B.R. at 166 (same); *In re Penn-Dixie Indus., Inc.*, 6 B.R. 832, 836 (Bankr. S.D.N.Y. 1980) ("Interference by creditors in the administration of the estate, no matter how small, through the continuance of a preliminary skirmish in a suit outside the Bankruptcy Court is prohibited."). As a result, cause exists only if the harm that the Movants would suffer from maintaining the stay "considerably outweighs" the harm that the Debtors would suffer from lifting of stay. *See, e.g.*, *DBSI*, 407 B.R. at 166.

32. As described above, the harm that the Debtors would suffer if the stay were lifted for the claims would be substantial. By contrast, the Movants would suffer little hardship if the stay is maintained. The chapter 11 cases are proceeding towards confirmation of a chapter 11 plan in a very short time period, and any recovery that the Movants may be entitled to will be determined following confirmation and in conjunction with distributions pursuant to a chapter 11 plan. Accordingly, the automatic stay may delay the prosecution of the Movants' claims, but such delay does not establish the harm necessary for relief from stay. If it did, every creditor would be entitled to relief from stay, and the exception would swallow the rule. *Cf. In re Condisco,* 271 B.R. 273, 277 (Bankr. N.D. Ill. 2002) ("The automatic stay almost always delays litigants. That is, after all, its purpose and the reason they call it a 'stay.'").

33. Accordingly, based on the foregoing, there is no cause for lifting the

15

automatic stay here, and the Motions should be denied.

WHEREFORE, the Debtors respectfully request that the Court deny the Motions and grant the Debtors such other and such other relief as the Court deems appropriate under the circumstances.

Dated:  October 24, 2023

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ Laura Davis Jones*
Laura Davis Jones (DE Bar No. 2436)
David M. Bertenthal (CA Bar No. 167624)
Timothy P. Cairns (DE Bar No. 4228)
Peter J. Keane (DE Bar No. 5503)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone:  302-652-4100
Facsimile:   302-652-4400
email:  ljones@pszjlaw.com
        dbertenthal@pszjlaw.com
        tcairns@pszjlaw.com
        pkeane@pszjlaw.com

*Counsel for Debtors and Debtors in Possession*