## **<u>EXHIBIT B</u>**

**Blackline**

DOCS_DE:245521.3

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| AMERICAN PHYSICIAN PARTNERS, LLC, *et al.*,[1] | Case No. 23-11469 (BLS) |
| Debtors. | (Jointly Administered) |

## FINAL ORDER: (I) AUTHORIZING THE USE OF CASH COLLATERAL; (II) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES AND (III) GRANTING RELATED RELIEF

Upon consideration of the motion (the "**Motion**")[2] of the above-captioned debtors and debtors in possession (collectively, the "**Debtors**") in the above-captioned chapter 11 cases (collectively, the "**Chapter 11 Cases**"), seeking entry of a final order (the "**Final Order**") pursuant to sections 105, 361, 362, 363, 503, 507 and 552 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2002, 4001, 6003, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 4001-2 of the Local Rules for the United States Bankruptcy Court, District of Delaware (the "**Local Rules**"), *inter alia*:

(i)        authorizing the Debtors to use "cash collateral," as such term is defined in section 363 of the Bankruptcy Code (the "**Cash Collateral**"), including Cash Collateral in which the Prepetition Secured Parties (as defined below) have a Lien or other interest, in each case whether existing on the Petition Date, arising pursuant to this Final Order or otherwise;

---

[1]        A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/AmericanPhysicianPartners.  The location of American Physician Partners, LLC's principal place of business and the Debtors' service address in these Chapter 11 Cases is 5121 Maryland Way, Suite 300, Brentwood, TN 37027.

[2]        Capitalized terms used but not defined herein have the meanings given to them in the Motion or the *Declaration of John C. DiDonato in Support of the Debtors' Chapter 11 Petition and First Day Relief* (the "**First Day Declaration**"), as applicable.

(ii)    modifying the automatic stay imposed by section 362 of the Bankruptcy Code solely to the extent necessary to implement and effectuate the terms and provisions of this Final Order;

(iii)    granting the Prepetition Secured Parties, as of the Petition Date and in accordance with the relative priorities set forth herein, the Prepetition Secured Parties Adequate Protection (as defined below), which consists of, among other things, the Adequate Protection Liens (as defined below), Adequate Protection Superiority Claims (as defined below), and current payment of reimbursable fees and expenses;

(iv)    waiving certain rights of the Debtors to surcharge collateral pursuant to section 506(c) of the Bankruptcy Code; and

(v)    providing for the immediate effectiveness of this Final Order and waiving any applicable stay (including under Bankruptcy Rule 6004) to permit such immediate effectiveness.

The Court having considered the Motion, the exhibits attached thereto, the First Day Declaration, and the evidence submitted and arguments made at the final hearing (the "**Final Hearing**"); and notice of the Final Hearing having been given in accordance with Bankruptcy Rules 2002, 4001(b), (c) and (d), and all applicable Local Rules; and the Final Hearing having been held and concluded; and all objections, if any, to the relief requested in the Motion having been withdrawn, resolved or overruled by the Court; and it appearing that approval of the relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates, and otherwise being fair and reasonable and in the best interests of the Debtors, their estates and all parties-in-interest, and essential for the continued operation of the Debtors' businesses and the preservation of the value of the Debtors' assets; and it appearing that that approval of the relief requested in the Motion is a sound and prudent exercise of the Debtors'

business judgment; and after due deliberation and consideration, and good and sufficient cause appearing therefor;

**BASED UPON THE RECORD ESTABLISHED AT THE FINAL HEARING, THE COURT MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[3]**

A.      **Petition Date**.  On September 18 (the "**Petition Date**") and 19, 2023, each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware (the "**Court**").

B.      **Debtors in Possession**.  The Debtors have continued in the management of their business affairs and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

C.      **Jurisdiction and Venue**.  This Court has jurisdiction over the Chapter 11 Cases, the Motion and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334. Consideration of the Motion constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2). This Court may enter a final order consistent with Article III of the United States Constitution. Venue for the Chapter 11 Cases and proceedings on the Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

D.      **Committee Formation**.  The United States Trustee for the District of Delaware (the "**U.S. Trustee**") appointed an official committee of unsecured creditors in these Chapter 11

---

[3]      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

Cases on October 2, 2023, pursuant to section 1102 of the Bankruptcy Code (the "**Creditors' Committee**").

      E.    **Notice**.   Notice of the Motion has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

      F.    **Debtors' Stipulations**.  After consultation with their attorneys and financial advisors, and subject and without prejudice to, the rights of parties-in-interest, including the Creditors' Committee or any other statutory committee that may be appointed in the Chapter 11 Cases, as set forth in paragraph 27 herein, the Debtors, on their own behalf and on behalf of their estates, admit, stipulate, acknowledge, and agree as follows (paragraphs F and G below are referred to herein, collectively, as the "**Debtors' Stipulations**"):

      (i)    *Prepetition Secured Facility.*  Pursuant to that certain Amended and Restated Credit and Guaranty Agreement, dated as of December 21, 2016 (as amended, modified and supplemented from time to time, the "**Prepetition Credit Agreement**"; and collectively with any other agreements and documents executed or delivered in connection therewith, each as may be amended, restated, supplemented, or otherwise modified from time to time, the "**Prepetition Loan Documents**"), by and among APP Holdco, LLC, American Physician Partners, LLC, as "**Prepetition Borrower**," the other company parties party thereto, Goldman Sachs Specialty Lending Group, L.P., as the administrative agent (in such capacity, the "**Prepetition Agent**"), and the lenders from time to time party thereto (the "**Prepetition Lenders**"; together with the Prepetition Agent, the "**Prepetition Secured Parties**"), the Prepetition Lenders provided loans and other financial accommodations to the Prepetition Borrower pursuant to the Prepetition Loan Documents (the "**Prepetition Secured Facility**").

The terms and conditions of the Prepetition Loan Documents remain in full force and effect and are legally binding upon the Debtors.

(ii)    *Prepetition Secured Obligations*.  Under the Prepetition Secured Facility, the Prepetition Lenders provided to the Debtors party thereto commitments in respect of term loans in the aggregate principal amount of up to $589,608,740.35 as of August 31, 2023. Immediately prior to the Petition Date, the Prepetition Borrower and Prepetition Guarantors (as defined below) were justly and lawfully indebted and liable to the Prepetition Secured Parties, without defense, counterclaim or offset of any kind, in the aggregate principal amount under the Prepetition Secured Facility on account of term loans of not less than $570,108,740.35 as of August 31, 2023 (the "**Prepetition Term Loans**") and on account of revolver loans of not less than $19,500,000 as of August 31, 2023 (the "**Prepetition Revolver Loans**") (such amounts on account of the Prepetition Term Loans and Prepetition Revolver Loans, together with any accrued and unpaid interest, fees, expenses and disbursements (including, without limitation, any accrued and unpaid attorneys' fees, and financial advisors' fees, and related expenses and disbursements), indemnification obligations, and other charges, amounts and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable in respect of any of the Debtors' obligations under the Prepetition Secured Facility, the "**Prepetition Secured Obligations**").

(iii)    *Prepetition Liens and Prepetition Collateral*.  As more fully set forth in the Prepetition Loan Documents, prior to the Petition Date:

(a)    pursuant to the Collateral Documents and that certain Pledge and Security Agreement (each, as defined in the Prepetition Credit Agreement) as amended, restated, supplemented or otherwise modified from time to time prior to the date hereof, the Prepetition

Borrower and each "Guarantor" thereunder (each, a "**Prepetition Guarantor**"; and together with Prepetition Borrower, collectively, the "**Prepetition Credit Parties**") jointly and severally guaranteed all of the Prepetition Secured Obligations, and granted to the Prepetition Agent, for the benefit of itself and the other Prepetition Secured Parties, a lien on and security in all of its right, title and interest in (the "**Prepetition Liens**") substantially all of their respective assets (the "**Prepetition Collateral**"), subject to the relative priorities among the Prepetition Secured Parties set forth in the Prepetition Loan Documents. For the Avoidance of Doubt, Pendrick Cash (as defined below), the Sapientes cash (as defined below) and DCP Assets (as defined below) are specifically excluded from the Prepetition Collateral.

(iv)     *Validity, Perfection and Priority of Prepetition Liens and Prepetition Secured Obligations*.  As of the Petition Date:  (a) the Prepetition Liens were senior in priority over any and all other liens on the Prepetition Collateral, subject only to certain liens otherwise permitted by the Prepetition Loan Documents and any other lien arising as a matter of law (in each case, to the extent that such existing liens were valid, properly perfected, non-avoidable and senior in priority to the Prepetition Liens as of the Petition Date or were valid non-avoidable senior liens that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code, the "**Permitted Prior Liens**")[4]; (b) the Prepetition Liens on the Prepetition Collateral were valid, binding, enforceable, non-avoidable and properly perfected and were granted by the Prepetition Credit Parties to, or for the benefit of, the Prepetition Secured Parties for fair consideration and reasonably equivalent value; (c) the Prepetition Secured Obligations

---

[4]     Nothing herein shall constitute a finding or ruling by this Court that any such Permitted Prior Lien is valid, senior, enforceable, prior, perfected or non-avoidable. Moreover, nothing shall prejudice the rights of any party-in-interest, including, but not limited to the Debtors, the Prepetition Secured Parties, or the Creditors' Committee, to challenge the validity, priority, enforceability, seniority, avoidability, perfection or extent of any alleged Permitted Prior Lien and/or security interests.

constitute legal, valid, binding, and non-avoidable obligations of the Prepetition Credit Parties enforceable in accordance with the terms of the Prepetition Loan Documents; (d) no offsets, challenges, objections, defenses, claims or counterclaims of any kind or nature to any of the Prepetition Liens or Prepetition Secured Obligations exist, and no portion of the Prepetition Liens or Prepetition Secured Obligations is subject to any challenge or defense including, without limitation, avoidance, disallowance, disgorgement, recharacterization, or subordination (equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (e) the Debtors and their estates have no, and will assert no, claims, objections, challenges, causes of action, and/or choses in action, including without limitation, avoidance claims under Chapter 5 of the Bankruptcy Code or otherwise or applicable state law equivalents or actions for recovery or disgorgement, against any of the Prepetition Secured Parties, or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, consultants, directors, and employees arising out of, based upon or related to the Debtors, the Debtors' business or the Prepetition Secured Facility; (f) the Debtors have waived, discharged and released any right to challenge any of the Prepetition Secured Obligations, the priority of the Debtors' obligations thereunder, and the validity, extent and priority of the liens securing the Prepetition Secured Obligations (for the avoidance of doubt, subject and without prejudice to, the rights of parties-in-interest, including the Creditors' Committee or any other statutory committee that may be appointed in the Chapter 11 Cases, as set forth in paragraph 27 herein), and (g) the Prepetition Secured Obligations constitute allowed, secured claims within the meaning of sections 502 and 506 of the Bankruptcy Code.

(v)     *Release*.  Subject to paragraph 27, the Debtors, on behalf of themselves and their estates (including any successor trustee or other estate representative in the Chapter 11

Cases and any successor cases, including under chapter 7 of the Bankruptcy Code (any such case a "**Successor Case**")) and any party acting by, through, or under the Debtors or their estates, hereby stipulate and agree that they forever and irrevocably release, discharge, and acquit the Prepetition Secured Parties and each of their respective successors, assigns, affiliates, subsidiaries, parents, officers, shareholders, professionals, directors, employees, advisors, consultants, attorneys, and agents, past, present, and future, and their respective heirs, predecessors, successors, and assigns, each solely in their capacities as such (collectively, the "**Releasees**") of and from any and all claims, controversies, disputes, liabilities, obligations, demands, damages, expenses (including reasonable attorneys' fees), debts, liens, actions and causes of action of any and every nature whatsoever, known or unknown, foreseen or unforeseen, matured or contingent, liquidated or unliquidated, both at law and in equity, relating to or in respect of, as applicable, the Debtors, the Prepetition Loan Documents, the Prepetition Secured Obligations and/or the transactions contemplated hereunder or thereunder, including (x) any so-called "lender liability" or equitable subordination or recharacterization claims or defenses, (y) any and all claims and causes of action arising under the Bankruptcy Code, and (z) any and all claims and causes of action with respect to the validity, priority, perfection, or avoidability of the liens or claims of the Prepetition Agent and the Prepetition Secured Parties.  The Debtors further waive and release any defense, right of counterclaim, right of set-off, or deduction to the payment of the Prepetition Secured Obligations that the Debtors may now have or may claim to have against the Releasees, arising out of, connected with, or relating to any and all acts, omissions, or events occurring prior to this Court entering this Final Order relating to the Debtors, the Debtors' business or the Debtors' secured lending relationship with the Prepetition Secured Parties.

G.      **Cash Collateral**.  All of the Debtors' cash, including any proceeds of Prepetition Collateral and any cash or cash equivalents in deposit accounts, wherever located, but excluding Pendrick Cash and Sapientes Cash, constitutes Cash Collateral of the Prepetition Secured Parties; provided, for the avoidance of doubt, cash held in the Debtors' Nonqualified Deferred Compensation Plan (effective as of November 1, 2018) (the "**DCP Assets**") does not constitute Cash Collateral. The Debtors shall hold all of the DCP Assets in a designated account or accounts until a chapter 11 plan is confirmed or until the Court orders otherwise.

H.      **Pendrick Cash**.  All cash and cash equivalents, wherever located, that (a) has been received by the Debtors and is attributable to accounts receivable previously purchased by Pendrick Capital Partners LLC ("**Pendrick**") in connection with the Account Purchase Agreement with American Physician Partners LLC, dated August 19, 2020, and (b) the Bankruptcy Court (or such other court of competent jurisdiction) has determined was the property of Pendrick as of the Petition Date (such cash and cash equivalents, if any, "**Pendrick Cash**"), shall not constitute property of the Debtors or their estates or Cash Collateral hereunder. The Debtors shall segregate or reserve an amount equal to $384,476.07 until such time as the Bankruptcy Court (or such other court of competent jurisdiction) determines whether any of the Debtors' cash or cash equivalents constitutes Pendrick Cash.

I.      **Sapientes Cash**.

(i)     All cash and cash equivalents, wherever located, that (a) has been received by the Debtors and is attributable to accounts receivable previously purchased by Sapientes Funding II, LLC ("**Sapientes**") in connection with that certain Purchase Agreement, dated April 5, 2023 (the "**Purchase Agreement**"), and (b) the Bankruptcy Court (or such other court of competent jurisdiction) has determined was the property of Sapientes as of the Petition Date

(such cash and cash equivalents, if any, "**Sapientes Pre-Petition Cash**"), shall not constitute property of the Debtors or their estates or Cash Collateral hereunder.  The Debtors shall segregate or reserve an amount equal to $1,836,528.46 until such time as the Bankruptcy Court (or such other court of competent jurisdiction) determines whether any of the Debtors' cash or cash equivalents constitutes Sapientes Cash.

(ii)    All cash and cash equivalents, wherever located, that have been received by the Debtors since the Petition Date or will be received by the Debtors hereafter and that are attributable to accounts receivable previously purchased by Sapientes in connection with the Purchase Agreement (the "**Sapientes Post-Petition Cash**" and together with the Sapientes Pre-Petition Cash, the "**Sapientes Cash**"), shall not constitute property of the Debtors or their estates or Cash Collateral hereunder and the payment of the Sapientes Post-Petition Cash shall be governed by the Payment Procedures (defined below).

J.    **Findings Regarding Use of Cash Collateral**.

(i)    *Entitlement to Adequate Protection*.  The Prepetition Secured Parties are each entitled to receive adequate protection as set forth in this Final Order pursuant to sections 361 and 363, of the Bankruptcy Code, to the extent of any aggregate diminution in value resulting from, among other things, the Debtors' use, sale, or lease of Cash Collateral and other Prepetition Collateral, the subordination to the Carve Out (as defined herein) and the imposition of the automatic stay ("**Diminution in Value**") as to each of their respective interests in the Prepetition Collateral (including Cash Collateral).

(ii)    *Need for Use of Cash Collateral*.  The Debtors have an immediate and critical need to use Cash Collateral including cash generated from collection of patient receivables and net proceeds generated from sales of patient receivables in order to, among other

things, fund payroll and administer these Chapter 11 Cases.  The Debtors do not have sufficient available sources of working capital and/or financing to fund their clinical team's obligations or administer these Chapter 11 Cases without the authorized use of Cash Collateral.

(iii)    *Use of Cash Collateral*.  As a condition to the authorization to use Prepetition Collateral, including Cash Collateral, the Prepetition Secured Parties require, and the Debtors have agreed, that Cash Collateral shall be used, in each case in a manner consistent with the terms and conditions of this Final Order in accordance with an initial weekly budget, a form of which is attached hereto as **Exhibit A** (the "**Initial Budget**"), which shall be updated bi-weekly, and as frequently as weekly as the Debtors may deem necessary; provided, copies of any such subsequent Budgets shall be provided to the Creditors' Committee, the Ad Hoc Committee of Healthcare Providers and the Employee Objectors; provided, further, the Initial Budget and any subsequent Budget shall be in all respects acceptable to the Prepetition Agent[5] (the "**Budget**"), and as otherwise provided in this Final Order, for: (a) working capital; (b) other general corporate purposes of the Debtors; (c) permitted payments of the costs of administration of the Chapter 11 Cases (including professional fees and expenses of the Debtors' professionals and professionals retained by the Creditors' Committee and the Ad Hoc Committee of Healthcare Providers (as expressly set forth herein)); (d) payment of certain adequate protection amounts to the Prepetition Secured Parties, as set forth in paragraph 7 hereof; (e) payment of the Carve Out (which shall be in accordance with paragraph 24 of this Final Order); (f) payment of fees to the Debtors' revenue cycle provider, Medical Consultants, Inc. ("**MCI**"), subject to reconciliation, (g) payment, upon prior written notice to the Prepetition Secured Parties and the

---

[5]    For the avoidance of doubt, any consents, waivers, or amendments hereunder shall be at the direction or with the consent of the Required Lenders (as defined herein).

Creditors' Committee, to certain purchasers of the Debtors' patient receivables for amounts received by the Debtors exclusively during the post-petition period related to remittances on account receivables previously sold to the certain purchasers (*i.e.*, cash received exclusively during the postpetition period that the Debtors specifically disclaim and as not the property of the Debtors) including payment of amounts as provided for in the Payment Procedures; provided, for the avoidance of doubt, any such payments do not constitute Cash Collateral or proceeds thereof; provided, further, any such payments are made without prejudice to the Creditors' Committee's rights to oppose whether such funds constitute property of the estate, (h) refund payments to patients directly or through MCI, as agent for payment of patient refunds related to overpayments by patients identified during the post-petition period, subject to reconciliation, and (i) such other uses set forth in the Budget. Pending the approval of any updated Budget by the Prepetition Agent, the prior Budget then in effect shall remain binding.

K.      **Adequate Protection**. The Prepetition Agent, for the benefit of itself and the Prepetition Secured Parties, is entitled to receive adequate protection to the extent of any Diminution in Value of its interests in the Prepetition Collateral. Pursuant to sections 361, 363 and 507(b) of the Bankruptcy Code, as adequate protection, subject in all respects to the Carve Out (as defined herein) the Prepetition Secured Parties will receive (a) to the extent of any Diminution in Value of their interests in the Prepetition Collateral, adequate protection liens and superpriority claims, as more fully set forth in paragraphs 3–6 herein, (b) [reserved], and (c) current payment of fees and expenses of the Prepetition Agent (including without limitation, legal and other professionals' fees and expenses of King & Spalding LLP ("**King & Spalding**"), as counsel to the Prepetition Agent, FTI Consulting, as financial advisor to the Prepetition Agent,

and Richards, Layton & Finger, as local counsel, whether arising before or after the Petition Date) in accordance with the procedures set forth in paragraph 7 herein.

L.    **Sections 506(c) and 552(b)**.  In light of the Prepetition Agent's and Prepetition Lenders' consent to the use of Cash Collateral and agreement that their respective liens and claims, including any adequate protection liens and claims, shall be subject to the Carve Out, (a) the Prepetition Secured Parties are entitled to a waiver of any "equities of the case" exception under section 552(b) of the Bankruptcy Code and (b) the Prepetition Secured Parties are each entitled to a waiver of the provisions of section 506(c) of the Bankruptcy Code.

M.    **Good Faith of the Prepetition Agent and Prepetition Lenders.**

(i)    *Business Judgment and Good Faith*.  The terms and conditions of the use of Cash Collateral were negotiated in good faith and at arms' length among the Debtors and the Prepetition Secured Parties, with the assistance of counsel and their respective advisors.  Use of Cash Collateral shall be deemed to have been allowed in good faith by the Prepetition Secured Parties.

(ii)    *Consent to Use of Cash Collateral*.  Absent an order of this Court and the provision of adequate protection, consent of the Prepetition Secured Parties is required for the Debtors' use of Cash Collateral.  The Prepetition Secured Parties have consented, or are deemed pursuant to the Prepetition Loan Documents to have consented, to the Debtors' use of Cash Collateral in accordance with and subject to the terms and conditions in this Final Order.

N.    **Relief Essential; Best Interest**. For the reasons stated above, the Debtors have requested immediate entry of this Final Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2), and the Local Rules. Absent granting the relief set forth in this Final Order, the Debtors' estates, their businesses and properties and their ability to preserve the value of the

Debtors' assets will be immediately and irreparably harmed. Authorization of the use of Cash Collateral in accordance with this Final Order is therefor in the best interests of the Debtors' estates and consistent with their fiduciary duties. Based on all of the foregoing, sufficient cause exists for immediate entry of the Final Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2) and the applicable Bankruptcy Local Rules.

O.    **Notice of Final Hearing**.  Notice of the Final Hearing and the relief requested in the Motion has been provided by the Debtors, whether by facsimile, electronic mail, overnight courier or hand delivery, to certain parties-in-interest, including, among others:  (i) the U.S. Trustee; (ii) the holders of the thirty (30) largest unsecured claims against the Debtors on a consolidated basis; (iii) King & Spalding; (iv) all other holders of other debt instruments issued by the Debtors; (v) all parties asserting liens against the Debtors' assets; (vi) the U.S. Attorney's Office for the District of Delaware; (vii) the Internal Revenue Service; (viii) any party that requests service pursuant to Bankruptcy Rule 2002; and (ix) any such other party entitled to notice under the Bankruptcy Rules and Local Rules.

Based upon the foregoing findings and conclusions, the Motion and the record before the Court with respect to the Motion, and after due consideration and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT**:

1.    Motion Granted.  The Motion is hereby granted in accordance with the terms and conditions set forth in this Final Order.  Any objections to the Motion with respect to the entry of this Final Order that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are hereby denied and overruled.  This Final Order shall become effective immediately upon its entry.

2.      <u>Authorization to Use Cash Collateral</u>.  Subject to the terms and conditions of this Final Order (including, without limitation, paragraphs 24 and 27 hereof), and in accordance with the Budget, subject to the Permitted Variance, the Debtors are authorized to use Cash Collateral through the Termination Date (as defined below), unless extended by written agreement, as applicable, of the Prepetition Agent (at the direction of the Required Lenders). Nothing in this Final Order shall authorize the disposition of any assets of the Debtors or their estates outside the ordinary course of business, or any Debtor's use of any Cash Collateral or other proceeds resulting therefrom, except as permitted in this Final Order and in accordance with the Budget.

3.      <u>Adequate Protection Liens</u>.

(i)     *Adequate Protection Liens*.  Pursuant to sections 361 and 363(e) of the Bankruptcy Code, as adequate protection of the interests of the Prepetition Secured Parties in the Prepetition Collateral, including Cash Collateral, to the extent of any Diminution in Value of such interests in the Prepetition Collateral, the Debtors hereby grant to the Prepetition Agent, on behalf of itself and the Prepetition Secured Parties, subject to the terms and conditions set forth below, continuing, valid, binding, enforceable, and perfected Liens, which shall be senior in priority to the Prepetition Liens, upon all of the Prepetition Collateral and "Adequate Protection Collateral" (as defined below) but excluding all proceeds and property recovered from the Debtors' claims and causes of action under sections 502(d), 544, 545, 547, 548, 549, and 550 of the Bankruptcy Code and under any applicable state Uniform Voidable Transactions Act, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, and similar statutes or common law (collectively, "**Avoidance Actions**") (such adequate protection replacement Liens, the "**Adequate Protection Liens**").  "**Adequate Protection Collateral**" shall include, without limitation, any and all tangible and intangible pre- and post-petition property of the Debtors, whether existing before, on or after the Petition Date, together with any proceeds thereof, including, without limitation, any and all cash and any investment of such cash, inventory, goods, accounts, accounts receivable, other rights to payment whether arising before or after the Petition Date, contracts, properties, plants, fixtures, machinery, equipment, general intangibles, payment intangibles, documents, instruments, securities, chattel paper, interests in leaseholds (provided, however, that solely to the extent that any lease prohibits the granting of a lien thereon, or otherwise prohibits hypothecation of the leasehold interest, then in such event there shall only be a lien on the economic value of, proceeds of sale or other disposition of, and any other proceeds and products of such leasehold interests unless the applicable provision is

rendered ineffective by applicable non-bankruptcy law or the Bankruptcy Code), real property, deposit accounts (except for any account created to hold an adequate assurance deposit for utility providers, pursuant to separate order of this Court), securities accounts, investment property, letters of credit, letter-of-credit rights, patents, copyrights, trademarks, trade names, rights under license agreements and other intellectual property, commercial tort claims and DCP Assets (subject to the cap set forth below), capital stock of subsidiaries, wherever located, and the proceeds, products, rents, accession and profits of the foregoing.  Notwithstanding any other provision of this Final Order to the contrary, (x) Avoidance Actions and proceeds thereof, (y) any proceeds of commercial tort claims and DCP Assets in excess of $3,000,000 in the aggregate, and (z) any assets that become unencumbered as a result of a successful Challenge, shall not constitute Adequate Protection Collateral (collectively, the "Excluded Assets").  For the further avoidance of doubt, Adequate Protection Collateral excludes Pendrick Cash and Sapientes Cash, and the Adequate Protection Liens and claims shall not attach to or be recoverable against any cash or cash equivalents constituting Pendrick Cash or Sapientes Cash.

4.    Priority of Adequate Protection Liens.

(i)    The Adequate Protection Liens shall be subject to the Carve Out and (a) with respect to Prepetition Collateral and Adequate Protection Collateral that constitutes Prepetition Collateral, shall be junior only to Permitted Prior Liens and (b) with respect to Adequate Protection Collateral that does not constitute Prepetition Collateral and is otherwise unencumbered as of the Petition Date, shall constitute senior security interests in and liens on such Adequate Protection Collateral.

(ii)    Except as provided herein, including, without limitation, with respect to the Carve Out, the Adequate Protection Liens shall not be made subject to or *pari*

*passu* with any lien or security interest heretofore or hereinafter granted in the Chapter 11 Cases or any Successor Cases and shall be valid and enforceable against any trustee appointed in any of the Chapter 11 Cases or any Successor Cases, or upon the dismissal of any of the Chapter 11 Cases or Successor Cases.  Subject to the Challenge Deadline (as defined below) and related provisions of paragraph 27, the Adequate Protection Liens shall not be subject to sections 510, 549, or 550 of the Bankruptcy Code.  No lien or interest avoided and preserved for the benefit of the estate pursuant to section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the Prepetition Liens or the Adequate Protection Liens.

5.     Adequate Protection Superpriority Claims.  As further adequate protection of the interests of the Prepetition Secured Parties in the Prepetition Collateral, to the extent of any Diminution in Value of their respective interests in the Prepetition Collateral, and subject in all respects to the Carve Out, the Prepetition Agent, on behalf of itself and the Prepetition Secured Parties, are hereby granted as and to the extent provided by section 507(b) or the Bankruptcy Code allowed superpriority administrative expense claims in each of the Chapter 11 Cases and any Successor Cases (the "**Adequate Protection Superpriority Claims**"). For the further avoidance of doubt, the Adequate Protection Superpriority Claims shall not attach to or be recoverable against any cash or cash equivalents constituting Pendrick Cash or the Excluded Assets or Sapientes Cash.

6.     Priority of the Adequate Protection Superpriority Claims.  Except as set forth herein and subject to the Carve Out, the Adequate Protection Superpriority Claims shall have priority over all administrative expense claims and unsecured claims against the Debtors or their estates, now existing or hereafter arising, of any kind or nature whatsoever as and to the

extent provided for by sections 503(b) and 507(b) of the Bankruptcy Code, but shall not be payable from or have recourse to Excluded Assets.

7.    <u>Adequate Protection Payments and Protections for Prepetition Secured Parties</u>.  As further adequate protection, the Debtors are authorized to pay in cash, without the need for the filing of formal fee applications (including as to any amounts arising before or after the Petition Date), all reasonable and documented (in summary form; provided, however, that the Creditors' Committee may request detailed copies of such invoices subject to reasonable redactions for privilege and confidentiality) prepetition and postpetition accrued and unpaid out-of-pocket fees, costs, disbursements and expenses of the Prepetition Agent (but not the other Prepetition Secured Parties), which payments shall be made within ten (10) calendar days (which time period may be extended by the applicable professional) following receipt by the Debtors, the Creditors' Committee, and the U.S. Trustee (the "**Review Period**") of an invoice therefor (the "**Invoiced Fees**").  The invoices for such Invoiced Fees shall include the number of hours billed by each timekeeper (except for financial advisors compensated on other than an hourly basis) and a summary description of services provided and the aggregate expenses incurred by the applicable professional firm; <u>provided</u>, <u>however</u>, that any such invoice (i) may be limited and/or redacted to protect privileged, confidential, or proprietary information and (ii) shall not be required to contain individual time detail (<u>provided,</u> that such invoice shall contain (except for financial advisors compensated on other than an hourly basis) summary data regarding hours worked by each timekeeper for the applicable professional).  The Debtors, the Creditors' Committee, and the U.S. Trustee may object to any portion of the Invoiced Fees (the "**Disputed Invoiced Fees**") within the Review Period by filing with the Court a motion or other pleading, on at least ten (10) business days' prior written notice (but no more than fifteen (15) business

days' notice) of any hearing on such motion or other pleading, setting forth the specific objections to the Disputed Invoiced Fees in reasonable narrative detail and the basis for such objections; provided, that payment of any undisputed portion of Invoiced Fees shall not be delayed based on any objections thereto. Pending such resolution, the undisputed portion of any Invoiced Fees shall be paid promptly by the Debtors.

        8.      <u>Adequate Protection Reservation</u>.

        (i)      Nothing herein shall impair or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to the Prepetition Secured Parties or the holders of any Prior Permitted Liens hereunder is insufficient to compensate for any Diminution in Value of their respective interests in the Prepetition Collateral during the Chapter 11 Cases or any Successor Cases; *provided, however*, that any claims or liens provided for through the application of section 507(b) of the Bankruptcy Code shall not be payable from, have recourse to, attach to, or be recoverable against the Excluded Assets as set forth in paragraphs 3(i), 5, and 6 of this Final Order.  Further, this Final Order shall not prejudice or limit the rights of the Prepetition Secured Parties to seek additional relief with respect to the use of Cash Collateral or for additional adequate protection; provided, however, that any such requests for relief are subject to prior notice and a hearing allowing parties in interest a reasonable opportunity to object. For the further avoidance of doubt, the Adequate Protection Reservation in this paragraph and related claims shall not attach to or be recoverable against any cash or cash equivalents constituting Pendrick Cash, Sapientes Cash or Excluded Assets.

(ii)     Adequate Protection of Prior Permitted Liens.   The Employee Objectors, [6] who assert a Prior Permitted Lien, shall be deemed adequately protected so long as the Debtors maintain a minimum cash balance in their operating accounts of at least $5,500,000.00.   If at any time, the balance of the Debtors' operating accounts falls below $5,500,000.00, the Debtors shall immediately provide notice to counsel for the Employee Objectors of the accounts' balance, and the Debtors consent to the Employee Objectors seeking an expedited determination regarding the continued use of cash collateral by the Debtors and any additional adequate protection necessary to preserve any Prior Permitted Lien the Employee Objectors may have in this case.   The Debtors, the Prepetition Secured Parties, the Creditor's Committee, and the Employee Objectors shall use good faith efforts to resolve any dispute relating to the Prior Permitted Liens asserted by the Employee Objectors prior to the confirmation of any plan of reorganization or liquidation of the Debtors, and all rights of all such parties remain reserved with respect to any such dispute.

**Provisions Common to Use of Cash Collateral**

9.     Budget Maintenance and Compliance.

(i)     Commencing on the second Wednesday following the Petition Date and on the Wednesday of each week thereafter, the Debtors will deliver to the Prepetition Agent, for distribution to the Prepetition Secured Parties, with a copy to counsel to the Creditors' Committee, a variance report comparing actual receipts and disbursements to projected amounts under the Budget, together with all customary supporting documentation as reasonably requested by the Prepetition Agent.   The use of Cash Collateral shall be in accordance with the Budget,

---

[6] As defined in the *Limited Objection and Reservation of Rights Regarding Debtor's Motion for Final Order (I) Authorizing the Use of Cash Collateral and (II) Granting Adequate Protection to Prepetition Secured Parties* [D.I. 106].

subject to the Permitted Variance, as may be updated from time to time subject to the terms hereof and the terms and conditions set forth in this Final Order; provided, that, in the case of fees, costs and expenses of the Prepetition Agent (but not the other Prepetition Secured Parties), the Debtors shall pay such fees, costs and expenses in accordance with this Final Order without being limited by the Budget. The Budget and any updates thereto shall be subject to prior written approval of, and in form and substance acceptable to, the Prepetition Agent and upon at least two (2) Business Day's prior written notice to the Creditors' Committee. Any extension of the use of Cash Collateral and any terms related thereto, including the Budget and the Final Order, shall be made in consultation with the Creditors' Committee's professionals, and the Creditors' Committee and the United States Trustee shall have a reasonable opportunity to object to any such extension, as applicable.

(ii)    The Debtors shall not permit, during the initial two weeks under the Budget, and then on a rolling three-week basis under the Budget, disbursements of Cash Collateral to exceed a fifteen percent (15%) cumulative aggregate variance to the Budget (collectively, the "**Permitted Variance**").

(iii)    The Debtors are authorized and directed to fund the segregated trust account of the Debtors' general bankruptcy counsel for the sole purpose of reserving for and paying unpaid Allowed Professional Fees (as defined in paragraph 24(a) hereof) (the "**Professional Fee Reserve Account**").  On a weekly basis and solely up to the amounts set forth for Estate Professionals (as defined in paragraph 24(a) hereof) for each such week in the Budget, the Debtors shall fund the Professional Fee Reserve Account (such amounts, the "**Reserve Amounts**"), and such Reserve Amounts may be applied from time to time to pay the Allowed Professional Fees prior to any and all other claims.  At the discretion of the Debtors, amounts in

the Budget not fully funded to the Professional Fee Reserve Account on a weekly basis for the current or prior weeks can be funded to the Reserve Account in subsequent weekly periods and, for the avoidance of doubt, any unused professional fees set forth in the Budget for a prior week shall be "rolled forward" to the subsequent week for the benefit of the applicable Estate Professionals.   If, after payment in full of all Reserve Amounts on account of Allowed Professional Fees, the Professional Fee Reserve Account has not been reduced to zero, all remaining funds shall be paid to the Prepetition Agent, for benefit of the Prepetition Secured Parties, in accordance with their rights and priorities as of the Petition Date; provided, all remaining funds in the Professional Fee Reserve Account after payment in full of the Allowed Professional Fees shall constitute Cash Collateral and remain subject to the Prepetition Secured Parties' liens and the Committee's Challenge rights hereunder.   For the avoidance of doubt, the Debtors' obligation to pay Allowed Professional Fees shall not be limited or deemed limited to funds held in the Professional Fee Reserve Account, and payment of such Allowed Professional Fees shall be a condition to the effectiveness of any confirmed plan of liquidation.

10.     <u>Modification of Automatic Stay</u>.   The automatic stay imposed under section 362(a)(2) of the Bankruptcy Code is hereby modified as necessary to effectuate all of the terms and provisions of this Final Order, including, without limitation, to:  (a) permit the Debtors to grant the Adequate Protection Liens and Adequate Protection Superpriority Claims; (b) permit the Debtors to perform such acts as each of the Prepetition Secured Parties may reasonably request to assure the perfection and priority of the liens granted herein; (c) permit the Debtors to incur all liabilities and obligations to the Prepetition Secured Parties under this Final Order; and (d) authorize the Debtors to make, and the Prepetition Secured Parties to retain and apply,

payments made in accordance with the terms of this Final Order and the Budget, subject to the Permitted Variance.

11.    <u>Perfection of Adequate Protection Liens</u>.    This Final Order shall be sufficient and conclusive evidence of the creation, validity, perfection, and priority of all liens granted herein, including the Adequate Protection Liens, without the necessity of filing or recording any financing statement, mortgage, notice, or other instrument or document which may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement, securities account control agreement, or other similar agreement) to grant, attach, validate or perfect (in accordance with applicable non-bankruptcy law) the Adequate Protection Liens, or to entitle the Prepetition Secured Parties and the Prepetition Secured Obligations to the priorities granted herein.    Notwithstanding the foregoing the Prepetition Agent is authorized, but not required, to file, subject to the terms and priorities of this Final Order, as it in its sole discretion deems necessary or advisable, such financing statements, security agreements, mortgages, notices of liens, and other similar documents to perfect in accordance with applicable non-bankruptcy law or to otherwise evidence the Adequate Protection Liens and all such financing statements, mortgages, notices, and other documents shall be deemed to have been filed or recorded as of the Petition Date; *provided*, *however*, that no such filing or recordation shall be necessary or required in order to create or perfect the Adequate Protection Liens.    The Debtors, without further consent of any party, are authorized to execute and deliver all such financing statements, mortgages, notices, and other documents as the Prepetition Agent may reasonably request.    The Prepetition Agent, in its sole discretion, may file a photocopy of this Final Order as a financing statement with any filing or recording office or with any registry of

deeds or similar office, in addition to or in lieu of such financing statements, notices of lien or similar instrument.

12.     <u>Application of Proceeds of Collateral</u>.  As a condition to the authorization to use Cash Collateral, the Debtors have agreed that as of and commencing on the date of the Final Hearing, the Debtors shall use and apply all net proceeds of Prepetition Collateral in accordance with the Budget, subject to the Permitted Variance.

13.     <u>Protections of Rights of the Prepetition Secured Parties</u>.

(i)     The Debtors will, until the Termination Date, (A) use reasonable efforts to maintain books, records, and accounts to the extent and as required by the Prepetition Loan Documents, (B) reasonably cooperate with, consult with, and provide to the Prepetition Secured Parties all such information and documents that any or all of the Debtors are obligated to provide under the provisions of this Final Order, (C) upon reasonable advance notice, permit consultants, advisors, and other representatives of each of the Prepetition Secured Parties to visit and inspect any of the Debtors' respective properties, to examine and make abstracts or copies from any of their respective books and records, to tour the Debtors' business premises and other properties, and to discuss, and provide advice with respect to, their respective affairs, finances, properties, business operations, and accounts with their respective officers, employees, independent public accountants, and other professional advisors as and to the extent required by the Prepetition Loan Documents, (D) permit the Prepetition Secured Parties, and their respective consultants, advisors and other representatives to consult with the Debtors' management and advisors on matters concerning the Debtors' businesses, financial condition, operations and assets, and (E) upon reasonable advance notice, permit the Prepetition Secured Parties, to

conduct, at their reasonable discretion and at their own cost and expense, field audits, and collateral examinations at reasonable times in respect of any or all of the Prepetition Collateral.

(ii)      The Prepetition Agent (acting at the direction of the "Requisite Lenders" (as such term is defined in the Prepetition Credit Agreement, the "**Required Lenders**")) shall have the right to credit bid up to the full amount of any Prepetition Secured Obligations in any sale of Prepetition Collateral or Adequate Protection Collateral, as provided for in section 363(k) of the Bankruptcy Code, whether such sale is effectuated through sections 363 or 1129 of the Bankruptcy Code, by a Chapter 7 trustee under section 725 of the Bankruptcy Code, or otherwise.  The relief set forth in this paragraph 13(ii) shall in all events be subject to a Challenge provided for in paragraph 27 herein.

14.     Cash Collection.  From and after the date of the entry of this Final Order, the Debtors shall maintain cash management consistent with prepetition practices and in accordance with the Cash Management Order.  Except as otherwise permitted in the Cash Management Order or otherwise agreed to in writing by the Prepetition Agent (acting at the direction of the Required Lenders), the Debtors shall maintain no accounts except those identified, or open or closed in accordance with the procedures set forth in, the Cash Management Order.

15.     Maintenance of Prepetition Collateral.  Until the indefeasible payment in full of all Prepetition Secured Obligations, the Debtors shall maintain the Prepetition Collateral as required under the Prepetition Loan Documents.  For the avoidance of doubt, at any time prior to the indefeasible repayment in full of the Prepetition Secured Obligations, the Prepetition Secured Parties' rights to object to the Debtors' use of Cash Collateral and to assert a lack of adequate protection as a result of the Debtors' failure to (a) maintain the Prepetition Collateral as

required under the Prepetition Loan Documents or (b) maintain the cash management system in effect as of the Petition Date shall be fully preserved.

16.    <u>Termination Date</u>.    On the Termination Date, except as provided in paragraph 19 and subject to the Carve Out, all authority to use Cash Collateral shall cease.

17.    <u>Case Milestone</u>.    As a condition to the use of Cash Collateral, and as further adequate protection to the Prepetition Secured Parties, the Debtor shall comply with the following milestone (the "**Case Milestone**"): No later than December 8, 2023, the Bankruptcy Court shall have confirmed a plan of liquidation, in form and substance satisfactory to the Prepetition Secured Parties, and the effective date of such plan shall have occurred; provided, however, that the Creditors' Committee may seek a one time extension of such Case Milestone of not more than thirty (30) days for cause upon a showing that the Debtors, or the Prepetition Secured Parties, failed to reasonably cooperate with the Creditors' Committee with respect to information reasonably and timely requested by the Creditors' Committee.

18.    <u>Events of Default</u>.    Until the Prepetition Secured Obligations are indefeasibly paid in full and all commitments thereunder are terminated, the following shall constitute an event of default (collectively, the "**Events of Default**") under this Final Order; provided, any such Event of Default capable of being cured shall be subject to cure within the Remedies Notice Period (as defined below):

(i)    the failure of the Debtors to perform, in any respect, any of the material terms, provisions, conditions, covenants, or obligations under this Final Order, unless waived by the Prepetition Agent (acting at the direction of the Required Lenders), in writing;

(ii)    (A) the failure of the Debtors to comply with the Budget, subject to the Permitted Variance, or (B) the payment of, or application by the Debtors for authority to pay,

any prepetition claims unless in accordance with the Budget or as agreed by the Prepetition Secured Parties;

(iii)     the entry of an order amending, supplementing, staying, vacating or otherwise materially modifying this Final Order or the Cash Management Order in a manner that materially and adversely affects the Prepetition Secured Parties, the filing by a Debtor of a motion for reconsideration with respect to this Final Order or the Cash Management Order without the consent of the Prepetition Agent;

(iv)     the appointment of an interim or permanent trustee in any of the Chapter 11 Cases, the appointment of a receiver, receiver and manager, interim receiver or similar official over any substantial portion of the assets of the Debtors, or the appointment of a trustee receiver or an examiner in any of the Chapter 11 Cases with expanded powers to operate or manage the financial affairs, business, or reorganization of the Debtors;

(v)     the filing of a motion to approve a sale of Prepetition Collateral not included in the Budget unless otherwise consented to in writing by the Prepetition Secured Parties;

(vi)     the filing of a proposed plan of reorganization unless otherwise consented to in writing by the Prepetition Secured Parties;

(vii)     the dismissal of any Chapter 11 Case, or the conversion of any Chapter 11 Case from one under Chapter 11 to one under Chapter 7 of the Bankruptcy Code or any Debtor filing a motion or other pleading seeking the dismissal of the Cases under section 1112 of the Bankruptcy Code or otherwise;

(viii)     the Court entering an order granting, relief from or modifying the automatic stay of section 362 of the Bankruptcy Code (i) to allow any creditor (other than the

Prepetition Agent) to execute upon or enforce a lien on any Prepetition Collateral, or (ii) with respect to any lien on or the granting of any lien on any Prepetition Collateral to any federal, state or local environmental or regulatory agency or authority, which in either case involves a claim of $500,000 or more;

(ix)    any Debtor shall file a request for an order, or entry of an order materially adversely impacting the rights and interests of the Prepetition Secured Parties and such order shall have been entered by the Court or any other court of competent jurisdiction;

(x)    any Debtor shall challenge, or support a challenge of, any payments made to any Prepetition Secured Party with respect to the Prepetition Secured Obligations;

(xi)    the entry of any order by the Court granting, or the filing by any Debtor of (or any Debtor failing to contest in good faith the filing of) any motion or other request with the Court seeking authority (i) to use the Cash Collateral that constitutes Prepetition Collateral or Adequate Protection Collateral other than as set forth in this Final Order or (ii) to obtain any financing under section 364(d) of the Bankruptcy Code priming the Prepetition Liens or Adequate Protection Liens;

(xii)    the automatic stay is modified, reversed, revoked or vacated in a manner that has a material adverse impact on the rights and interests of any of the Prepetition Secured Parties;

(xiii)    the entry of an order in the Chapter 11 Cases charging any of the Prepetition Collateral or the Prepetition Secured Parties under sections 506(c) or 552(b) of the Bankruptcy Code under which any person takes action against such collateral or that becomes a final non-appealable order, or granting other actions that are materially adverse to any of the

Prepetition Secured Parties or their respective rights and remedies under the Prepetition Loan Documents in the Chapter 11 Cases (or any order requiring any of the Prepetition Secured Parties to be subject to the equitable doctrine of "marshaling" except as set forth in this Final Order);

(xiv)   the Debtors' failure to continue to contract the revenue cycle management services of the R1 RCM Inc., or such other provider as is reasonably satisfactory to the Prepetition Secured Lenders, and/or any such arrangement for revenue cycle management services shall fail to remain in effect, in either case on terms satisfactory to the Prepetition Secured Parties unless and until revenue cycle management is no longer needed by the Debtors; and

(xv)   a filing by any Debtor of any motion, pleading, application or adversary proceeding challenging the validity, enforceability, perfection or priority of the liens securing the Prepetition Secured Obligations or asserting any other cause of action against and/or with respect to the Prepetition Secured Obligations, the Adequate Protection Liens, the Prepetition Collateral, or any of the Prepetition Secured Parties, (or if the Debtors support any such motion, pleading, application or adversary proceeding commenced by any third party).

For the avoidance of doubt, the failure to comply with the Case Milestone shall constitute an Event of Default under this Final Order.

19.   <u>Rights and Remedies Upon Event of Default</u>.  (a) The automatic stay provisions of section 362 of the Bankruptcy Code are hereby modified to the extent necessary to permit the Prepetition Agent (acting at the direction of the Required Lenders), to enforce all of the rights under this Final Order and, immediately upon the occurrence and during the continuation of an Event of Default and the giving by the Prepetition Agent (acting at the direction of the Required Lenders) of five (5) business days' prior written notice (the

"**Termination Notice**"; and such notice period, the "**Remedies Notice Period**," *provided* that such period may be extended by prior written agreement between the Debtors and the Prepetition Agent (acting at the direction of the Required Lenders), in their respective sole discretion), delivered by electronic transmission to counsel to the Debtors, with copies to the U.S. Trustee and counsel to the Creditors' Committee, subject in all respects to the terms of this Final Order, including clause (b) below, (1) the Prepetition Agent (acting at the direction of the Required Lenders) may declare (any such declaration shall be referred to herein as a "**Termination Declaration**") (i) all Prepetition Secured Obligations owing under the Prepetition Loan Documents to be immediately due and payable and (ii) that the application of the Carve Out has occurred through the delivery of the Carve Out Trigger Notice (as defined herein) to the Debtors; and (2) the Prepetition Agent (acting at the direction of the Required Lenders) may declare a termination, reduction or restriction on the ability of the Debtors to use Cash Collateral (the date which is the earliest to occur of any such date a Termination Declaration is delivered and the Termination Date shall be referred to herein as the "**Termination Date**").  Upon termination of the Remedies Notice Period, unless the Court orders otherwise during such period, and subject to clause (b) below the applicable Prepetition Secured Parties shall be entitled to exercise their rights and remedies to satisfy the Prepetition Secured Obligations, and any allowed Adequate Prepetition Superpriority Claims and Adequate Protection Liens, subject to and consistent with (i) the Carve Out and (ii) this Final Order.  Unless the Court orders otherwise, the automatic stay, as to all of the Prepetition Secured Parties, shall automatically be terminated at the end of the Remedies Notice Period without further notice or order.  Upon expiration of the Remedies Notice Period, subject to the Carve Out in all respects, including the requirements of paragraph 24 hereof, the Prepetition Secured Parties shall be permitted to exercise all remedies set forth

herein, in the Prepetition Loan Documents and as otherwise available at law without further order of or application or motion to the Court.

(b)      Notwithstanding anything to the contrary in this Final Order or the Prepetition Loan Documents, during the Remedies Notice Period, the Debtors shall be permitted to use Cash Collateral, to (1) pay any amounts in accordance with the Carve Out, and (2) pay accrued post-petition wages and any other critical employee-related expenses to the extent provided for in the Budget and necessary to avoid harm to the Estates.

20.      Good Faith Under Section 363(m) of the Bankruptcy Code; No Modification or Stay of this Final Order.  The Prepetition Secured Parties have acted in good faith in connection with this Final Order and are entitled to rely upon the protections granted herein and by section 363(m) of the Bankruptcy Code to the extent applicable.  Based on the findings set forth in this Final Order and the record made during the Final Hearing, and in accordance with section 363(m) of the Bankruptcy Code, in the event any or all of the provisions of this Final Order are hereafter modified or amended by a subsequent order of this Court or any other court, the Prepetition Secured Parties are entitled to the protections provided in section 363(m) of the Bankruptcy Code.  Any such modification or amendment shall not affect the validity and enforceability of any advances previously made hereunder, or any lien, claim or priority authorized or created hereby.

21.      Other Expenses.  The Debtors are authorized and directed to pay all reasonable and documented prepetition and postpetition fees and expenses of the Prepetition Agent (but not the other Prepetition Secured Parties) in connection with Prepetition Secured Facility, as provided in the Prepetition Loan Documents, whether or not the transactions contemplated hereby are consummated, including attorneys' fees, financial advisory fees, fees

and expenses of other consultants, and indemnification and reimbursement of fees and expenses, in each case to the extent provided for in this Final Order.  Payment of all such fees and expenses shall not be subject to allowance by the Court.  Professionals for the Prepetition Agent shall not be required to comply with the U.S. Trustee fee guidelines; however any time that such professionals seek payment of fees and expenses from the Debtors, each professional shall provide copies of its fee and expense statements or invoices in summary form (which may be redacted or modified to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney-client privilege or of any benefits of the attorney work product doctrine) to the U.S. Trustee and counsel for the Creditors' Committee contemporaneously with the delivery of such fee and expense statements to the Debtors.  No attorney or advisor to the Prepetition Agent shall be required to file an application seeking compensation for services or reimbursement of expenses with the Court.  Subject to the right to assert a Challenge under paragraph 27 below, any and all fees, costs, and expenses paid prior to the Petition Date by any of the Debtors to the Prepetition Agent in connection with or with respect to the Prepetition Secured Facility, are hereby approved in full. The Prepetition Agent shall provide the Creditors' Committee with invoices reflecting all fees, costs and expenses paid by the Debtors up to ninety (90) days prior to the Petition Date to the Prepetition Agent within three (3) business days following entry of this Final Order.

22.    <u>Indemnification</u>.    Subject to the right to assert a Challenge under paragraph 27 below, the Debtors shall indemnify and hold harmless the Prepetition Secured

Parties (in their capacities as such) in accordance with the terms and conditions of the Prepetition Loan Documents.

23.   <u>Proofs of Claim</u>.  The Prepetition Secured Parties will not be required to file proofs of claim in any of the Chapter 11 Cases or Successor Cases for any claim allowed herein including, without limitation, any principal, unpaid interest, fees, expenses, and other amounts under the Prepetition Loan Documents, which claims shall be deemed allowed for all purposes in accordance with section 502(a) of the Bankruptcy Code.  Notwithstanding any order entered by the Court in relation to the establishment of a bar date in any of the Chapter 11 Cases or any Successor Cases to the contrary, the Prepetition Agent, in each case, on behalf of itself and the applicable Prepetition Secured Parties, is hereby authorized and entitled, in its sole discretion, but not required, to file (and amend and/or supplement, as it sees fit) a single, consolidated, master proof of claim and/or aggregate proofs of claim on behalf of the Prepetition Secured Parties, and may file such master claim in the lead Chapter 11 Case, or any Successor Cases, for any claim allowed herein, and such claim shall be deemed filed in every case jointly administered with such case.  Any proofs of claim filed by the Prepetition Agent or any Prepetition Lender shall be deemed to be in addition to and not in lieu of any other proof of claim that may be filed by such Prepetition Agent or any Prepetition Lender.  Any order entered by the Court in relation to the establishment of a bar date in any of the Chapter 11 Cases or Successor Cases shall not apply to any claim of the Prepetition Secured Parties.

24.     <u>Carve Out</u>.

(a)    <u>Carve Out</u>.  As used in this Final Order, the "**Carve Out**" means the sum of (i) all fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the notice set forth below); (ii) all reasonable fees and expenses up to $50,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth below); (iii) (A) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, and solely to the extent set forth in the Budget, all accrued and unpaid fees, disbursements, costs and expenses (the "**Allowed Professional Fees**") incurred by each of the persons or firms retained by the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code (the "**Debtor Professionals**") and the Creditors' Committee (including reasonable expenses of Creditors' Committee members), pursuant to section 328 or 1103 of the Bankruptcy Code (the "**Committee Professionals**" and, together with the Debtor Professionals, the "**Estate Professionals**") at any time before or on the first business day following delivery by the Prepetition Agent (at the direction of the Required Lenders) of a Carve Out Trigger Notice, whether allowed by the Court for each such Professional Person prior to or after delivery of a Carve Out Trigger Notice and (B) the Ad Hoc Carve Out (as defined below); and (iv) Allowed Professional Fees of Estate Professionals in an aggregate amount not to exceed **$250,000** incurred after the first business day following delivery by the Prepetition Agent (at the direction of the Required Lenders) of the Carve Out Trigger Notice (as defined herein), to the extent allowed at any time, whether by interim order, procedural order, or otherwise (the amounts set forth in this clause (iv) being the "**Post-Carve Out Trigger Notice Cap**"); *provided*, *however*, nothing herein shall be construed to impair the ability of any party to object to any fees, expenses, reimbursement or compensation sought by any such professionals or any other person

37

or entity.  For purposes of the foregoing, "**Carve Out Trigger Notice**" shall mean a written notice delivered by email (or other electronic means) by the Prepetition Agent (at the direction of the Required Lenders) to the Debtors, their lead restructuring counsel, the U.S. Trustee, and counsel to the Creditors' Committee, which notice may be delivered following the occurrence and during the continuation of an Event of Default under this Final Order, stating that the Post-Carve Out Trigger Notice Cap has been invoked, and the day on which a Carve Out Trigger Notice is given the Prepetition Agent (at the direction of the Required Lenders) to the Debtors with a copy to counsel to the U.S. Trustee and counsel to the Creditors' Committee shall be deemed the "**Carve Out Trigger Notice Date**".

(b)      For the avoidance of doubt and notwithstanding anything to the contrary herein or in the Prepetition Secured Facility, the Carve Out shall be senior to all liens and claims securing the Adequate Protection Liens, the Adequate Protection Superpriority Claims, the Prepetition Liens, the Prepetition Secured Obligations, and any and all other forms of adequate protection, liens, or claims securing the Prepetition Secured Obligations.

(c)      No Direct Obligation To Pay Allowed Professional Fees.  The Prepetition Secured Parties shall not be responsible for the payment or reimbursement of any fees or disbursements of any Estate Professional incurred in connection with the Chapter 11 Cases or any Successor Cases under any chapter of the Bankruptcy Code.  Nothing in this Final Order or otherwise shall be construed to obligate the Prepetition Secured Parties, in any way, to directly pay compensation to, or to reimburse expenses of, any Estate Professional or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

(d)      Payment of Allowed Professional Fees Prior to the Carve Out Trigger Notice Date.  Prior to the Carve Out Trigger Notice Date, the Debtors shall be permitted to pay

compensation and reimbursement of all Allowed Professional Fees of Estate Professionals, as the same may be due and payable, and such payments shall not reduce the Carve Out; provided, that any such payment is in accordance with the Budget when made, subject to the Permitted Variance.  Payment of Allowed Professional Fees may be made out of the Professional Fee Reserve Account.  Following the Carve Out Trigger Notice Date, the Debtors shall be immediately authorized to fund the Post-Carve Out Trigger Notice Cap into the Professional Fee Reserve Account for the benefit of the Estate Professionals.  Upon the receipt of the Carve Out Trigger Notice, the right of the Debtors to pay professional fees outside the Carve Out shall terminate and the Debtors shall provide immediate notice to all Estate Professionals informing them that such notice was delivered and further advising them that the Debtors' ability to pay such Estate Professional is subject to and limited by the Carve Out.  Any payment or reimbursement made prior to the occurrence of the Carve Out Trigger Notice Date in respect of any Allowed Professional Fees shall not reduce the Carve Out.

(e)    <u>Payment of Carve Out On or After the Carve Out Trigger Notice Date</u>. Any payment or reimbursement made on or after the occurrence of the Carve Out Trigger Notice Date in respect of any Allowed Professional Fees shall permanently reduce the Carve Out on a dollar-for-dollar basis.  Any funding of the Carve Out from use of Cash Collateral shall be added to, and made a part of, the Prepetition Secured Obligations secured by the Prepetition Collateral and shall be otherwise entitled to the protections granted under this Final Order, the Prepetition Loan Documents, the Bankruptcy Code, and applicable law. For the avoidance of doubt, payments made after the Termination Date shall reduce either the Carve Out or the Post-Carve Out Trigger Notice Cap, as applicable.

(f)     The Budget and the Carve Out shall include allowed reasonable fees and expenses incurred post-petition, in an amount not to exceed $250,000 in the aggregate, incurred by the Ad Hoc Committee of Healthcare Providers currently represented by McDermott Will & Emery LLP and Faegre ~~Binkle~~Drinker Biddle & Reath LLP, as co-counsel, and by Dundon Advisors, LLC (the "**Ad Hoc Carve Out**"), in connection with:

(i)     Assisting the Debtors in pursuing coverage under the Debtors' medical malpractice insurance policies for the Debtors' prepetition healthcare providers;

(ii)     Reviewing releases in Debtors' plan of liquidation that impact direct claims the Ad Hoc Committee of Healthcare Providers' constituency has or may have against third parties (but excluding releases with respect to the Prepetition Secured Parties in their capacities as Prepetition Secured Parties);

(iii)     Reviewing the Creditors' Committee efforts in (A) investigating (but not prosecuting or challenging) the validity, enforceability, perfection, priority or extent of the Prepetition Liens or Prepetition Secured Obligations and (B) reviewing releases in the Debtors' plan of liquidation not set in clause (ii) above; and

(iv)     Assisting the Debtors with respect to data preservation for the benefit of the Debtors' healthcare providers.

(g)     The Ad Hoc Committee of Healthcare Providers' invoices shall be subject to the procedures set forth in Section 7 hereof and shall not be deemed allowed until after the Review Period thereunder. For the avoidance of doubt, the Ad Hoc Committee of Healthcare

Providers shall be limited to seeking only the allowed fees and expenses set forth above against the Debtors and the Debtors' Estates, and shall not be entitled to any amounts or claims on account of a substantial contribution to the Debtors' Estates in excess thereof (and are deemed to have waived any substantial contribution claim related thereto).  The Ad Hoc Carve Out shall apply to fees and expenses incurred pre-petition, as well as all post-petition fees, subject to the amounts set forth in paragraph 24(f).

25.     Limitations on Use of Cash Collateral and Carve Out.  The Prepetition Collateral, the Cash Collateral and the Carve Out may not be used in connection with:  (a) preventing, restricting, hindering, delaying, objecting to, contesting, modifying or interfering with any of the Prepetition Secured Parties' enforcement or realization upon any of the Prepetition Collateral in accordance with this Final Order; (b) using or seeking to use Cash Collateral or selling or otherwise disposing of Prepetition Collateral without the consent of the Prepetition Agent (acting at the direction of the Required Lenders) other than as permitted in this Final Order; (c) outside the ordinary course of business, using or seeking to use any insurance proceeds constituting Prepetition Collateral for any purpose other than the purchase of insurance coverage or payment of claims associated with insurance coverage without the consent of the Prepetition Agent (acting at the direction of the Required Lenders); (d) seeking to amend or modify any of the rights granted to the Prepetition Secured Parties under this Final Order or the Prepetition Loan Documents; (e) objecting to or challenging in any way the Prepetition Liens, Prepetition Secured Obligations, or, as the case may be, Prepetition Collateral, or any other claims or liens, held by or on behalf of any of the Prepetition Secured Parties, respectively; (f) asserting, commencing or prosecuting any claims or causes of action whatsoever, including, without limitation, any actions under Chapter 5 of the Bankruptcy Code or applicable state law

equivalents, any so-called "lender liability" claims and causes of action, or actions to recover or disgorge payments, against any of the Prepetition Secured Parties, or any of their respective affiliates, successors and assigns and the partners, shareholders, controlling persons, directors, officers, employees, agents, trustees, administrators, managers, advisors, attorneys and representatives, solely in their capacities as such; (g) litigating, objecting to, challenging, or contesting in any manner, or raising any defenses to, the validity, extent, amount, perfection, priority, or enforceability of any of the Prepetition Liens, Prepetition Secured Obligations or any rights or interests of any of the Prepetition Secured Parties granted under this Final Order or the Prepetition Loan Documents; or (h) seeking to subordinate, recharacterize, disallow or avoid the Prepetition Secured Obligations; *provided*, *however*, that the Carve Out and such collateral proceeds may be used for allowed fees and expenses, in an amount not to exceed **$75,000** in the aggregate, incurred solely by the Creditors' Committee, in investigating (but not prosecuting or challenging) the validity, enforceability, perfection, priority or extent of the Prepetition Liens or Prepetition Secured Obligations (the "Investigation Budget"). For the avoidance of doubt (and notwithstanding the forgoing provisions of this paragraph), subject to the Budget, the proceeds of any Prepetition Collateral (including Cash Collateral) may be used for the Allowed Professional Fees of the Creditors' Committee's Professionals in furtherance of their duties as set forth under section 1103 of the Bankruptcy Code, including, but not limited to, any objection filed to the Motion, any objection filed to any disclosure statement or plan of reorganization or liquidation filed in these Chapter 11 Cases, and any objection or other pleading contesting whether the Prepetition Secured Parties have the right to the exercise of remedies, including the prosecution of any such motions and objections, but excluding, for the avoidance of doubt, (x) any actions in connection with investigating or challenging the validity, enforceability, perfection, priority or

extent of the Prepetition Liens and Prepetition Secured Obligations other than amounts up to the Investigation Budget and (y) any other actions in subclauses (b)-(h) of this paragraph.

26.    Payment of Compensation.  Nothing herein shall be construed as a consent to the allowance of any professional fees or expenses of any Estate Professional or shall affect the right of the Prepetition Secured Parties to object to the allowance and payment of such fees and expenses.

27.    Effect of Stipulations on Third Parties.

(i)    *Generally*.  The admissions, stipulations, agreements, releases, and waivers set forth in this Final Order are and shall be binding on the Debtors, any subsequent trustee, responsible person, examiner with expanded powers, any other estate representative, and all creditors and parties in interest and all of their successors in interest and assigns, including, without limitation, any official committee that may be appointed in these cases, unless, and solely to the extent that, (i) the Creditors' Committee or any other party in interest with standing and requisite authority (other than the Debtors, as to which any Challenge (as defined herein) shall be waived) has timely filed the appropriate pleadings, and timely commenced the appropriate proceeding required under the Bankruptcy Code and Bankruptcy Rules, including, without limitation, as required pursuant to Part VII of the Bankruptcy Rules challenging the Debtors' Stipulations (each such proceeding or appropriate pleading commencing a proceeding or other contested matter, a "**Challenge**") no later than seventy-five (75) calendar days from the entry of the *Interim Order: (I) Authorizing the Use of Cash Collateral; (II) Granting Adequate Protection to Prepetition Secured Parties; (III) Scheduling a Final Hearing and (IV) Granting Related Relief*, entered on September 21, 2023, for the Creditors' Committee or any other party in interest with requisite standing (the "**Challenge Deadline**"); provided, the Challenge Deadline

shall be subject to extension upon stipulation of the Creditors' Committee and the Prepetition Secured Parties, or upon order of the Court for cause shown, and (ii) this Court enters judgment in favor of the plaintiff or movant in any such timely and properly commenced Challenge proceeding and any such judgment has become a final judgment that is not subject to any further review or appeal; *provided* that any trustee appointed or elected in these Chapter 11 Cases prior to the expiration of the Challenge Deadline shall have until the later of (x) the Challenge Deadline or (y) 10 calendar days from the date such trustee is appointed to commence a Challenge proceeding. If the Creditors' Committee or any other party in interest files a motion for standing to bring a Challenge before expiration of the Challenge Deadline which attaches a proposed Challenge, such Challenge Deadline shall be tolled with respect solely to that party until two (2) Business Days after the Court approves the standing motion or such other period ordered by the Court in approving the standing motion.

(ii)     *Binding Effect*. To the extent no Challenge is timely and properly commenced by the Challenge Deadline, then, without further notice, motion, or application to, order of, or hearing before, this Court and without the need or requirement to file any proof of claim, (a) the Debtors' Stipulations shall, pursuant to this Final Order, become binding, conclusive, and final on any person, entity, or party in interest in the Chapter 11 Cases, or any Chapter 7 trustee, and their successors and assigns, and in any Successor Case for all purposes and shall not be subject to challenge or objection by any party in interest, including, without limitation, a trustee, responsible individual, examiner with expanded powers, or other representative of the Debtors' estates; (b) any and all payments made to or for the benefit of the Prepetition Secured Parties or otherwise authorized by this Final Order (whether made prior to, on, or after the Petition Date) shall not be subject to counterclaim, set-off, subordination,

recharacterization, defense, disallowance, recovery, or avoidance by any party in interest; and (c) all of the Prepetition Secured Obligations shall be deemed to be fully allowed claims within the meaning of section 506 of the Bankruptcy Code. Notwithstanding anything to the contrary herein, if any such proceeding is properly and timely commenced, the Debtors' Stipulations and the other provisions in clauses (a) through (c) of the preceding sentence shall nonetheless remain binding on all other parties in interest and preclusive as provided in subparagraph (i) above, except to the extent that any of such Debtors' Stipulations or the other provisions in clauses (a) through (c) of the preceding sentence is expressly the subject of a timely and properly filed Challenge, which Challenge is successful as set forth in a final judgment. Notwithstanding any provision to the contrary herein, nothing in this Final Order shall be construed to grant standing on any party in interest, including the Creditors' Committee, to bring a Challenge on behalf of the Debtors' Estates. The failure of any party in interest to obtain an order of this Court (subject to paragraph 27(i)) prior to the Challenge Deadline granting standing to bring any Challenge on behalf of the Debtors' estates shall not be a defense to failing to commence a Challenge prior to the Challenge Deadline. To the extent any such Challenge proceeding is timely and properly commenced, the Prepetition Agent and any other Prepetition Lender shall be entitled to payment of the related costs and expenses, including, but not limited to, reasonable attorneys' fees, incurred under the respective Prepetition Loan Documents in defending themselves and the other Prepetition Lenders in any such proceeding as adequate protection.

28.    <u>No Third-Party Rights</u>.  Except as explicitly provided for herein, this Final Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.

29.   <u>No Lender Liability</u>.  This paragraph 29 in all respects being subject to a Challenge provided for in paragraph 27 herein, in determining to make any loan (whether under the Prepetition Loan Documents or otherwise) or to permit the use of Cash Collateral or in exercising any rights or remedies as and when permitted pursuant to this Final Order or the Prepetition Loan Documents or taking any other act permitted under this Final Order and the Prepetition Loan Documents, none of the Prepetition Secured Parties shall (i) be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the *United States Comprehensive Environmental Response, Compensation and Liability Act*, 42 U.S.C. §§ 9601 *et seq.*, as amended, or any similar federal, state or local statute or regulation), (ii) be liable to any current or former employee of the Debtors under any applicable law, including, without limitation, the Workers Adjustment and Retraining Notification Act and similar state laws, or (iii) owe any fiduciary duty to the Debtors, their respective creditors, shareholders, or estates. Nothing in this Final Order or in any of the Prepetition Loan Documents or any other documents related thereto shall in any way be construed or interpreted to impose or allow the imposition upon the Prepetition Secured Parties of any liability for any claims arising from any activities by the Debtors in the operation of their businesses or in connection with the restructuring efforts and the administration of these Chapter 11 Cases.  Furthermore, nothing in this Final Order shall in any way be construed or interpreted to impose or allow the imposition upon any of the Prepetition Secured Parties of any liability for any claims arising from the prepetition or postpetition activities of any of the Debtors and their respective affiliates (as defined in section 101(2) of the Bankruptcy Code).

30.     <u>Section 506(c) Claims</u>.  No costs or expenses of administration which have been or may be incurred in the Chapter 11 Cases or any Successor Cases at any time shall be charged against the Prepetition Secured Parties, or any of their respective claims, the Prepetition Collateral pursuant to sections 105 or 506(c) of the Bankruptcy Code, or otherwise, without the prior written consent, as applicable, of the Prepetition Agent (acting at the direction of the Required Lenders), and no such consent shall be implied from any other action, inaction, or acquiescence by any such agents or lenders.

31.     <u>No Marshaling/Applications of Proceeds</u>.  The Prepetition Secured Parties shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Prepetition Collateral, as the case may be, and proceeds shall be received and applied pursuant to this Final Order and the Prepetition Loan Documents notwithstanding any other agreement or provision to the contrary.

32.     <u>Section 552(b)</u>.  The Prepetition Secured Parties shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Prepetition Secured Parties, with respect to proceeds, product, offspring or profits of any of the Prepetition Collateral.

33.     <u>Reserved</u>.

34.     <u>Preservation of Rights Granted under this Final Order</u>.

(i)     Other than those claims and liens expressly granted or permitted by this Final Order, no claim or lien having a priority superior to or *pari passu* with those granted by this Final Order to the Prepetition Secured Parties shall be permitted while any of the Prepetition Secured Obligations or the Adequate Protection Superpriority Claim remain outstanding, and,

except as otherwise expressly provided in or permitted under this Final Order, the Prepetition Liens and the Adequate Protection Liens shall not be: (i) subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code; (ii) subordinated to or made *pari passu* with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise; (iii) subordinated to or made *pari passu* with any liens arising after the Petition Date including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other domestic or foreign governmental unit (including any regulatory body), commission, board or court for any liability of the Prepetition Secured Parties; or (iv) subject or junior to any intercompany or affiliate liens or security interests of the Prepetition Secured Parties.

(ii)    Notwithstanding any order that may be entered dismissing any of the Chapter 11 Cases under section 1112 of the Bankruptcy Code or converting these Chapter 11 Cases to cases under chapter 7:  (A) the Prepetition Secured Obligations, the Prepetition Liens, the Adequate Protection Superpriority Claims, and the Adequate Protection Liens, and any claims related to the foregoing, shall continue in full force and effect and shall maintain their priorities as provided in this Final Order until all Prepetition Secured Obligations and Adequate Protection Superpriority Claims shall have been paid in full (and that such Prepetition Secured Obligations, Prepetition Liens, Adequate Protection Superpriority Claims, Adequate Protection Liens shall, notwithstanding such dismissal, remain binding on all parties in interest); (B) the other rights granted by this Final Order, including with respect to the Carve-Out, shall not be affected; and (C) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in this Paragraph 34 and otherwise in this Final Order.

(iii)    Subject to section 364(e) of the Bankruptcy Code as applicable, if any or all of the provisions of this Final Order are hereafter reversed, modified, vacated or stayed, such reversal, modification, vacatur or stay shall not affect: (i) the validity, priority or enforceability of any Prepetition Secured Obligations or Adequate Protection Obligations incurred prior to the actual receipt of written notice by the Prepetition Secured Parties of the effective date of such reversal, modification, vacatur or stay; or (ii) the validity, priority or enforceability of the Prepetition Liens, the Adequate Protection Liens, or the Carve-Out. Notwithstanding any such reversal, modification, vacatur or stay of any use of Cash Collateral, any Prepetition Secured Obligations, Prepetition Liens, Adequate Protection Superpriority Claims or Adequate Protection Liens incurred by the Debtors and granted to the Prepetition Secured Parties, as the case may be, prior to the actual receipt of written notice by the Prepetition Secured Parties, of the effective date of such reversal, modification, vacatur or stay shall be governed in all respects by the original provisions of this Final Order.

(iv)    Except as expressly provided in this Final Order or in the Prepetition Loan Documents, the Prepetition Liens, the Prepetition Secured Obligations, the Adequate Protection Liens, the Adequate Protection Superpriority Claims and all other rights and remedies of the Prepetition Secured Parties granted by the provisions of this Final Order and the Prepetition Loan Documents and the Carve-Out shall survive, and shall not be modified, impaired or discharged by: (a) the entry of an order converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, dismissing any of the Chapter 11 Cases or terminating the joint administration of these Chapter 11 Cases or by any other act or omission; (b) the entry of an order approving the sale of any Prepetition Collateral pursuant to section 363(b) of the Bankruptcy Code; (c) the entry of an order confirming a chapter 11 plan in any of the Chapter 11

Cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Prepetition Secured Parties have waived any discharge as to any remaining Prepetition Secured Obligations or Adequate Protection Superpriority Claims. The terms and provisions of this Final Order and the Prepetition Loan Documents shall continue in these Chapter 11 Cases, in any Successor Cases if these Chapter 11 Cases cease to be jointly administered and in any superseding chapter 7 cases under the Bankruptcy Code, and the Prepetition Liens, the Prepetition Secured Obligations, the Adequate Protection Liens and the Adequate Protection Superpriority Claims and all other rights and remedies of the other Prepetition Secured Parties granted by the provisions of this Final Order and the Prepetition Loan Documents shall continue in full force and effect until the Prepetition Secured Obligations and the Adequate Protection Superpriority Claims are indefeasibly paid in full in cash (except as otherwise provided in any chapter 11 plan and order confirming the same and consented to by the Prepetition Secured Parties), as set forth herein and in the Prepetition Loan Documents, and the commitments under the Prepetition Loan Documents have been terminated, and the Carve-Out shall continue in full force and effect.

35.    <u>Insurance Proceeds and Policies</u>.  Upon the entry of this Final Order and to the fullest extent provided by applicable law, the Prepetition Agent (on behalf of the Prepetition Lenders) shall be, and shall be deemed to be, without any further action or notice, named as additional insured and loss payee on each insurance policy maintained by the Debtors that constitutes Prepetition Collateral; provided, nothing in this paragraph 35 shall improve the Prepetition Secured Parties' position with respect to insurance proceeds that were not perfected or were avoidable as of the Petition Date.

36.    <u>Rights Preserved</u>.    Except as provided in this Final Order and the Prepetition Loan Documents, the entry of this Final Order is without prejudice to, and does not

constitute a waiver of, expressly or implicitly:  (a) the Prepetition Secured Parties' right to seek any other or supplemental relief in respect of the Debtors; (b) any of the rights of any of the Prepetition Secured Parties under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right to (i) request modification of the automatic stay of section 362 of the Bankruptcy Code, (ii) request dismissal of any of the Chapter 11 Cases or Successor Cases, conversion of any of the Chapter 11 Cases to cases under Chapter 7, or appointment of a Chapter 11 trustee or examiner with expanded powers, or (iii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a Chapter 11 plan or plans; or (c) any other rights, claims or privileges (whether legal, equitable or otherwise) of any of the Prepetition Secured Parties. Notwithstanding anything herein to the contrary, the entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the Debtors', the Creditors' Committee's or any party in interest's right to oppose any of the relief requested in accordance with the immediately preceding sentence except as expressly set forth in this Final Order.  Entry of this Final Order is without prejudice to any and all rights of any party in interest with respect to the terms and approval of the Final Order and any other position which any party in interest deems appropriate to raise in the Chapter 11 Cases.  Nothing herein shall waive the Debtors' right to seek the non-consensual use of Cash Collateral in the event that this Final Order terminates.

    37.    <u>No Waiver by Failure to Seek Relief</u>.  The failure of the Prepetition Secured Parties to seek relief or otherwise exercise their rights and remedies under this Final Order, the Prepetition Loan Documents or applicable law, as the case may be, shall not constitute a waiver of any of the rights hereunder, thereunder, or otherwise of the Prepetition Secured Parties.

38.    <u>Binding Effect of Final Order</u>.  Immediately upon the entry of the Final Order by this Court, the terms and provisions of this Final Order shall become valid and binding upon and inure to the benefit of the Debtors, the Prepetition Secured Parties, all other creditors of any of the Debtors, the Creditors' Committee (or any other court appointed committee) appointed in the Chapter 11 Cases, and all other parties-in-interest and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in any of the Chapter 11 Cases, any Successor Cases, or upon dismissal of any Chapter 11 Case or Successor Case.

39.    <u>No Modification of Final Order</u>.  Until and unless the Prepetition Secured Obligations have been indefeasibly paid in full in cash, and all obligations to permit the use of Cash Collateral have been terminated, the Debtors irrevocably waive the right to seek and shall not seek or consent to, directly or indirectly (a) without the prior written consent of the Prepetition Agent (acting at the direction of the Required Lenders), (i) any modification, stay, vacatur or amendment to this Final Order; or (ii) a priority claim for any administrative expense or unsecured claim against the Debtors (now existing or hereafter arising of any kind or nature whatsoever, including, without limitation any administrative expense of the kind specified in sections 503(b), 506(c), 507(a) or 507(b) of the Bankruptcy Code) in any of the Chapter 11 Cases or Successor Cases, equal or superior in priority to the Adequate Protection Superpriority Claims, other than the Carve Out; (b) without the prior written consent of the Prepetition Agent (acting at the direction of the Required Lenders), any lien on any of the Prepetition Collateral with priority equal or superior to the Prepetition Liens or Adequate Protection Liens; or (c) without the prior written consent of the Prepetition Agent (acting at the direction of the Required Lenders), any modification, stay, vacatur or amendment to this Final Order affecting the rights,

duties or obligations of the Prepetition Agent. The Debtors irrevocably waive any right to seek any amendment, modification or extension of this Final Order without the prior written consent, as provided in the foregoing, of the Prepetition Agent (acting at the direction of the Required Lenders), and no such consent shall be implied by any other action, inaction or acquiescence of the Prepetition Agent.

40.    Final Order Controls.  In the event of any inconsistency between the terms and conditions of the Prepetition Loan Documents and of this Final Order, the provisions of this Final Order shall govern and control.

41.    Cash Reserves.

(i)    The Debtors shall segregate or reserve an amount equal to $384,476.07 until such time as the Bankruptcy Court (or such other court of competent jurisdiction) determines whether any of the Debtors' cash or cash equivalents constitutes Pendrick Cash.

(ii)    The Debtors shall segregate or reserve an amount equal to $1,836,528.46 until such time as the Bankruptcy Court (or such other court of competent jurisdiction) determines whether any of the Debtors' cash or cash equivalents constitutes Sapientes Cash.

42.    Sapientes and Wakefield Payment Procedures.  The Debtors (and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in any of the Chapter 11 Cases or any Successor Cases), Sapientes, and Wakefield & Associates, LLC, f.k.a. Wakefield & Associates, Inc. ("**Wakefield**") shall abide by the payment procedures attached hereto as **Exhibit B** (the "**Payment Procedures**"), which shall govern the payment and

reconciliation of post-petition amounts due from the Debtors to Sapientes or Wakefield and post-petition amounts due from Wakefield to the Debtors.

43.   42.  Survival.  The provisions of this Final Order and any actions taken pursuant hereto shall survive entry of any order which may be entered:  (a) confirming any plan of reorganization in any of the Chapter 11 Cases; (b) converting any of the Chapter 11 Cases to a case under Chapter 7 of the Bankruptcy Code; (c) dismissing any of the Chapter 11 Cases or any Successor Cases; or (d) pursuant to which this Court abstains from hearing any of the Chapter 11 Cases or Successor Cases.  The terms and provisions of this Final Order, including the claims, liens, security interests, and other protections granted to the Prepetition Secured Parties shall continue in the Chapter 11 Cases, in any Successor Cases, or following dismissal of the Chapter 11 Cases or any Successor Cases, and shall maintain their priority as provided by this Final Order until all of the Prepetition Secured Obligations and Adequate Protection Superpriority Claims pursuant to the Prepetition Loan Documents and this Final Order have been indefeasibly paid in full in cash.  The terms and provisions concerning the indemnification of the Prepetition Agent and Prepetition Lenders shall continue in the Chapter 11 Cases, in any Successor Cases, following dismissal of the Chapter 11 Cases or any Successor Cases, following termination of the Prepetition Loan Documents and/or the indefeasible repayment of the Prepetition Secured Obligations and Adequate Protection Superpriority Claims.

44.   43.  Nunc Pro Tunc Effect of this Final Order.  This Final Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be enforceable nunc pro tunc to the Petition Date immediately upon execution thereof.

45.    44. Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Final Order are immediately effective and enforceable upon its entry.

**EXHIBIT A**

**Initial Budget**

**EXHIBIT B**

**Payment Procedures**

The following procedures shall govern the reconciliation and payment of post-petition amounts due and owing to Sapientes Funding II, LLC ("Sapientes"), Wakefield & Associates, LLC, f.k.a. Wakefield & Associates, Inc. ("Wakefield"), and American Physician Partners, LLC ("APP") and its affiliated debtors and debtors in possession ( collectively, the "Debtors") pursuant to: (i) that certain Contract for Bad Debt Recovery Services, dated April 29, 2021 (the "Recovery Services Contract") by and between Wakefield and Debtor American Physician Holdings, LLC ("Holdings"); and (ii) that certain Purchase Agreement, dated April 5, 2023 (the "Debt Purchase Agreement" and, together with the Recovery Services Contract, the "Agreements") by and between Sapientes and APP.

**BACKGROUND**

**The Recovery Services Contract**

1.      Pursuant to the Recovery Services Contract, Holdings retained Wakefield to perform certain recovery services on its behalf by collecting on certain of the Debtors' Delinquent Accounts (as defined in the Recovery Services Contract).  *See* Recovery Services Agreement, Section 4.

2.      From time to time, payments on Delinquent Accounts are paid directly to the Debtors rather than being remitted to Wakefield (such payments, "Wakefield Direct Payments").

3.      Wakefield is entitled to a percentage contingency fee ("Contingency Fees") for amounts recovered on account of Delinquent Accounts (the "Collected Amounts") with the Contingency Fees being earned at the time of collection of the Collected Amounts.  *See id.*, at Section. 8.1.  Wakefield is entitled to the Contingency Fees regardless of whether the Collected

1

Amounts are paid to Wakefield to be remitted to the Debtors or constitute Wakefield Direct Payments.  *See id.*

**The Debt Purchase Agreement**

4.      Pursuant to the Debt Purchase Agreement, Sapientes purchased from APP certain of its Accounts (as defined in the Debt Purchase Agreement) (such accounts purchased by Sapientes, the "Purchased Accounts") on which an unpaid balance remains.  *See* Debt Purchase Agreement Section 2.  The unpaid amounts owed on the Purchased Accounts are not due and owing to the Debtors, but pursuant to the Debt Purchase Agreement, are due and owing to Sapientes.[1]  Notwithstanding this, from time to time, payments on Purchased Accounts are made to the Debtors (such payments, "Sapientes Direct Payments") rather than to Sapientes.  The Sapientes Direct Payments are not property of the Debtors' estates.

**Weekly Reconciliation**

5.      On an approximately weekly basis, Medical Consultants, Inc. ("MCI"), the Debtors' exclusive revenue cycle management provider, provides Wakefield and Sapientes a report (the "MCI Report"), which details, among other things, new Wakefield Direct Payments and new Sapientes Direct Payments not previously reported in prior MCI Reports.

6.      Additionally, each week, Wakefield takes an internal account of the Contingency Fees owed by the Debtors to Wakefield based on the Collected Amounts collected by Wakefield (the "Internal Account").

**PAYMENT PROCEDURES**

---

[1]      The Debt Purchase Agreement defined "Purchased Accounts" by referencing specific accounts described on Exhibit A to the Debt Purchase Agreement "together with all sums due or to become due thereunder, all supporting obligations, general intangibles and other rights and interests thereunder and products and proceeds of the foregoing."  *See id*., at Section 2(a).

7.      Wakefield is permitted to offset any Post-Petition Contingency Fees[2] owed to it by the Debtors against any Post-Petition Collected Amounts[3] owed to the Debtors.

8.      Sapientes is permitted to offset any Post-Petition Sapientes Direct Payments[4] owed to it by the Debtors against any Post-Petition Collected Amounts owed to the Debtors.

9.      Within three (3) business days after Wakefield and Sapientes receive the most recent MCI Report[5] and prepare the most recent Internal Account, Wakefield will report to the Debtors (the "Periodic Report") the following information:

> a.      the Post-Petition Collected Amounts paid to Wakefield as reflected in the Internal Account (the "Outstanding Collected Amounts");
>
> b.      the Post-Petition Contingency Fees due to Wakefield consisting of (i) Post-Petition Contingency Fees earned on account of Post-Petition Collected Amounts paid to Wakefield as reflected in the Internal Account and (ii) Post-Petition Contingency Fees earned on account of the Wakefield Direct Payments as reported in the MCI Report (the "Wakefield Outstanding Owed Amounts"); and
>
> c.      the Post-Petition Sapientes Direct Payments due to Sapientes as reported in the MCI Report (the "Sapientes Outstanding Owed Amounts" and together with the Wakefield Outstanding Owed Amounts, the "Outstanding Owed Amounts").

The Debtors shall be entitled to obtain additional reasonable information from Wakefield and Sapientes to verify and reconcile the amounts set forth in the Periodic Report.  The Periodic Report will also be sent to counsel to the Creditors' Committee and counsel to the Prepetition Secured Parties (each as defined in the Final Cash Collateral Order to which these procedures are attached as an exhibit) on a professionals' eyes only basis.

---

[2]      "Post-Petition Contingency Fees" means Contingency Fees earned by Wakefield on account of Collected Amounts collected on or after September 18, 2023, whether paid to Wakefield or constituting Wakefield Direct Payments.

[3]      "Post-Petition Collected Amounts" means any Collected Amounts paid to Wakefield on or after September 18, 2023.

[4]      "Post-Petition Sapientes Direct Payments" means any Sapientes Direct Payments paid to the Debtors on or after September 18, 2023.

[5]      While the target day for MCI to send the MCI Report is Tuesday of each week, occasionally the MCI Report is sent several days early or late.

10.     Absent an objection (an "Objection") by the Debtors within five (5) business days after delivery of each Period Report (the "Objection Deadline"), to the extent that the Outstanding Collected Amounts exceed the total Outstanding Owed Amounts, Wakefield shall offset the Outstanding Owed Amounts against the Outstanding Collected Amounts and remit the difference to the Debtors within (3) business days after the Objection Deadline.  By way of illustration, if the Outstanding Collected Amounts are $50,000 and the Outstanding Owed Amounts are $10,000, Wakefield shall offset the $10,000 against the $50,000 and remit $40,000 to the Debtors within three (3) business days after the Objection Deadline.

11.     Absent an Objection by the Debtors by the Objection Deadline, to the extent that the Outstanding Owed Amounts exceed the Outstanding Collected Amounts, Wakefield shall retain the entirety of the total Outstanding Collected Amounts, and the Debtors shall pay to Wakefield the difference between the Outstanding Owed Amounts and the Outstanding Collected Amounts (the "Payment") within five (5) business days after the Objection Deadline (the "Payment Deadline").  By way of illustration, if the Outstanding Collected Amounts are $50,000 and the Outstanding Owed Amounts are $60,000, Wakefield shall retain the $50,000 and the Debtors shall issue $10,000 to Wakefield within five (5) business days after the Objection Deadline.

12.     Any Objection by the Debtors under these procedures must be delivered to Wakefield and Sapientes via email to (i) Karen Scheibe Eliason (Karen.Eliason@wakeassoc.com); (ii) Evelyn Meltzer (evelyn.meltzer@troutman.com) and (iii) Kenneth Listwak (kenneth.listwak@troutman.com).

13.     Should the Debtors fail to timely issue Payment by the Payment Deadline, Wakefield and Sapientes shall be permitted to seek emergency relief from the Court, which

shortened notice will not be opposed by the Debtors, to compel payment of the Payment.  Any disputes about the amounts set forth in the Period Report, the Payment, or otherwise arising hereunder shall be determined by the Court.

14.     The Periodic Report shall be provided to representatives of the Debtors to be designated within one (1) business day after the entry of the Final Cash Collateral Order to which these procedures are attached.

15.     The Periodic Report shall be provided to counsel to the Creditors' Committee and counsel to the Prepetition Secured Parties, with counsel to each of these parties designating which professionals are to receive the Periodic Report within one (1) business day after the entry of the Final Cash Collateral Order to which these procedures are attached.

16.     The Payment will be made using wire instructions to be provided by Wakefield to the Debtors within one (1) business day after the entry of the Final Cash Collateral Order to which these procedures are attached.

DOCS_SF:109761.4 03370/001

Document comparison by Workshare Compare on Monday, October 30, 2023
1:43:36 PM

| Input: | |
|---|---|
| Document 1 ID | PowerDocs://DOCS_SF/109761/2 |
| Description | DOCS_SF-#109761-v2-APP_-_Final_Cash_Collateral_Order |
| Document 2 ID | PowerDocs://DOCS_SF/109761/4 |
| Description | DOCS_SF-#109761-v4-APP_-_Final_Cash_Collateral_Order |
| Rendering set | Standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 90 |
| Deletions | 6 |
| Moved from | 0 |
| Moved to | 0 |
| Style changes | 0 |
| Format changes | 0 |
| Total changes | 96 |