**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| AMERICAN PHYSICIAN PARTNERS, LLC, *et al.*, | Case No. 23-11469 (BLS) |
| Debtors.[1] | (Jointly Administered) |
| | **Objection Deadline: December 8, 2023** |

**DEBTORS' FIRST OMNIBUS OBJECTION
(SUBSTANTIVE) TO EMPLOYEE LIEN CLAIMS**

> **THIS OBJECTION SEEKS TO MODIFY CERTAIN CLAIMS.
> THE CLAIMANT RECEIVING THIS OBJECTION SHOULD REVIEW
> THE OBJECTION, AND IF DESIRED, FILE A RESPONSE BY THE
> RESPONSE DEADLINE CONSISTENT WITH THE INSTRUCTIONS SET FORTH
> IN THE OBJECTION.  THE RELIEF SOUGHT IN THIS OBJECTION IS
> WITHOUT PREJUDICE TO THE DEBTORS' RIGHT TO PURSUE FURTHER
> SUBSTANTIVE OR NON-SUBSTANTIVE OBJECTIONS TO THE CLAIMS.**

The above-captioned debtors and debtors in possession (the "Debtors") hereby submit this Objection (the "Objection") seeking entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), pursuant to sections 105(a) and 502(b) of title 11 of the United States Code (the "Bankruptcy Code") and Rules 3007 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), reclassifying the secured claims totaling in the aggregate $4,264,547.75 (collectively, the "Employee Lien Claims") filed by Penn Krause, Mary Ann Smokler, Ben Youree, Daniel Crane, Aaron Kidd, Isaac Palmer, Jr., Tressa Gardner, Benjamin Ross, Tracy Young, Joseph White, Wendi Keeton, and Liz Harris (collectively, the "Employee Lien Claimants") as general unsecured claims.  In support of this Objection, the

---

[1]     A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/AmericanPhysicianPartners.  The location of American Physician Partners, LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 5121 Maryland Way, Suite 300, Brentwood, TN 37027.

Debtors rely on the record of these chapter 11 cases and the *Declaration of John C. DiDonato in Support of Debtors' First Omnibus Objection (Substantive) to Employee Lien Claims*, attached hereto as **Exhibit B** (the "DiDonato Declaration") and respectfully state as follows:

### PRELIMINARY STATEMENT

1.      The Employee Lien Claimants assert secured status based on a Tennessee statute that provides for a lien on an employer's property for certain types of compensation.  For the reasons set forth below, the Employee Lien Claims are not properly secured claims and should be reclassified as general unsecured claims.

2.      Most importantly, any statutory liens that may exist are "secret" liens that are unenforceable against the Debtors and must be avoided under sections 544(a)(1), 544(a)(2), and 545(2) of the Bankruptcy Code.  On this basis alone, each of the the Employee Lien Claims should be reclassified as a general unsecured claim.

3.      If and only if the Court does not treat the Employee Lien Claims as "secret" liens subject to avoidance under the Bankruptcy Code, then the Employee Lien Claims should be reclassified as general unsecured claims under Tennessee law.

4.      First, the three Employee Lien Claimants who reside outside of the State of Tennessee cannot have a lien under the Tennessee statute.

5.      Second, any amounts asserted in the Employee Lien Claims that are based on severance pay are not entitled to a statutory lien, as such pay is not compensation under the statute.

6.      Third, any amounts asserted in the Employee Lien Claims that are based on retention bonuses are likewise not entitled to a statutory lien; such pay is received by the employee for remaining on the job, not for services performed (for which the employee is separately compensated).

7.      Fourth, the Employee Lien Claimants were in senior positions and are not the type of employees that the Tennessee statute was designed to protect.

8.      Finally, the applicability of the statutory lien is time-limited to three (3) months prior to the commencement of a suit to enforce the asserted lien.  No such lawsuit has been filed and, even if the filing of the Employee Lien Claims is construed as such enforcement action, each of the Employee Lien Claimants was terminated more than three (3) months prior to the filing of such claims.

9.      For these reasons, the Debtors respectfully request that the Court reclassify the Employee Lien Claims as general unsecured claims in their entirety.

## JURISDICTION AND VENUE

10.      The United States District Court for the District of Delaware has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, which was referred to the United States Bankruptcy Court for the District of Delaware (the "Court") under 28 U.S.C. § 157 pursuant to the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors consent, pursuant to Rule 9013-1(f) Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order by the Court in connection with this Objection to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

11.      Venue in this district is proper under 28 U.S.C. §§ 1408 and 1409.

12.    The statutory bases for the relief requested are sections 105(a), 502(b), 544(a)(1), 544(a)(2), and 545(2) of the Bankruptcy Code and Bankruptcy Rules 3007 and 9014.

## BACKGROUND

### A.    General Background

13.    On September 18, 2023 and continuing on September 19, 2023 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request for the appointment of a trustee or examiner has been made in the Debtors' chapter 11 cases (the "Chapter 11 Cases").  On October 2, 2023, the Office of the United States Trustee appointed the Official Committee of Unsecured Creditors (the "Committee") in these Chapter 11 Cases.

14.    Founded in 2015, the Debtors were one of the fastest growing, scaled emergency department and hospitalist management platforms in the U.S.  Headquartered in Brentwood, the Debtors had management and related contracts with more than 100 hospitals (including freestanding emergency departments) and other sites in fifteen states primarily in the southeastern, midwestern and southwestern United States, utilizing over 2,500 physicians who served over 4 million patients each year.  Prior to the Petition Date, the Debtors explored alternative strategies to address cash shortfalls, including the refinancing of existing secured indebtedness and potential sale of substantially all the Debtors' service contracts and other assets.  Such efforts by the Debtors proved to be unsuccessful despite extensive negotiations with multiple parties.  In July 2023, the Debtors made the difficult decision to begin transitioning substantially all of their medical service contracts to alternative service providers (competitors) and their health system/hospital partners (customers), in order to avoid any interruptions in its

critical life-saving service to the patients.  After successfully transitioning all its medical service contracts without interruption, the Debtors have commenced these Chapter 11 Cases to facilitate and complete the wind-down process and liquidate their remaining assets in an orderly fashion.

15.     The factual background regarding the Debtors, including their historical business operations and the events precipitating the chapter 11 filing, is set forth in detail in the *Declaration of John C. DiDonato in Support of the Debtors' Chapter 11 Petitions and First Day Relief* [Docket No. 18] and fully incorporated herein by reference.[2]

16.     The Debtors have proposed a chapter 11 plan in these cases (as amended, the "Proposed Plan"), which is currently set for hearing on December 14, 2023, at 10:00 a.m. Eastern time.  Counsel for the Employee Lien Claimants has agreed to have this Objection heard at the same time as the confirmation hearing on the Proposed Plan.

**B.     The Employee Lien Claims**

17.     In November 2023, Penn Krause filed a Proof of Claim (claim number to be determined) against American Physician Partners, LLC as a secured claim in the amount of $388,225.75.  A copy of this Proof of Claim is attached hereto as **Exhibit C**.

18.     In November 2023, Mary Ann Smokler filed a Proof of Claim (claim number to be determined) against American Physician Partners, LLC as a secured claim in the amount of $210,438.00.  A copy of this Proof of Claim is attached hereto as **Exhibit D**.

19.     On November 14, 2023, Ben Youree filed Proof of Claim No. 10233 against American Physician Partners, LLC as a secured claim in the amount of $502,500.00.  A copy of Proof of Claim No. 10233 is attached hereto as **Exhibit E**.

---

[2]     Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

20.     In November 2023, Daniel Crane filed a Proof of Claim (claim number to be determined) against American Physician Partners, LLC as a secured claim in the amount of $480,000.00.  A copy of this Proof of Claim is attached hereto as **Exhibit F**.

21.     On November 13, 2023, Aaron Kidd filed Proof of Claim No. 10218 against American Physician Partners, LLC as a secured claim in the amount of $298,951.00.  A copy of Proof of Claim No. 10218 is attached hereto as **Exhibit G**.

22.     In November 2023, Isaac Palmer, Jr. filed a Proof of Claim (claim number to be determined) against American Physician Partners, LLC as a secured claim in the amount of $385,320.00.  A copy of this Proof of Claim is attached hereto as **Exhibit H**.

23.     In November 2023, Tressa Gardner filed a Proof of Claim (claim number to be determined) against American Physician Partners, LLC as a secured claim in the amount of $480,000.00.  A copy of this Proof of Claim is attached hereto as **Exhibit I**.

24.     In November 2023, Benjamin Ross filed a Proof of Claim (claim number to be determined) against American Physician Partners, LLC as a secured claim in the amount of $495,000.00.  A copy of this Proof of Claim is attached hereto as **Exhibit J**.

25.     On November 14, 2023, Tracy Young filed Proof of Claim No. 10234 against American Physician Partners, LLC as a secured claim in the amount of $216,863.00.  A copy of Proof of Claim No. 10234 is attached hereto as **Exhibit K**.

26.     In November 2023, Joseph White filed a Proof of Claim (claim number to be determined) against American Physician Partners, LLC as a secured claim in the amount of $371,250.00.  A copy of this Proof of Claim is attached hereto as **Exhibit L**.

27.     In November 2023, Wendi Keeton filed a Proof of Claim (claim number to be determined) against American Physician Partners, LLC as a secured claim in the amount of $230,000.00.  A copy of this Proof of Claim is attached hereto as **Exhibit M**.

28.     In November 2023, Liz Harris filed a Proof of Claim (claim number to be determined) against American Physician Partners, LLC as a secured claim in the amount of $206,000.00.  A copy of this Proof of Claim is attached hereto as **Exhibit N**.

29.     Each of the Employee Lien Claimants was terminated by the Debtors prior to August 14, 2023, which is three (3) months prior to the filing of the above Employee Lien Claims.  No lien enforcement action was filed by the Employee Lien Claimants against the Debtors prior to the Petition Date.

30.     Further, three of the Employee Lien Claimants, Daniel Crane, Isaac Palmer, Jr. and Tressa Gardner, who assert claims totaling $480,000.00, $385,320.00 and $480,000.00, respectively, reside outside the State of Tennessee.

## RELIEF REQUESTED

31.     By this Objection, and for the reasons described more fully below, the Debtors object to the Employee Lien Claims and seek entry of the Proposed Order reclassifying the Employee Lien Claims as general unsecured claims in their entirety.

## BASIS FOR RELIEF

32.     Section 502(a) of the Bankruptcy Code provides, in pertinent part, that "[a] claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects."  11 U.S.C. § 502(a).  Once an objection to a claim is filed, the Court, after notice and a hearing, shall determine the allowed amount of the claim. 11 U.S.C. § 502(b).

33.     Section 502(b)(1) of the Bankruptcy Code provides, in part, that a claim may not be allowed to the extent that it "is unenforceable against the debtor and property of the debtor, under any agreement or applicable law." *Id.* When an objecting party presents evidence to rebut a claim's *prima facie* validity, the claimant bears the burden of proving the claim's validity by a preponderance of evidence. *See In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173–74 (3d Cir. 1992). The burden of persuasion with respect to the claim is always on the claimant. *Id.* at 174. The failure to allege facts and to provide sufficient support for a claim deprives the claim of *prima facie* validity.

34.     The Employee Lien Claims are based on severance agreements signed by the Employee Lien Claimants. Certain of the Employee Lien Claimants also based their claims on retention bonus agreements. The Employee Lien Claimants assert that the Employee Lien Claims are secured under a Tennessee statute that provides:   "All employees and laborers of any corporation, or firm, carrying on any corporate or partnership business shall have a lien upon the corporate or firm property of every character and description, for any sums due them for labor and service performed for the corporation or firm, and such lien shall prevail over all other liens, except the vendor's lien or the lien of a mortgage, or deed of trust to secure purchase money." Tenn. Code Ann. § 66-13-101 (the "<u>Tennessee Lien Statute</u>").

35.     For the reasons that follow, the Employee Lien Claims are not entitled to secured status. The Debtors object to the Employee Lien Claims and request that the Court reclassify such claims as general unsecured claims in their entirety.

## A.     **The Employee Lien Claims Are Avoidable "Secret" Liens Under the Bankruptcy Code**

36.     Regardless of whether the Employee Lien Claims qualify as liens under the Tennessee Lien Statute, such liens have not attached against the Debtors' assets as of the Petition

Date, through court judgment or otherwise, in accordance with Tennessee law.  The Employee

Lien Claims therefore constitute "secret" liens that are subject to avoidance under section 545(2)

of the Bankruptcy Code, which provides as follows:

> The trustee may avoid the fixing of a statutory lien on property of the debtor to the extent that such lien . . . is not perfected or enforceable at the time of the commencement of the case against a bona fide purchaser that purchases such property at the time of the commencement of the case, whether or not such a purchaser exists . . . ."

11 U.S.C. § 545(2).

     37.    "Subsection (2) allows the trustee to avoid a lien that 'is not perfected or

enforceable at the time of the commencement of the case against a bona fide purchaser that

purchases such property at the time of the commencement of the case, whether or not such a

purchaser exists' (the hypothetical bona fide purchaser test). . . .  Whether the lien is enforceable

against a bona fide purchaser is determined under state law."  *In re Loretto Winery Ltd.*, 898 F.2d

715, 718 (9th Cir. 1990); *see also* 5 Collier on Bankruptcy P 545.03 (16th 2023) ("First of all, the

continued enforceability of a statutory lien depends upon the status of its perfection under

nonbankruptcy law at the time of the filing of the bankruptcy case.").

     38.    "A 'secret lien' is a statutory or equitable lien that arises without any notice

to the public and requires no perfection."  *In re Sheldahl, Inc.*, 298 B.R. 874, 877 (Bankr. D. Minn.

2003).  "Under 11 U.S.C. § 544(a)(1), a debtor in possession (vested with the powers of a trustee

by 11 U.S.C. § 1107(a)) has the so-called 'strong arm power' to cut off unperfected security

interests such as secret liens.  As observed by the Court of Appeals for the Second Circuit, the

purpose of the 'strong arm clause' is to cut off unperfected security interests, secret liens and

undisclosed prepetition claims against the Debtor's property as of the commencement of the case."

*In re R.F. Cunningham & Co.*, 355 B.R. 408, 417 (Bankr. E.D.N.Y. 2006) (internal quotation

marks omitted) (citing *In re Canney*, 284 F.3d 362, 374 (2d Cir. 2002)); *see also In re Reasonover*, 236 B.R. 219, 230 (Bankr. E.D. Va. 1999) (observing that the "trustee's strong-arm powers are meant in part to avoid 'secret liens' which take away from unsecured creditors").

39.    Section 544(a)(1) and (a)(2) provide as follows:

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;

(2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists;

40.    Along similar lines, "Code § 545(2) allows the trustee or debtor in possession to avoid statutory liens if the lien 'is not perfected or enforceable at the time of the commencement of the case against a bona fide purchaser. . . .' 545(2). Perfection is . . . generally designed to furnish [] public notice of the secured party's interest in the collateral, thereby protecting third persons against the secret or undisclosed lien." *In re TWA, Inc. Post Confirmation Estate*, 312 B.R. 759, 762 (Bankr. D. Del. 2004) (citations and internal quotation marks omitted) (quoting *In re Reliance Equities, Inc.*, 966 F.2d 1338, 1341 (10th Cir. 1992)).

41.    A separate Tennessee statute provides for attachment of statutory liens: "Any and all liens given by statute on personal property, except attorney's lien, where no method of enforcing the same is specifically prescribed by statute, may be enforced by original attachment issued by any court having jurisdiction of the amount claimed to be due without necessity of fiat,

on affidavit that the debt is due and unpaid, to be levied on the property upon which the lien exists, be it either in the hands of the creditor, owner, or other party not an innocent purchaser." Tenn. Code Ann. § 66-21-101; *see also Embraer Aircraft Maint. Servs. v. AeroCentury Corp.*, 538 S.W.3d 404, 413 (Tenn. 2017) ("[T]he only remedy provided for in Tennessee Code Annotated section 66-21-101 is original attachment of lien-subject property.").

42.     Avoidance under section 545 of the Bankruptcy Code depends on the applicable state law.  Thus, if a statutory lien is not attached under Tennessee law, such lien is avoidable.  "In [section 545 of] the Bankruptcy Code, Congress specifically provided the conditions under which statutory liens on a debtor's property could be avoided by the trustee in bankruptcy . . . .  In effect, Congress largely left the question to state law." *In re Stanford*, 826 F.2d 353, 354–55 (5th Cir. 1987); *see also In re Globe Bldg. Materials, Inc.*, 463 F.3d 631, 634 (7th Cir. 2006) (citations omitted) ("In drafting §§ 545(2) and 546(b)(1)(A) as it did, Congress largely left the avoidability of statutory liens to state law.").  In *Stanford*, the court refused to avoid real estate tax liens on the basis that they were not perfected or enforceable against a bona fide purchaser.  To the contrary, under Texas law, ad valorem real estate tax liens are readily available to the public, including bona fide purchasers, and clearly binding on them. *Stanford*, 463 F.3d at 355-56.

43.     By contrast, in the instant case, there is no evidence that the Employee Lien Claims have attached to the Debtors' property as of the Petition Date, through court judgment or otherwise.  No public filings of any kind exist with respect to the Employee Lien Claims.  As such, any disposition of the Debtors' assets to a hypothetical bona fide purchaser outside of bankruptcy would be free and clear of the Employee Lien Claims.  With no attachment to any particular assets

of the Debtors, the Employee Lien Claims are mere "secret" liens that are subject to avoidance under sections 544(a)(1), 544(a)(2), and 545(2) of the Bankruptcy Code.[3]

44.    In at least one instance, a court has found that a statutory lien under a state wage law was avoidable under section 545(2) when such lien had not been perfected as of the petition date.  See *In re Globe Bldg. Materials, Inc.*, 328 B.R. 769, 779 (Bankr. N.D. Ind. 2004), *aff'd*, 463 F.3d 631 (7th Cir. 2006) ("Based upon the foregoing analysis, the Court holds that under the stipulated facts in this case, the statutory lien of the State of Wisconsin [asserted by the State on behalf of former employees of the debtor] on the net proceeds of sale of property of Globe Building Materials, Inc. in the State of Wisconsin is avoidable by the Chapter 7 Trustee by utilization of the provisions of 11 U.S.C. § 545(2):  the statutory lien was not effective against a bona fide purchaser until actually recorded, which act . . . occurred post-petition.").

45.    As discussed below, the Employee Lien Claims constitute textbook examples of "secret" liens that have not attached to the Debtors' assets as of the Petition Date, are unenforceable against the Debtors, and are subject to avoidance under the Bankruptcy Code. Accordingly, each of the Employee Lien Claims should be reclassified as general unsecured claims in their entirety.

**B.    Alternatively, Employee Lien Claimants Who Reside Out of State Are Not Entitled To A Statutory Lien Under Tennessee Law**

46.    Putting aside the limitations of the Bankruptcy Code addressed above, even if the merits of the Employee Lien Claims are considered under Tennessee law, various grounds

---

[3]    In one case cited by the Employee Lien Claimants, *In re Sullivan*, 254 B.R. 661 (Bankr. D.N.J. 2000), a chapter 7 trustee unsuccessfully sought to avoid a tax lien.  As required by applicable state law, the taxing authority had publicly filed a certificate of debt or COD against the debtor prior to the petition date.  The court concluded that the COD satisfied any concerns that may have existed about the tax lien being a secret lien:  "In doing so, the filing of a COD ensures that bona fide purchasers are not subject to a secret lien on the property."  *Id.* at 668.  In the Debtors' case, there is nothing similar to the COD; we just have the alleged statutory lien, with no evidence that the Employee Lien Claimants obtained an attachment.

exist for reclassifying such claims as unsecured.  Three of the Employee Lien Claimants, Daniel Crane, Isaac Palmer, Jr. and Tressa Gardner, who assert claims totaling $480,000.00, $385,320.00 and $480,000.00, respectively, also reside outside the State of Tennessee.

47.    The Tennessee Lien Statute is silent as to exterritorial application.  In the absence of any clear indication to that effect, the generally accepted rule is that a state-specific statute, such as a statutory lien, is only available to employees who work within the applicable state.  This approach is consistent with a number of cases in which state labor laws were found not to apply to employees who worked out of state.

48.    "State statutes are presumed not to have extraterritorial effect.  This presumption is rebutted only where a contrary intent is clearly expressed or reasonably to be inferred from the language of the act or from its purpose, subject-matter, or history."  *Cotter v. Lyft, Inc.*, 60 F. Supp. 3d 1059, 1061–62 (N.D. Cal. 2014) (citations and internal quotation marks omitted (citing *North Alaska Salmon Co. v. Pillsbury*, 174 Cal. 1, 4 (1916)).  As applied to laws like the Tennessee Lien Statute, this principle calls for extending the provisions of the statute only to employees who work within the state.  Courts within the Sixth Circuit have addressed similar situations with respect to California labor laws:

> Concerning the California Labor Code, under which Moss seeks to assert claims, federal courts have observed that "California wage and hour laws . . . simply do not apply to employees who work exclusively in another state." *Cotter*, 60 F. Supp. 3d at 1061.  The employment compensation of nonresidents of California working exclusively outside of California is an aspect of commerce unfolding wholly outside of California. *Id.* at 1063.  Another court in this circuit decided a similar case in which an Ohio resident working in Ohio for a California-based company sought to bring claims under California wage law. *Mitchell v. Abercrombie & Fitch*, No. C2-04-306, 2005 U.S. Dist. LEXIS 48410, 2005 WL 1159412 (S.D. Ohio May 17, 2005).  The court found that permitting the plaintiff to bring a claim under California law would create "the type of burden on interstate commerce that the Commerce Clause

> prohibits." 2005 U.S. Dist. LEXIS 48410, [WL] at *4.  If the Court
> were to adopt Moss's argument and permit a nonresident of
> California who has not worked in California to assert claims under
> the state's labor laws, the Court would essentially be finding that
> California's laws applied across the country.  *See id.*  This is plainly
> impermissible under the Commerce Clause.

*Moss v. Loandepot.com, LLC*, No. 2:19-cv-12076, 2020 U.S. Dist. LEXIS 54573, at *11 (E.D.

Mich. Mar. 30, 2020).

49.    In a recent case from the District of Maryland, the court applied the same

principle:  "Notably, Plaintiffs have cited no case in which an employer's presence in Maryland

alone was enough to cover a non-Maryland resident employee for work performed wholly outside

of Maryland, much less one whose work was performed entirely outside the United States, and the

Court has not found any.  Nor has it identified an analogous state wage protection law that has

been interpreted to apply to work occurring entirely outside of the state."  *Poudel v. Mid Atl.*

*Prof'ls, Inc.*, No. TDC-21-1124, 2022 U.S. Dist. LEXIS 20458, at *12–13 (D. Md. Feb. 4, 2022).

50.    Another recent case from Maryland reached the same conclusion:

> Thus, Plaintiff has failed to allege that Edgy Bees "employed" him
> in Maryland or that his position had such a connection to Maryland
> that the presumption against extraterritoriality of the MWPCL does
> not apply.  While "[t]he threshold for establishing employment in
> Maryland under the MWPCL is relatively low[,]" *Hausfeld v. Love*
> *Funding Corp.*, 131 F. Supp. 3d 443, 455 (D. Md. 2015), a plaintiff
> must at least allege that some of his work occurred in Maryland, *see*
> *id.* at 465 ("All that is required is that the individual work to some
> extent in Maryland.").  Otherwise, "all employees of any company
> based in Maryland, even a multinational corporation, would
> potentially be able to invoke the MWPCL, even if they work only at
> offices or worksites in other states or countries and have never been
> to Maryland." *Poudel*, 2022 U.S. Dist. LEXIS 20458, 2022 WL
> 345515, at *4."

*Hearn v. Edgy Bees Inc.*, No. GJH-21-2259, 2022 U.S. Dist. LEXIS 94745, at *10–11 (D. Md.

May 26, 2022).

51.    Courts in Minnesota have made similar rulings:

> The courts of Minnesota agree that the MFLSA governs Minnesota workers. The Minnesota Supreme Court has recently held that the Minnesota Payment of Wages Act ("PWA") and the MFLSA "together . . . provide a comprehensive statutory scheme for wages and payment **in Minnesota**." *Milner v. Farmers Ins. Exchange*, 748 N.W.2d 608, 617 (Minn. 2008) (emphasis added). *See also Meyer v. Best W. Seville Plaza Hotel*, 562 N.W.2d 690, 692 (Minn. Ct. App. 1997) (noting that the MFLSA "govern[s] minimum wages **for Minnesota workers**") (emphasis added). There is simply no authority to apply the MFLSA to Lawson employees who are not Minnesota residents and have not worked or lived in Minnesota. *See, e.g.*, *Priyanto v. M/S Amsterdam*, No. CV 07-3811 AHM (JTLx), 2009 U.S. Dist. LEXIS 7849, 2009 WL 175739, at *8 (C.D. Cal. Jan. 23, 2009) ("This court has found no decision applying any state's wage laws to nonresidents who did not work in the state, regardless of the other contacts. Courts interpreting other states' wage laws have . . . focused on the situs of an employee's work in determining if a wage law applies, not where managerial decisions, actions, or inactions occur."). Additionally, application of the MFLSA to Lawson employees who have never worked or resided in Minnesota would raise troubling Commerce Clause issues. *See generally Mitchell v. Abercrombie & Fitch*, No. C2-04-306, 2005 U.S. Dist. LEXIS 48410, 2005 WL 1159412, at *3–*4 (S.D. Ohio May 17, 2005) (discussing the burden upon interstate commerce that would be imposed by application of the Ohio Minimum Fair Wage Standards Act to all employees of an Ohio-based employee, even those employee who do not work in Ohio).

*Cruz v. Lawson Software, Inc.*, No. 08-5900 (MJD/JSM), 2009 U.S. Dist. LEXIS 143521, at *16–17 (D. Minn. May 21, 2009).

52.     Caselaw from other jurisdictions follows the same pattern. *See, e.g.*, *Handmaker v. CertusBank, N.A.*, No. 3:15-CV-129-TBR, 2015 WL 13635662, at *6 (W.D. Ky. July 7, 2015) (finding that there should be no extraterritorial application of the South Carolina Payment of Wages Act when the statute was silent on the issue); *Wooley v. Bridgeview Bank Mortg. Co.*, LLC, No. 14 C 5757, 2015 U.S. Dist. LEXIS 7663, 2015 WL 327357, at *2 (N.D. Ill. Jan. 23, 2015) (same, for the Illinois Minimum Wage Law); *Mitchell v. Abercrombie & Fitch*, No. C2-04-306, 2005 U.S. Dist. LEXIS 48410, 2005 WL 1159412, at *3–4 (S.D. Ohio May 17, 2005) (same, for the Ohio Minimum Fair Wage Standards Act, and finding that to conclude otherwise

would violate the Commerce Clause); *Wright-Moore Corp. v. Ricoh Corp.*, 794 F. Supp. 844, 860 (N.D. Ind. 1991) (same, for the Indiana Deceptive Franchise Practices Act, and noting potential Commerce Clause issues); *O'Neill v. Mermaid Touring Inc.*, 968 F. Supp. 2d 572, 578–79 (S.D.N.Y. 2013) (granting summary judgment in favor of an employer on a wage and hour claim asserted under New York law for work performed outside of New York, and holding that New York law does not apply to work performed outside New York because "[t]he crucial issue is where the employee is 'laboring,' not where he or she is domiciled"); *Killian v. McCulloch*, 873 F. Supp. 938, 942 (E.D. Pa. 1995), *aff'd sub nom. Stadler v. McCulloch*, 82 F.3d 406 (3d Cir. 1996) ("The legislature has a strong interest in enacting legislation to protect those who work in the Commonwealth, but has almost no interest in extending that protection to those who work outside Pennsylvania."); *Mulford v. Computer Leasing, Inc.*, 334 N.J. Super. 385, 759 A.2d 887, 891 (N.J. Law. Div. 1999) (holding that New Jersey's interest in enforcing wage and hour laws against a New York employer who employed workers in New Jersey gave New Jersey "the paramount interest in enforcing its law"); *Bigham v. McCall Serv. Stations, Inc.*, 637 S.W.2d 227, 231–32 (Mo. Ct. App. 1982) (holding that Missouri's wage and hour law applied rather than Kansas law, based in part on the fact that the work was performed in Missouri); *Risinger v. SOC LLC*, 936 F. Supp. 2d 1235, 1249–50 (D. Nev. 2013) (holding that Nevada's wage and hour law did not apply to work performed outside Nevada); *Abdulina v. Eberl's Temp. Servs., Inc.*, 79 F. Supp. 3d 1201, 1205–06 (D. Colo. 2015) (holding that the plaintiff did not have standing to assert a claim under Colorado's Wage Claim Act where she did not reside or work in Colorado); *Mitchell v. Abercrombie & Fitch*, No. C2-04-306, 2005 U.S. Dist. LEXIS 48410, 2005 WL 1159412, at *4 (S.D. Ohio May 17, 2005) (holding that the Ohio Minimum Fair Wage Standards Act could not be applied to work performed outside Ohio).

53.    For these reasons, the Employee Lien Claimants who reside and work outside the State of Tennessee cannot have a statutory lien under the Tennessee Lien Statute.

**C.**    **Severance Pay Is Not Compensation Under The Tennessee Lien Statute**

54.    The bulk of the Employee Lien Claims in the amount of approximately $3.7 million out of the aggregate amount of approximately $4.3 million in total Employee Lien Claims are based on asserted severance obligations.  Such Employee Lien Claims attributable to severance pay are not "sums due . . . for labor and service ***performed***" under the Tennessee Lien Statute.  *See* Tenn. Code Ann. § 66-13-101 (emphasis added).

55.    Severance pay is not compensation for services performed, but rather it is designed to assist former employees following the termination of employment.  *See Hensley v. Cocke Farmer's Coop.*, No. E2014-01775-COA-R3-CV, 2015 Tenn. App. LEXIS 697, at *15 (Tenn. Ct. App. Aug. 31, 2015) (citation omitted) (quoting *Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 101 (Tenn. 1999)) ("Generally, severance pay is a form of compensation paid by an employer to an employee at a time when the employment relationship is terminated through no fault of the employee.  The reason for severance pay is to offset the employee's monetary losses attributable to the dismissal from employment and to recompense the employee for any period of time when he or she is out of work.").

56.    Accordingly, the Employee Lien Claimants cannot have a statutory lien for severance pay under Tennessee law and approximately $3.7 million of the Employee Lien Claims must be reclassified as general unsecured claims.

**D.**    **Retention Bonuses Are Not Compensation Under The Tennessee Lien Statute**

57.     Likewise, any amounts based on retention bonuses must also be reclassified as general unsecured claims.  Such bonuses are paid for employees to remain, not to perform services.  Employees are compensated separately for services performed.

58.     A retention bonus offered as an inducement for an employee to remain is distinct from compensation for services performed.  *See, e.g.*, *Eller v. Soma Networks, Inc.*, 2012 Cal. Super. LEXIS 3678, at *10 (Cal. Super. Ct. May 8, 2012) (citing *Suastez v. Plastic Dress-Up Co.*, 647 P.2d 122, 125 (Cal. 1982)) ("Vacation pay is additional compensation for services performed, not a gift or gratuity and not an inducement for continued employment."); *see also O'Brien v. iLoop Mobile, Inc.*, No. 71307-8-I, 2015 Wash. App. LEXIS 2028, at *17 (Wash. Ct. App. Aug. 24, 2015) (quoting Black's Law Dictionary 1308 (10th ed. 2014)) (noting that "pay" is defined as "'[c]ompensation for services performed' and includes 'salary, wages, stipend, or other remuneration **given for work done**'" (emphasis added)).

59.     Accordingly, any amounts attributable to retention bonuses should not give rise to statutory liens under the Tennessee Lien Statute.

E.      **The Employee Lien Claimants Held Senior Officer Positions That Do Not Entitle Them To A Statutory Lien Under the Tennessee Lien Statute**

60.     The Employee Lien Claimants occupied senior management positions with the Debtors and were not the type of employees who are protected by the Tennessee Lien Statute. The Employee Lien Claimants held the following job titles:

- Mary Ann Smokler:  VP, Provider Recruitment

- Ben Youree:  Division President

- Aaron Kidd:  VP, Clinical Integration

- Isaac Palmer, Jr.:  Regional Vice President

- Penn Krause:  Regional Vice President

- Benjamin Ross:  Division President

- Tracy Young:  VP, Business Development

- Joseph White:  Regional Vice President

- Wendi Keeton:  VP, Provider Services

- Liz Harris:  VP, Quality and Clinical Performance

- Daniel Crane:  Division President, Clinical Operations

- Tressa Gardner:  Division President, Clinical Operations

61.    The Employee Lien Claimants had roles as senior officers with the Debtors that do not entitle them to a statutory lien.  *See State ex rel. McConnell v. Peoples Bank & Tr. Co.*, 296 S.W. 12, 14 (Tenn. 1926) (finding that managing officers of a bank were not covered by the statute, and stating "that it was not the intention of the Legislature" to provide a statutory lien to such persons).

62.    In *Frankenberg v. River City Resort, Inc.*, the Tennessee Court of Appeals found that a president and CEO of a corporation was not covered by the statute.  The court noted that, in accordance with the holding in *McConnell*, "the term 'employee' . . . '*rarely refers to the higher officers of a corporation* or government, or to domestic servants, and is usually distinguished from an official or officer, or one employed in a position of some authority.'" *Frankenberg v. River City Resort, Inc.*, No. E2012-01106-COA-R3-CV, 2013 Tenn. App. LEXIS 269, at \*9 (Tenn. Ct. App. Apr. 11, 2013) (quoting *McConnell*, 296 S.W. at 13).  "[G]enerally speaking, 'the term "employee" includes persons employed by the corporation in comparatively subordinate positions,' and . . . while any person employed by a corporation 'may perhaps be considered an employee of the corporation (and if from the context such appeared to be the meaning, the officers of the corporation might be intended by the term under some circumstances),

such is not the meaning of the word as ordinarily employed.'"  *Id.* at *10 (quoting *McConnell*, 296 S.W. at 13).

63.    Here, the Employee Lien Claimants each held positions of authority with the Debtors, either as Vice President or Division President.  The Employee Lien Claimants therefore are not in the class of employees intended to be protected by the Tennessee Lien Statute.

**F.    Any Statutory Liens Are Subject To Time Limitations Under Tennessee Law**

64.    Any statutory lien asserted by the Employee Lien Claimants is limited by time:  "The lien created in § 66-13-101 shall only extend to and protect those claims as may have accrued within three (3) months of the bringing of any suit for the enforcement of the lien, and shall continue during the pendency of any suit brought for its enforcement."  Tenn. Code Ann. § 66-13-102 (West); *see also Pennington v. Webb-Hammock Coal Co.*, 184 S.W.2d 47, 50 (Tenn. 1944) (noting that the applicable statutes "do not provide a lien for the whole of the wage claims but for only so much thereof as accrued within three months before suit").

65.    In *Amburn v. Attebury*, the Sixth Circuit heard an appeal from a ruling of the district court in which, while it was undisputed that certain employees were owed approximately $40,000, they were found to be entitled to a statutory lien only in the approximate amount of $7,500, which was the amount that was actually earned within the three (3) months prior to the filing of the complaint.  *See Amburn v. Attebury*, 834 F.2d 172, 172 (6th Cir. 1987).

66.    No lawsuit has been filed by the Employee Lien Claimants against the Debtors to enforce the asserted statutory liens at issue.  The Employee Lien Claimants filed proofs of claim on or about November 14, 2023.  Even if such proofs of claim are construed as a "suit for the enforcement of the lien," the Employee Lien Claimants would be limited to claims that arose from and after August 14, 2023.  Each of the Employee Lien Claims arose prior to such date when

the Employee Lien Claimants were terminated by the Debtors.  Accordingly, the Employee Lien Claims are barred by time under the Tennessee Lien Statute.

67.     For all of the foregoing reasons, the Employee Lien Claims should be reclassified as general unsecured claims in their entirety.

### RESPONSES TO THE OBJECTION

68.     <u>Filing and Service of Responses</u>.  As agreed by counsel to the Debtors and counsel to the Employee Lien Claimants, in order to contest the Objection, an Employee Lien Claimant must file and serve a written response to the Objection (a "**Response**") so that it is actually received by the Clerk of the Court and the parties in the following paragraph **no later than December 8, 2023** (the "**Response Deadline**").  Any Response must address each ground upon the Employee Lien Claimant opposes the Objection.

69.     Each Response must be filed and served upon the following entities at the following addresses:  (a) the Clerk of the Court, 824 North Market Street, 3rd Floor, Wilmington, Delaware 19801; (b) counsel to the Debtors:  Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, P.O. Box 8705, Wilmington, DE 19899-8705, Attn:  Laura Davis Jones (ljones@pszjlaw.com), David M. Bertenthal (dbertenthal@pszjlaw.com), and Timothy P. Cairns (tcairns@pszjlaw.com); (c) counsel to the Committee:  Kilpatrick Townsend & Stockton LLP, The Grace Building, 1114 Avenue of the Americas, New York, NY 10036, Attn:  Todd C. Meyers         (tmeyers@kilpatricktownsend.com),         David         M.         Posner (dposner@kilpatricktownsend.com),         and         Kelly         E.         Moynihan (kmoynihan@kilpatricktownsend.com); (d) co-counsel to the Committee:   Womble Bond Dickinson (US) LLP, 1313 North Market Street, Suite 1200, Wilmington, DE 19801, Attn:  Donald J. Detweiler  (don.detweiler@wbd-us.com),  Morgan L. Patterson  (morgan.patterson@wbd-

us.com), and Elazar A. Kosman (elazar.kosman@wbd-us.com); and (e) counsel to Goldman Sachs, agent to the Debtors' prepetition lenders: King & Spalding LLP, 1180 Peachtree Street, Atlanta, GA 30309, Attn: W. Austin Jowers (ajowers@kslaw.com) and Lindsey Henrikson (lhenrikson@kslaw.com).

70.    Every Response to this Objection must contain at a minimum the following information: (a) a caption setting forth the name of this Court, the name of the Debtors, the case number, and the title of this Objection; (b) the Employee Lien Claimant's name; (c) the Employee Lien Claim number; (d) the specific factual basis and supporting legal argument upon which the Employee Lien Claimant will rely in opposing this Objection; (e) any supporting documentation, to the extent it was not included with the Employee Lien Claim previously filed, upon which the Employee Lien Claimant will rely to support the basis for and amounts asserted in the Employee Lien Claim; and (f) the name, address, and telephone number of the person(s) (which may be the Employee Lien Claimant or the Employee Lien Claimant's legal representative) with whom counsel for the Debtors should communicate with respect to the Employee Lien Claim or the Response, possessing ultimate authority to reconcile, settle, or otherwise resolve the Objection to the disputed Employee Lien Claim on behalf of the Employee Lien Claimant.

71.    <u>Timely Response Required; Hearing</u>.  If an Employee Lien Claimant fails to file and serve a timely Response in compliance with the foregoing procedures, the Debtors will present to the Court an appropriate order without further notice to such Employee Lien Claimant. As agreed by counsel to the Debtors and counsel to the Employee Lien Claimants, if a Response is properly and timely filed and served in accordance with the above procedures, the Court will conduct a hearing (the "<u>Hearing</u>") with respect to the Objection and any Response at the same time as the confirmation hearing on the Proposed Plan before the Honorable Brendan L. Shannon,

United States Bankruptcy Judge, at the United States Bankruptcy Court for the District of Delaware, 824 North Market Street, Wilmington, Delaware 19801.

72.     The Debtors may file and serve a reply to any Response in accordance with the Local Rules.  The Debtors reserve the right to seek an adjournment of the Hearing on any Response to this Objection, which adjournment will be noted on the notice of agenda for the Hearing.

## SEPARATE CONTESTED MATTERS

73.     To the extent that any Response is filed regarding any Employee Lien Claim that is the subject of this Objection and the Debtors are unable to resolve that Response, each applicable Employee Lien Claim (together with the objection to such Employee Lien Claim set forth herein and the applicable Response thereto) shall constitute a separate contested matter as contemplated by Bankruptcy Rule 9014.  Any order entered by the Court regarding the Objection shall be deemed a separate order with respect to each applicable Employee Lien Claim (together with the objection to such Employee Lien Claim asserted herein and any applicable Response thereto).

## NOTICE

74.     The Debtors shall provide notice of this Objection on the date hereof via first class mail to:  (a) the Office of the U.S. Trustee for the District of Delaware; (b) counsel to the Committee; (c) those parties requesting notice pursuant to Bankruptcy Rule 2002; and (d) counsel to the Employee Lien Claimants.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## **RESERVATION OF RIGHTS**

75.     The Debtors reserve the right to:  (i) amend, modify, or supplement this Objection; and (ii) file additional objections to the Employee Lien Claims in the future on any grounds.

76.     Notwithstanding anything to the contrary contained in this Objection or the attached exhibits, nothing in this Objection or the attached exhibits is or shall be construed as a waiver of any rights that the Debtors may have to exercise setoffs or recoupments against the holders of any Employee Lien Claims.

## **STATEMENT OF COMPLIANCE WITH LOCAL RULE 3007-1(e)(i)(E)**

77.     The undersigned counsel for the Debtors certify that they have reviewed the requirements of Local Rule 3007-1 and that the Objection substantially complies with that Local Rule.  To the extent that the Objection does not comply in all respects with the requirements of Local Rule 3007-1, the Debtors assert that such deviations are not material and respectfully request that any such requirement be waived.

## **NO PRIOR REQUEST**

78.     No prior request for the relief sought herein has been made to this Court or any other court.

## **CONCLUSION**

**WHEREFORE**, the Debtors respectfully request that the Court:  (i) enter the Proposed Order reclassifying the Employee Lien Claims as general unsecured claims in their entirety and (ii) grant such other and further relief that the Court deems proper and just.

Dated:  November 29, 2023

**PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ Laura Davis Jones*
Laura Davis Jones (DE Bar No. 2436)
David M. Bertenthal (CA Bar No. 167624)
Timothy P. Cairns (DE Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone:  302-652-4100
Facsimile:  302-652-4400
email:  ljones@pszjlaw.com
        dbertenthal@pszjlaw.com
        tcairns@pszjlaw.com

*Counsel for the Debtors and Debtors in Possession*