IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| AMERICAN PHYSICIAN PARTNERS, LLC, *et al.*, | ) Case No. 23-11469 (BLS) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) **Docket Ref. Nos. 77, 390, 455** |

**LIMITED OBJECTION OF CASCADE CAPITAL FUNDING, LLC, TO CONFIRMATION OF THE AMENDED CHAPTER 11 COMBINED PLAN AND DISCLOSURE STATEMENT**

Cascade Capital Funding, LLC ("Cascade"), by and through its undersigned attorneys, hereby objects to the confirmation of the amended Chapter 11 plan, filed on November 9, 2023, as proposed by American Physician Partners, LLC ("APP") and the and the other debtors-in-possession (collectively, the "Debtors"), and in support thereof represents as follows:

**GENERAL BACKGROUND**

1. On September 18, 2023 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code") with the Court.

2. On September 19, 2023, the Debtors filed the *Declaration of John C. Didonato in Support of the Debtors' Chapter 11 Petitions and First Day Relief* (the "First Day Declaration") [Docket No. 18]. The Declaration contains information regarding the Debtors' business, capital structure, and the circumstances leading to the commencement of the Chapter 11 cases.

3. Also on September 19, 2023, the Debtors filed the *Combined Disclosure Statement and Plan of Liquidation of American Physician Partners, LLC and its Affiliated Debtors Under Chapter 11 of the Bankruptcy Code* [Docket No. 17] (the "Combined Disclosure Statement and Plan").

4.  On September 28, 2023, the Debtors filed the *Motion for Entry of an Order (I) Granting Conditional Approval of the Adequacy of Disclosures in the Combined Disclosure Statement and Plan; (II) Scheduling a Combined Combination Hearing and Setting Deadlines Related Thereto; (III) Approving Solicitation Packages and Procedures; (IV) Approving the Forms of Ballots; and (V) Granting Related Relief* [Docket No. 77] (the "Disclosure Statement Motion").

5.  On November 9, 2023, the Debtors filed the *Amended Combined Disclosure Statement and Plan of Liquidation of American Physician Partners, LLC and its Affiliated Debtors Under Chapter 11 of the Bankruptcy Code* [Docket No. 455] (the "Amended Combined Disclosure Statement and Plan"). The Amended Combined Disclosure Statement and Plan includes certain disclosures through which the Debtors aim to satisfy the disclosure requirements of section 1125 of the Bankruptcy Code (that portion, the "Disclosure Statement"). Additionally, it includes portions that constitute a Chapter 11 plan for the Debtors (such portions, collectively, the "Plan").

## BACKGROUND RELATED TO CASCADE

6.  On September 17, 2021, Cascade entered into a Purchase Agreement[1] with APP, pursuant to which Cascade purchased 169,903 unpaid medical accounts from the Debtors, and on October 8, 2021, Cascade purchased an additional 21,433 accounts (collectively, the "Purchased Accounts").

7.  Cascade tendered the full amount of the purchase price to APP. However, a significant portion of the accounts were previously sold to another company, resulting in prepetition litigation between Cascade and APP. Cascade has filed a proof of claim for the amounts it is owed as a result

---

[1] The terms of the Purchase Agreement include confidential and proprietary information and, as a result, Cascade is not attaching a copy of the contract here. The Purchase Agreement will be made available to the Court or filed under seal to the extent the terms of the contract are relevant to Cascade's objection.

of APP's breach of the Purchase Agreement. Cascade is therefore a party in interest with standing to object to confirmation of the Plan under 11 U.S.C. §1128.

8. Under the Purchase Agreement, Cascade became the sole owner of all right, title, and interest in and to all of the Purchased Accounts. Notwithstanding the fact that Cascade purchased and now owns the Purchased Accounts, payment on some of the Purchased Accounts has been made directly to the Debtors. Despite their contractual obligation to return these payments to Cascade, the Debtors have not returned Cascade's funds.

9. In addition, the Debtors have not responded to Cascade's request for an accounting of any misdirected payments on the Purchased Accounts that the Debtors have received. Cascade believes that this information is readily available to the Debtors or to their collection agent, R1. As a result, the exact amount of the misdirected payments belonging to Cascade has yet to be determined.

10. Even though the Debtors have received and not returned or otherwise accounted for payments on the Purchased Accounts that belong to Cascade, the Debtors are pressing ahead with confirmation of the Plan that does nothing to protect Cascade's interests by determining the amount of cash the Debtors are holding that belongs to Cascade before substantial distributions of that cash are completed.

## **THE RELIEF REQUESTED AND THE REASONS THEREFOR**

11. The Plan proposes to wind down the Debtors business and reduce all of the assets of their Estates to cash. In particular, the Debtors are proposing to establish a Liquidating Trust that will:

> ….. liquidate, collect, sell, or otherwise dispose of the remaining assets of the Debtors' estates (the "Estates") (including, without limitation, certain causes of action), if and to the extent such assets were not previously monetized to Cash or otherwise transferred or disposed of by the Debtors prior to the Effective Date, and to distribute all net proceeds to Creditors generally in accordance with the priority scheme under the Bankruptcy Code other than the GUC Fund which shall be for the benefit of general unsecured creditors subject to the terms of the Plan and Liquidating Trust Agreement. Plan at p. 4.

12. The Debtors are fully aware that some of their cash constitutes proceeds of accounts receivable sold by the Debtors to Cascade and other parties that is not property of their Estates. Two other purchasers of the Debtors' accounts receivable, Pendrick Capital Partners, LLC ("Pendrick"), and Sapientes Funding II, LLC ("Sapientes") filed objections to the *Motion of the Debtors Pursuant to Sections 105, 361, 362, 363, and 507 of the Bankruptcy Code, Bankruptcy Rule 4001, and Local Rule 4001-2 for Interim and Final Orders (A) Authorizing Debtors to use Cash Collateral, (B) Granting Adequate Protection to Prepetition Secured Parties, (C) Modifying the Automatic Stay, and (D) Scheduling a Final Hearing* [D.I. 10] (the "Cash Collateral Motion"), asserting that proceeds of their purchased accounts were received by the Debtors and intermingled with the Debtors' cash. In the final order granting the Cash Collateral Motion [D.I. 435], the Court ordered that the Debtors must segregate or reserve an amount equal to $384,476.07 for Pendrick and $1,836,528.46 for Sapientes.

13. To address the collection of non-debtor accounts both before and after the Petition Date, the Plan provides: "From time to time, the Non-Estate Patient Receivables are paid to the Debtors rather than being remitted to the third parties [sic] purchasers. The Non-Estate Patient Receivables are not property of the Debtors' estate and therefore will not be used to fund any amounts pursuant to the Combined Plan and Disclosure Statement." Plan at p. 30.

14. While the Debtors pay lip service to the rights of Cascade and other purchasers in misdirected payments that are included in the Debtors' cash, they offer no substantive solution in the Plan to determine the amount of misdirected payments, who is entitled to them and turnover of the cash that is not property of their Estates. At the same time, the Debtors are proposing to start distributing Cash immediately upon the effectiveness of the Plan, including a $250,000 GUC Payment, a $75,000 Liquidation Trust Expense Reserve, a Professional Fee Escrow, an Administrative/Priority/Other Distributions Reserve and other distributions of cash to their creditors. Plan at p. 63. While the Debtors state that none of these distributions will include proceeds of "Non-

4

Estate Patient Receivables", in reality, the Debtors have not accounted for the misdirected payments of Cascade's Purchased Accounts (and potentially other purchasers' accounts), so they can have no knowledge whether cash being distributed is or is not their property. Plan at p. 30.

15.    The Plan is also silent as to any procedure to resolve the extent of Non-Estate Patient Receivables being held by the Debtors. Cascade has been attempting to obtain this information from the Debtors, but as of this date, no information on the extent of proceeds of Purchased Accounts being held by the Debtors has been provided. Cascade is therefore left to pursue its rights and remedies to identify and recover the proceeds of its Purchased Accounts, such as conducting discovery in connection with this objection, filing a turnover action and other related proceedings. These actions may not be resolved until after the effectiveness of the Plan, resulting in the tangible risk that the Debtors could distribute proceeds of Cascade's Purchased Accounts before the amount of misdirected payments can be determined. Cascade's rights cannot be prejudiced by the Debtors' refusal to cooperate in identifying and turning over Cascade's property. The Plan should not be confirmed until it is certain that the Debtors will not distribute cash that constitutes proceeds of the Purchased Accounts.

16.    The Plan also adversely impacts Cascade because misdirected payments to the Debtors on its Purchased Accounts may continue into the future despite Cascade's best efforts to insure payments on its Purchased Accounts are made directly to Cascade. Even though misdirected accounts receivable collections will no doubt continue beyond effectiveness, the Plan includes no procedure to determine who owns the Debtors' post Effective Date cash receipts. At a minimum, the Liquidating Trust should be required to match cash collections to specific accounts receivable that are owned by the Debtors before making distributions of this cash. If the cash collections cannot be specifically matched to a Debtor-owned receivable, the Court should require that the cash be segregated and not distributed until its ownership can be determined.

5

17. The implementation of the Plan involves the distribution of cash on and after the Effective Date to satisfy the requirements for confirmation. Plan at p. 63. However, given the uncertainties surrounding ownership of the Debtors' cash and the currently unknown extent of Non-Estate Patient Receivables proceeds that the Debtors are holding, the Plan does not include an adequate means for implementation as required under 11 U.S.C. §1123(a)(5). Until the extent of Non-Estate Patient Receivables proceeds that belong to Cascade and other purchasers is known, the Plan cannot be confirmed.

18. In light of the foregoing, the Plan should either not be confirmed or modified so that the amount of misdirected payments on account of Cascade's Purchased Accounts is determined before cash is distributed. In addition, the post Effective Date cash management structure must also be modified to insure that future misdirected payments of Cascade's Purchased Accounts are properly accounted for and turned over to Cascade and not distributed under the Plan.

19. On December 6, 2023, the Debtors postponed the confirmation hearing until January 5, 2024, but did not extend confirmation objection deadline of December 7, thus requiring Cascade to file and serve its objection almost one month before the hearing [D.I. 637]. As Cascade expects to develop additional facts in that period in support of its objection, Cascade reserves the right to supplement, amend or modify this objection at any time prior to the confirmation hearing.

WHEREFORE, Cascade respectfully requests the entry of an order denying confirmation of the Plan for the foregoing reasons, together with such other and further relief as is just and proper.

| | |
|---|---|
| Dated: December 7, 2023<br>Wilmington, Delaware | */s/ Richard M. Beck*<br>Richard M. Beck (DE Bar No. 3370)<br>Alyssa M. Radovanovich (DE Bar No. 7101)<br>**KLEHR HARRISON HARVEY BRANZBURG LLP**<br>919 Market Street, Suite 1000<br>Wilmington, Delaware, 19801-3062<br>Telephone: (302) 426-1189<br>Email: rbeck@klehr.com<br>         aradovanovich@klehr.com<br><br>*Counsel to Cascade Capital Funding, LLC* |