**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>AMERICAN PHYSICIANS PARTNERS LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 23-11469 (BLS)<br><br>(Jointly Administered)<br><br>Re: Docket No. 455 |

**THE NEW MEXICO PLAINTIFFS' PRELIMINARY RESPONSE AND RESERVATION OF RIGHTS IN CONNECTION WITH DEBTORS' PLAN**

Elaine Montoya and Ariana Quinones (collectively, the "New Mexico Plaintiffs"), by and through their undersigned counsel, hereby respond and reserve their rights in connection with the *Debtors' Combined Disclosure Statement and Plan of Liquidation of American Physician Partners, LLC and its Affiliated Debtors Under Chapter 11 of the Bankruptcy Code* [Docket No. 455] and respectfully state as follows:

1. On September 18, 2023 and continuing on September 19, 2023 (the "Petition Dates"), the above-captioned debtors and debtors in position (collectively, the "Debtors"), each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

2. As provided herein, each of the New Mexico Plaintiffs have personal injury claims (the "Personal Injury Claims"), and out of an abundance of caution, have filed proofs of claim in connection with these bankruptcy cases, against Debtor APP of New Mexico ED, PLLC (Case No. 23-11478). The proofs of claims, filed at claims nos. 10537 and 10538, relate to the treatment and provision of medical care, including against medical providers who may have a contract with Debtor APP of New Mexico ED, PLLC.

---

[1] A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/AmericanPhysicianPartners. The location of American Physician Partners, LLC's principal place of business and the Debtors' service address in these Chapter 11 Cases is 5121 Maryland Way Suite 300 Brentwood, TN 37027.

16441158/1

3.    Because the Debtors' deadline to submit proofs of claims was after the record date for claims voting purposes, the New Mexico Plaintiffs were not afforded the opportunity to vote on the proposed Plan of Liquidation and more importantly, opt out of any third-party releases that may be afforded by the Plan that may impact the Personal Injury Claims that have or will be asserted against by the New Mexico Plaintiffs.

4.    As a result, the New Mexico Plaintiffs respond, object and reserve rights to oppose the Debtors' Plan to the extent that it contains any limitation, release or waiver of rights that the New Mexico Plaintiffs have or may have, should the Plan be extended to include non-consensual third-party releases against independent contractors or related medical personnel such as those who treated the New Mexico Plaintiffs.

**Background**

A.    **Elaine Montoya**

5.    On or about December 3, 2018, Elaine Montoya presented to the emergency room of Lovelace Medical Center in downtown Albuquerque, right after midnight. EMS records had noted her to be disoriented with generalized weakness and a pupil abnormality.

6.    Mrs. Montoya's history and physical examination in the Emergency Room noted that she began suffering from altered mental status about 1.5 to 2 hours prior to arrival when her family went to check on her and noticed that she "was not breathing properly, and unresponsive." An ECG, chest x-ray and CT of the brain without contrast were all ordered by Jeffrey Kenyon, MD. Dr. Kenyon is an independent contractor placed at Lovelace Medical Center by a contract between Lovelace Medical Center and related debtor APP of New Mexico ED, PLLC.

7.    The CT was normal, ensuring there was no hemorrhagic stroke, but it did not rule out an ischemic stroke. Dr. Kenyon's clinical impressions were that Mrs. Montoya was either

suffering a urinary tract infection, or unspecified altered mental status. He never ruled out a stroke or treated one.

8.    Mrs. Montoya was transferred to an inpatient served for the day, with tests being performed that included an ultrasound of her liver and gallbladder as a possible source for her vomiting and nausea. Unfortunately, Mrs. Montoya got worse, and a second CT showed an ischemic stroke had occurred that night.

9.    Mrs. Montoya was sent to the University of New Mexico Hospital where it was determined that the treatment to break up the clot causing her stroke, tissue plasminogen activator (tPA), could not be administered because Mrs. Montoya was outside the window. Mrs. Montoya continued to suffer damages from the stroke and eventually succumbed to her injuries on April 12, 2020.

10.    It has been alleged that Dr. Kenyon breached the standard of care by failing to treat Mrs. Montoya's symptoms as a stroke, and provide her tPA, within the appropriate window. It has also been alleged that his failure to appropriately treat Mrs. Montoya's stroke caused her injuries and damages, including causing or contributing to her death.

11.    The Complaint filed on behalf of the Wrongful Death Estate of Elaine Montoya did not name APP of New Mexico ED, PLLC because Dr. Kenyon, is an apparent agent of the owner of Lovelace Medical Center, Lovelace Health System, LLC. "A hospital is responsible for injuries proximately resulting from the negligence of health care providers who are not hospital employees," such as in an emergency room, "if the hospital, through its conduct, created the appearance that it was the provider of these services to the public." NMRA 13-1120B UJI.

12.    Dr. Kenyon is the apparent agent of Lovelace Health System, LLC, and therefore the action related to the claims of Elaine Montoya does not involve any related debtors in the

current bankruptcy, or asserting any claims against them. And while Dr. Kenyon may be insured under a policy procured by APP of New Mexico ED, PLLC, that policy has no deductible, and identifies him as a "protected person" through an employee separate limits endorsement, which bound him to the insurance through payment of an additional and separate premium. **Exhibit 1**. As such, no property of the bankruptcy estate will be implicated.

**B.     Ariana Quinones**

13.     On or about December 28, 2022, Ariana was brought to the emergency department at MountainView Hospital in Las Cruces, New Mexico, because of abdominal pain. Upon information and belief, a physician named William Bussey, MD, who may have been an independent contractor having a contract with APP of New Mexico ED, PLLC, provided care to Ariana, diagnosing her with mesenteric lymphadenitis. She was discharged thereafter.

14.     On or about December 30, 2022, Ariana was brought to the emergency department at El Paso Children's Hospital, where she was diagnosed with a ruptured appendix. She was treated for appendicitis and the rupture with surgery and IV antibiotics.

15.     But for the misdiagnosis on or about December 28, 2022, Ariana would not have suffered a ruptured appendix, and would have avoided medical treatment, pain and suffering, and other damages. Desirae Gonzales, on behalf of Ariana Quinones, will be seeking all damages arising from the failures to properly diagnose and her daughter at MountainView Hospital.

16.     It is expected that if Dr. Bussey is an independent contractor having a contract with APP of New Mexico ED, PLLC like Dr. Kenyon, any complaint naming him will assert that he is a is an apparent agent of the owner of MountainView Hospital, Las Cruces Medical Center, LLC.

17.     Dr. Bussey, being the apparent agent of Las Cruces Medical Center, LLC means that bringing suit against him or Las Cruces Medical Center, LLC, will not involve naming any

related debtors in the current bankruptcy, or asserting claims against them. And similar to Dr. Kenyon, Dr. Bussey may be insured under a policy procured by APP of New Mexico ED, PLLC, but that policy has no deductible, and will identify him as a "protected person" through an employee separate limits endorsement, which bound him to the insurance through payment of an additional and separate premium. *See* **Exhibit 1**. As such, no property of the bankruptcy estate will be implicated.

### Response and Reservation of Rights

18. With regard to "Third Party Releases", the Plan provides at Section 16.2(a)(2):

On and after and subject to the occurrence of the Effective Date, except as otherwise provided in the Plan, each Claimant (collectively, the "Releasing Parties") who (i) is not Impaired under the Plan or (ii) affirmatively votes to accept the Plan and who does not elect to "opt-out" by marking the appropriate box on such Releasing Party's respective Ballot or opt-out form, for (1) themselves and their respective successors, assigns, transferees, (2) and such Claimants' officers and directors, managers, agents, members, financial and other advisors, attorneys, employees, partners, affiliates, and representatives (in each case in their capacity as such) ("Additional Release Parties"), shall release (the "Third Party Release") each Released Party, and each of the Debtors, the Estates, and the Released Parties shall be deemed released from any and all claims, interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims asserted or assertable on behalf of any of the Debtors or the Estates, as applicable, whether known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, matured or unmatured, determined or determinable, disputed or undisputed, liquidated or unliquidated, or due or to become due, existing or hereinafter arising, in law, equity, or otherwise, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' liquidation, the Transition Related Activities, the Chapter 11 Cases, the purchase, sale, transfer of any security, asset, right, or interest of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between the Debtors and any Released Party, the restructuring of Claims and Interests prior to or in the Chapter 11 Cases, the negotiation, formulation, or preparation of the Plan or related agreements, instruments, or other documents, any other act or omission, transaction, agreement, event, or other occurrence taking place on and before the Effective Date, other than claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes fraud, willful misconduct or gross negligence; provided however, the foregoing Third Party Release shall not release any obligations of any party under the Plan or any other document, instrument, or agreement executed to implement the Plan; and provided further that, notwithstanding any of the foregoing, strictly as to the

scope of the Third Party Release by the Additional Release Parties in favor of the Released Parties, the Third Party Release will apply only to claims and causes of action of an Additional Release Party that (a) are derivative of the claims held by the Releasing Party to whom the Additional Release Party is related, or (b) solely to the extent such Additional Release Party would be obligated to grant a release under applicable non-bankruptcy law if they were so directed by the Releasing Party to whom they are related.

19.     The Plan's Third-Party Release provisions provide for the "opt out" of the releases if the appropriate box on the ballot or opt-out form is completed and returned. The New Mexico Plaintiffs were not provided a ballot to vote on the Plan. If they were to receive a ballot, they would vote to opt out of any third-party release of Personal Injury Claims and affirmatively "opt-out" as part of this objection to the Plan.

20.     The New Mexico Plaintiffs have concerns that their rights, and the rights of others similarly situated could be impacted should the Third-Party Releases be permitted, including a failure to provide the claimants fair notice and opportunity to be heard, and a reasonable opportunity to opt-out of the releases provided by the Plan. The voting deadline was set prior to the proof of claim deadline. Although the New Mexico Plaintiffs believe that no property of the Debtors' estates is impacted by their claims – the third-party release provisions should not be applicable to or used affirmatively against the New Mexico Plaintiffs, in any way.

21.     The New Mexico Plaintiffs reserve the right to amend and supplement this response prior to or at the confirmation hearing seeking to confirm the Debtors' Plan.

[*Remainder of Page Intentionally Left Blank*]

16441158/1

WHEREFORE, the New Mexico Plaintiffs hereby requests that their rights be reserved and protected in connection with their Personal Injury Claims and the related Actions and that the Debtors' Plan not interfere or impede upon such rights.

| | |
|---|---|
| Dated:    December 7, 2023 | **MORRIS JAMES LLP** |

*/s/ Eric J. Monzo*
Eric J. Monzo (DE Bar No. 5214)
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
Telephone: (302) 888-6800
Facsimile: (302) 571-1750
E-mail: emonzo@morrisjames.com

-and-

David C. Odegard, Esquire
DeLara Supik Odegard P.C.
7801 Academy Road NE, Bldg. 2, Suite 201
Albuquerque, NM 87109
Telephone: (505) 999-1500
E-mail:  odegard@delaralaw.com

*Counsel to Elaine Montoya and Ariana Quinones*