**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| AMERICAN PHYSICIAN PARTNERS, | ) | Case No. 23-11469 (BLS) |
| LLC, *et al.*, [1] | ) | |
| Debtors | ) | (Joint Administration Requested) |

**EMPLOYEE OBJECTORS' RESPONSE TO DEBTORS'**
**FIRST OMNIBUS OBJECTION (SUBSTANTIVE) TO EMPLOYEE LIEN CLAIMS**

Penn Krause, Mary Ann Smokler, Ben Youree, Daniel Crane, Aaron Kidd, Isaac Palmer, Jr., Tressa Gardner, Benjamin Ross, Tracy Young, Joe White, Wendi Keeton and Liz Harris (collectively referred herein to as the "Employee Objectors"), by and through their undersigned counsel, hereby file this response to the *Debtors' First Omnibus Objection (Substantive) to Employee Lien Claims* (the "First Omnibus Objection")(D.I. 501) and in support thereof, states as follows:

**I.      FACTS**

1.      In 2022, American Physicians Partners, LLC ("APP") was having problems, and it faced an exodus by key employees. To implement its plan of survival, it entered severance agreements with certain employees. Available severance agreements are attached to the Proofs of Claim filed by the Employee Objectors.  Other than the amounts, they include identical terms.

2.      In 2023, APP's situation was becoming more critical, and APP decided to sweeten the pot. Several employees were promised retention bonuses as an inducement to stay.

---

[1] A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/AmericanPhysicianPartners. The location of American Physician Partners, LLC's principal place of business and the Debtors' service address in these Chapter 11 Cases is 5121 Maryland Way Suite 300 Brentwood, TN 37027.

Available copies of retention bonuses have been attached to the Proofs of Claim. Other than the amounts, they too include identical language.

3.      The following Employee Objectors signed a severance agreement and a retention bonus: Penn Krause; Mary Ann Smokler; Ben Youree; Aaron Kidd; Isaac Palmer Jr.; Benjamin Ross; Tracy Young; Joe White; Wendi Keeton; and Liz Harris. Daniel Crane and Tressa Gardner signed severance agreements but not retention bonuses.

4.      APP has paid retention bonuses and severance to some employees not represented in this motion. In each instance, the money was counted as wages in APP's bookkeeping. It was also reported to the federal government as employee income.

5.      APP has not provided a reason that it did not pay promised retention bonuses or severance to the Employee Objectors. There is no hint or suggestion, though, that the decision had anything to do with job performance.

6.      It is believed that APP's secured creditors were on board and endorsed the decision to retain key employees by promising severance benefits and retention bonuses. In fact, the secured lenders appointed board members to help manage the business operations of APP.

7.      By their express terms, retention bonuses were automatic. The severance pay was triggered by APP's restructuring/reorganization efforts. It will not be disputed that APP began restructuring at least by late July (in part by terminating employees) and that it filed a Petition for Chapter 11 reorganization in September.

8.      Immediately after being terminated, the Employee Objectors hired undesigned counsel and demanded that their claims be paid. Far from secret, this claim was considered by APP and its creditors, who by then had a place in corporate governance at the company.

9.      On August 21, 2023 undersigned counsel sent a letter to APP demanding payment of the bonuses and severance. (Exhibit A). APP did not immediately respond, and undersigned counsel sent the following email on August 29:

> *Dear Mr. Nugent:*
>
> *Attached, once again, is a letter I first sent on August 21, 2023, requesting a response by August 25, 2023. I have not heard from you. We understand that this is a busy time and we were prepared to be flexible in setting deadlines. I did not receive any response, though, which heightens the concerns expressed in the letter. Please respond to my letter by Thursday, August 31, 2023. If you need additional time I will expect an email before then. If you neither respond nor send an email, we will infer from APP's silence on the matter that it is diverting funds owed to my clients to third parties, and my clients will take the necessary steps to protect their interests.*
>
> *  - Tom Farnan*
>
> *cc: David Fuchs, Brandon Dyson, Andy McQueen, Jim Decker*

10.     Telephone discussions ensued with APP's lawyer, Paul Jennings, of the law firm Bass, Berry & Sims PLC. On September 12, 2023, Mr. Jennings responded *via* email to propose a resolution of the claims, quoted in part below:

> *Gentlemen- following up on our discussion and subsequent emails, APP is willing to make the following payments to your clients which represent a pro-rated amount of the retention bonuses based on their separation date. Obviously no retention payments would otherwise be owed until October under the retention agreements.  This offer is made subject to a full release by these individuals of any other amounts claimed to be owed whether due now or in the future.  Any resolution remains subject to appropriate documentation that is satisfactory to APP.  This offer of compromise and settlement will remain open until the close of business September 14, 2023.  Thank you.  Paul*

11.     While engaging the Employee Objectors in negotiation, APP was preparing to file for bankruptcy. The counteroffer immediately before filing the bankruptcy was a last-ditch attempt to resolve these claims, and the Employee Objectors did not accept it. This bankruptcy was filed on September 18, 2023.

12.     The two-page Declaration of John C. Didonato attached as Exhibit B to the
Omnibus Objection includes mostly legal conclusions based on "advice received from counsel
for Debtors concerning state and federal law" that do not belong in a declaration. See 28 U.S.
Code § 1746.[2]  There are only two actual factual averments:

- That the Employee Objectors were terminated before August 14, 2023.

- That three Employee Objectors, Daniel Crane, Issac Palmer, Jr., and Tressa
  Gardner, reside outside of Tennessee.

For the purposes of this response, those two facts are admitted.


## II.    LEGAL ANALSYIS

13.     The Employee Objectors' claims involve a Tennessee statute that requires judicial
interpretation of only four words: "All employees" and "any corporation." As a matter of law,
the Employee Objectors are in the category of "All employees" and APP is in the category of
"any corporation." With this clear and undeniable meaning of these four words properly applied,
judicial enforcement of the statutory lien on behalf of Employee Objectors is appropriate and the
pending Omnibus Objection should be denied.

### A.  Tennessee Law Creates a Statutory Lien on Behalf of Employees of Tennessee Companies to Get Paid Amounts They Are Owed as Income.

14.     The Bankruptcy Code is clear that, "[a] statutory lien is only one that arises
automatically, and is not based on an agreement to give a lien or on judicial action." *In re
Sullivan*, 254 B.R. 661, 664 (2000 Bankr. LEXIS 1288). "Ultimately, whether a lien arises solely
by force of a statute is determined by state law or by federal non-bankruptcy law." *Id.* at 665,

---

[2] The Declaration includes mostly legal conclusions based on advice given by Debtors' lawyers
to Mr. Didonato, placing that advice at issue.

*citing In re Loretto Winery, Ltd.*, 898 F.2d 715, 720 (9th Cir. 1990). It is fundamental – and

mostly not disputed – that this Court is required to apply Tennessee law to the Employee

Objectors claims. *Park Restoration, LLC v. Erie Ins. Exch. (In re Trs. of Conneaut Lake Park,*

*Inc.)*, 855 F.3d 519, 523 (3d Cir. 2017).

15.    For the wages at issue, the Tennessee legislature used the word "lien" and

indicated that it had priority against the types of creditors objecting to its enforcement in this

case:

> *All employees and laborers of any corporation, or firm, carrying on any*
> *corporate or partnership business shall have a lien upon the corporate or firm*
> *property of every character and description, for any sums due them for labor*
> *and service performed for the corporation or firm, and such lien shall prevail*
> *over all other liens, except the vendor's lien or the lien of a mortgage, or deed of*
> *trust to secure purchase money.*

Tenn. Code Ann. § 66-13-101.

> *No corporation or partnership doing business in this state shall have the power*
> *to execute a mortgage or deed of trust or other instrument creating a lien upon*
> *the property of the corporation prior to that in favor of the employees and*
> *laborers, except to secure purchase money.*

Tenn. Code Ann. § 66-13-103.

16.    As the Supreme Court instructs, "[a]bsent contrary direction from Congress, we

begin our interpretation of statutory language with the general presumption that a statutory term

has its common-law meaning." *Scheidler v. Nat'l Org. for Women, Inc.*, 537 U.S. 393, 402

(2003). The Tennessee statute at issue specifically says that it creates a lien, <u>using that very</u>

<u>word</u>. It is fundamental that a statutory lien arises "solely by force of a statute on specified

circumstances or conditions." 11 U.S.C. § 101(53). Here, the lien arises by force of a Tennessee

statute, if the term is given its common law meaning. Tenn. Code Ann. §§ 66-13-101 and 103. A

lien arising from a statute is a statutory lien. *In re Sullivan*, 254 B.R. at 663.

B.  **Under Tennessee Law, the Bonuses and Severance Were Earned During Employee Objectors' Employment.**

17.     APP's accounting records will show that whenever it paid bonuses or severance, the money was treated as income under 26 U.S. Code § 61. This is consistent with Tennessee law, *e.g.*, TN Rules and Regs. 1240-01-04-14, which specifically includes severance and bonus as "earned income."

18.     The Tennessee Supreme Court has endorsed the logical position that severance pay and the sorts of bonuses promised in this case are for service performed before the termination of employment:

> It is admitted that the appellants, in the instant case, performed no services during any week after the severance. In fact, the 'severance pay' is not 'with respect to' the performance of any additional personal services at any time. It is 'with respect to' the number of years continuous satisfactory service with the company prior to the severance. It is irrelevant whether 'severance pay' is characterized as 'wages' so long as it is 'wages' paid 'with respect to' personal services performed in the weeks and years prior to the severance.

> *Balding v. Tennessee Dept. of Employment Sec.*, 16 McCanless 517, 212 Tenn. 517, 370 S.W.2d 546 (Tenn. 1963).

19.     For this reason, in Tennessee, severance pay does not offset unemployment compensation, because it was earned before termination. *Id*. Similarly, in divorce cases, severance is income for the purposes of determining child support and alimony. Tenn. Comp. R. & Regs. Ch. 1240-2-03(3)(a).

20.     This logic has been applied in the federal bankruptcy context as well. In *United States v. Quality Stores, Inc.*, 572 U.S. 141 (2014), the Supreme Court considered a bankruptcy court's determination that severance paid as part of a reduction in work force plan before the filing of the bankruptcy were not "wages." The Court reversed the bankruptcy court's ruling, and

in doing so engaged in a discussion of the meaning of "wages" that tracks the reasoning of

*Balding*:

> Severance payments are, of course, "remuneration," and common sense dictates that employees receive the payments "for employment." Severance payments are made to employees only. It would be contrary to common usage to describe as a severance payment remuneration provided to someone who has not worked for the employer. Severance payments are made in consideration for employment—for a "service ... performed" by "an employee for the person employing him," per FICA's definition of the term "employment." *Ibid*....
>
> .... In this respect severance payments are like many other benefits employers offer to employees above and beyond salary payments. Like health and retirement benefits, stock options, or merit-based bonuses, a competitive severance payment package can help attract talented employees. Here, the terminations leading to the severance payments were triggered by the employer's involuntary bankruptcy proceeding, a prospect against which employees may wish to protect themselves in an economy that is always subject to changing conditions.
>
> Severance payments, moreover, can be desirable from the perspective of the employer as an alternative or supplemental form of remuneration. In situations in which Chapter 11 bankruptcy reorganization is necessary, an employer may seek to retain goodwill by paying its terminated employees well, thus reinforcing its reputation as a worthy employer. Employers who downsize in a period of slow business may wish to retain the ability to rehire employees who have been terminated.

*Quality Stores, Inc.*, 572 U.S. at 147,

21.     The Debtors, with the support of the secured lenders, seek to escape their

commitments to these employees but cite no controlling case that permits a different

interpretation of the statutory lien at issue. They cite inapplicable California and Washington

cases, but completely ignore the Tennessee Supreme Court's decision in *Balding* and the United

States Supreme Court's on-point discussion in *Quality Stores, Inc.*

C.  **The Tennessee Corporation Acting as Debtor in Possession Made Promises to These Employees to Cause them to Turn Down Other Offers in a Deliberate Plan to Avoid Financial Collapse and the Lenders Went Along with the Plan.**

22.      The circumstances of this case add additional weight to the fact that the Employee Objectors' income was earned. Bonuses and severance were offered to these employees during a business crisis, as part of a plan to keep them on board.

23.      The Debtors, certainly, are estopped from taking a position against its former employees inconsistent with its agreement to pay severance to keep them working for APP to avoid financial disaster. *See Aspex Eyewear v. Clariti Eyewear*, 605 F.3d 1305 (Fed. Cir. 2010) (a party who accepts a transaction and then accepts benefits under it should be estopped from later taking a position inconsistent with the prior acceptance of that same transaction).

24.      There can be no doubt, either, that the Debtors promised severance and that the Employee Objectors relied on those promises. Under Tennessee law, that is proven by the contracts themselves:

> Based on the specific language in the 1996 Severance Policy, we find that Lincoln Brass Works's employees could reasonably rely on the company's promise of severance pay… Written contracts whose terms are plain and unambiguous should be enforced according to their plain terms. *Bob Pearsall Motors, Inc. v. Regal Chrysler-Plymouth, Inc.*, 521 S.W.2d 578, 580 (Tenn.1975); *Pitt v. Tyree Org. Ltd.*, 90 S.W.3d 244, 252 (Tenn.Ct.App.2002). …. Prior to the 1998 reduction in force, Lincoln Brass Works had consistently paid severance benefits to employees who had not quit voluntarily or who had not been terminated for cause. Business employers are rarely gratuitous when it comes to their employees' salary and benefits. Accordingly, the company's practice of consistently paying eligible employees severance pay fairly reflects its understanding that it was contractually obligated to do so.

*Vargo v. Lincoln Brass Works, Inc.*, 115 S.W.3d 487, 494-95 (Tenn. App. 2003).

25.      It is believed that the creditors now objecting to these statutory liens fully endorsed sweetening the pot with bonuses and severance and are estopped from raising an objection for the first time in bankruptcy court. The plan to keep the employees on board so that

APP would survive and pay back its loans did not work, but that is not the fault of the Employee

Objectors. Under Tennessee law, they have a statutory lien on the amounts they are owed.

### D. The Statutory Lien Did Not Require a Pre-Petition State Court Filing in Tennessee.

26.     At some point, the Employee Objectors would have had to file an action in

Tennessee to vindicate their lien. In mid-September, however, while they were in negotiations to

resolve their claim, APP filed for bankruptcy. From that moment forward, the Employee

Objectors could no longer file in Tennessee:

> Upon commencement of a bankruptcy action, all non-bankruptcy proceedings against the debtor are subject to an automatic stay arising by operation of law. 11 U.S.C. § 362(a). The stay prohibits not only the commencement of new actions against the debtor but also the continuation of existing proceedings. *See McCartney v. Integra Nat'l Bank N.*, 106 F.3d 506, 509- 10 (3d Cir. 1997); *see also In re Wilkins*, 150 B.R. 127, 128-29 (Bankr. M.D. Pa. 1992). This offers the debtor a fair opportunity – a "breathing spell" in the words of the legislative commentary – to complete a repayment or reorganization plan without the pressures of extraneous litigation. S. REP. No. 95-989, at 54-55 (1978); H.R. REP. No. 95-595, at 340 (1977); *see also McCartney*, 106 F.3d at 509….
>
> …. The abrupt interruption caused by the automatic stay can produce significant hardships for parties pursuing claims subject to an advancing statute of limitations. *See In re Taylor*, 81 F.3d 20, 23 (3d Cir. 1996); *2 KING, supra*, PP 108.01-108.LH; see also H.R. REP. NO. 95-595, at 318 (1977). To remedy this situation, the Bankruptcy Code tolls the limitations periods for actions encompassed within the stay:
>
>> *If applicable non bankruptcy law … fixes a period for commencing or continuing a civil action in a court other than a bankruptcy court on a claim against the debtor … and such period has not expired before the date of the filing of the petition, then such period does not expire until the later of –*
>> *1.      the end of such period, including any suspension of such period occurring on or after the commencement of the case; or*
>> *2.      30 days after notice of the termination or expiration of the stay under section 362, 922, 1201, or 1301 of this title, as the case may be, with respect to such claim.*
>> *11 U.S.C. § 108*

Any limitations period applicable in a case subject to the automatic stay is tolled until the stay is lifted, whether by conclusion of the bankruptcy action or by relief from the stay granted by the bankruptcy court. Id.; see also H.R. REP. NO. 95-595, at 318 (1977); *2 KING, supra*, P 108.01.

*Interbusiness Bank, N.A. v. First Nat'l Bank*, 328 F. Supp. 2d 522, 525-26 (M.D. Pa. 2004).

27.    Had the Employee Objectors filed in Tennessee before the bankruptcy, it would not have advanced their cause in this Court. In fact, in *Sullivan,* the Trustee tried to <u>remove</u> the lien from the category of statutory lien by saying that it had been filed in New Jersey under a COD provision the statute authorized. The Court, though, rejected this argument: the statutory lien did not become a judicial lien governed by Section 544 just because it was filed in New Jersey. Instead, it remained a statutory lien governed exclusively by Section 545. As the Court stated:

In *Stanford*, Judge Garwood addressed the exclusivity of 11 U.S.C. § 545, stating:

Congress specifically provided the conditions under which statutory liens on a debtor's property could be avoided by the trustee in bankruptcy; Congress could have allowed a trustee to avoid all unrecorded liens or all unrecorded state tax liens, but did not do so. . . . In sum, the plain language of the Bankruptcy Code provides that statutory liens not avoidable under any condition specified in section 545 have secured status, and there is nothing in the Code that suggests state tax liens should not continue to be regarded as statutory liens if they meet the conditions of section 545.

*In re Sullivan*, 254 B.R. at 666.

28.    Here, the Debtors in Possession are attempting exactly the opposite argument, which is even less availing. They are trying to say that the failure to file an action in Tennessee removes the Employer Objector liens from the category of statutory liens. This runs headlong into the court's ruling in *Stanford*: "Congress could have allowed a trustee to avoid all unrecorded liens or all unrecorded state tax liens, but did not do so…." *Id*. Indeed, as in *Sullivan*

and *Stanford*, APP's exclusive method to avoid the statutory lien is section 545, and nothing in that provision permits avoidance.

E.  **Nothing in** Section 545 of the Bankruptcy Code Permits Avoidance of this Statutory Lien.

29.  Section 545 of the Bankruptcy Code provides that:

> The trustee may avoid the fixing of a statutory lien on property of the debtor to the extent that such lien—
>
> 1.      first becomes effective against the debtor—
>
> a.      when a case under this title concerning the debtor is commenced;
>
> b.      when an insolvency proceeding other than under this title concerning the debtor is commenced;
>
> c.      when a custodian is appointed or authorized to take or takes possession;
>
> d.      when the debtor becomes insolvent;
>
> e.      when the debtor's financial condition fails to meet a specified standard; or
>
> f.      at the time of an execution against property of the debtor levied at the instance of an entity other than the holder of such statutory lien;
>
> 2.      is not perfected or enforceable at the time of the commencement of the case against a bona fide purchaser that purchases such property at the time of the commencement of the case, whether or not such a purchaser exists, except in any case in which a purchaser is a purchaser described in section 6323 of the Internal Revenue Code of 1986, or in any other similar provision of State or local law;
>
> 3.      is for rent; or
>
> 4.      is a lien of distress for rent.

30.  None of those provisions apply here. The Debtors dedicate a large portion of their Omnibus Objection trying to cast this as a "secret lien." The suggestion is that if a *bona fide* purchaser on August 1, 2023 bought APP, it would be blindsided by the idea that certain

employees have bonus and severance agreements, because those liens were not on file at the county, like a truck lien or a mortgage.

31.     Obviously, any such purchase of APP would involve due diligence, including review of the employment agreements and obligations thereunder. Moreover, the argument is a misreading of Section 545(2), which only permits avoidance of statutory liens that are not "perfected or enforceable" against a subsequent purchaser. Here, the lien is perfected because it "arises automatically, and is not based on… judicial action." *In re Sullivan*, 254 B.R. at 664. More importantly, perhaps, if the Debtors had not thrown APP into bankruptcy, and instead terminated certain employees and sold the company, the Employee Objectors would be well on their way in Tennessee to enforcing their claim. Chapter 11 prohibits that avenue of recovery.

32.     Instead, the Employee Objectors are pursuing their claim in this Court. They have not sought relief from the automatic stay because (i) filing an action is not required to perfect their lien claims, and (ii) by Congressional design, this Court gives them their best chance to get their money before the assets are depleted. The Debtors recognize this, and there is an agreement in place in the form of a stipulated order to resolve this claim before the money is gone. *See Final Cash Collateral Order*, D.I. 435, ¶ 8.

33.     Under Chapter 11, the Employee Objectors are further on the path to recovery of their money in this Court than they would be in Tennessee. They should not be forced to spend attorneys' fees in Tennessee in a parallel proceeding to gain a judicial lien that is unnecessary given the statutory lien already available to the Court to enforce their rights.

**F.  The Three Employees Identified in the "Omnibus Objection" Who Do Not Live in Tennessee but Worked for This Company Also Have a Statutory Lien.**

34.     The Debtor attempts to escape its commitment to three of the Employee Objectors by arguing that the statutory lien at issue does not apply to non-Tennessee residents. That

position is contradicted by the words of the statute which define its scope: "All employees and laborers of any corporation, or firm…" Tenn. Code Ann. § 66-13-101. This court must assume that Tennessee legislators used the words "All" and "any" because that's what they intended.  If the Tennessee legislature wanted its benefits for "All employees" to exclude non-residents, it knows how to do that. Tennessee worker's compensation law, for instance, includes several expressed restrictions on its extraterritorial reach. Tenn. Code Ann. § 50-6-115. They are codified into the statute. *Id*. There are no such expressed restrictions in the statute at issue. It says, simply, "All employees." Had the bankruptcy not been filed, this claim would have been filed in Tennessee by all Employee Objectors, even those who live out-of-state. They would not have been barred from pursuing their claim in Tennessee because they were employees of APP, which is located in Tennessee.

### G.  Nothing About Their Ostensible Titles in the Workplace Prohibit Employee Objectors from Availing Themselves of Tennessee Lien Law

35.    As a final argument, the Debtors attempt to remove the Employee Objectors from the category of "All employees" by listing their official titles. The theory being that if you are called vice president, then you are not an employee. It cannot be disputed, though, that the Employee Objectors were not corporate officers. They were not appointed by the Board of Directors or referenced in the By-laws. Some were called Vice President or VP, and sent out to perform tasks for APP. But they had very little insight on the decisions being made by the officers or the board. None of the Employee Objectors received the benefits given to the officers. They are listed probably hundreds of times in the Debtors records as employees. *Frankenberg v. River City Resort, Inc.* involved a person who admitted to being President and Chief Operating Officer. Here, John C. DiDonato does not even bother in his declaration to try to cast the Employee Objectors as managing officers, because he cannot do so.  Having VP on a business

13

card does not mean that you have a role in the management of the company and the *Frankenberg* exclusion cannot apply to these employees.

WHEREFORE, based on the foregoing, the Employee Objectors request that the Court enforce the Employee Objectors statutory lien rights and deny the First Omnibus Objection, and grant such further relief as the Court deems proper.

Date:  December 8, 2023
       Wilmington, Delaware

SULLIVAN · HAZELTINE · ALLINSON LLC

/s/ William D. Sullivan
William D. Sullivan (No. 2820)
William A. Hazeltine (No. 3294)
919 North Market Street, Suite 420
Wilmington, DE 19801
Tel: (302) 428-8191
Email: bsullivan@sha-llc.com

David L. Fuchs, Esq.
Fuchs Law Office, LLC
554 Washington Ave., First Floor
Carnegie, PA 15106
Tel: (412) 223-5404
dfuchs@fuchslawoffice.com

Thomas J. Farnan, Esq.
Farnan Law
700 River Avenue, Suite 312
Pittsburgh, PA 15212
Tel: 412-638-3600
tfarnanlaw@gmail.com

*Attorneys for Certain Former Employees*