IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>AMERICAN PHYSICIAN PARTNERS, LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 23-11469 (BLS)<br><br>Re: D.I.  455<br><br><u>Extended Objection Deadline</u>: 12/28/23 at 4:00 p.m. (ET)<br><u>Hearing Date</u>: 1/5/24 at 10:00 a.m. (ET) |

**LIMITED OBJECTION TO CONFIRMATION OF THE AMENDED COMBINED DISCLOSURE STATEMENT AND PLAN OF LIQUIDATION OF AMERICAN PHYSICIAN PARTNERS, LLC AND ITS AFFILIATED DEBTORS UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

Sapientes Funding II, LLC and any affiliate thereof (collectively, "<u>Sapientes</u>") and Wakefield & Associates, LLC, f.k.a. Wakefield & Associates, Inc. ("<u>Wakefield</u>" and, together with Sapientes, the "<u>Objectors</u>"), by and through their undersigned counsel, hereby submit this limited objection (the "<u>Limited Objection</u>") to the *Amended Combined Disclosure Statement and Plan of Liquidation of American Physician Partners, LLC and its Affiliated Debtors Under Chapter 11 of the Bankruptcy Code* [Docket No. 455] (the "<u>Plan</u>")[2] and respectfully state as follows:

**SUMMARY OF ARGUMENT**

1.      The Objectors object to the Plan because (i) the Plan fails to provide a claw back mechanism in the event that funds are distributed to the secured lender and there are insufficient funds to pay the Objector's Allowed Administrative Claims in full; (ii) the Plan does not require

---

[1]    A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/AmericanPhysicianPartners. The location of American Physician Partners, LLC's principal place of business and the Debtors' service address in these Chapter 11 Cases is 5121 Maryland Way Suite 300 Brentwood, TN 37027.

[2]    Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Plan.

166106733v3

that the Liquidating Trustee segregate and pay to Sapientes the Sapientes Direct Payments; (iii) the Plan fails to provide the Objectors with audit rights to ensure that all amounts owed to the Objectors are accounted for and paid; (iv) the Plan fails to ensure that Sapientes Direct Payments will be collected and remitted to Sapientes by requiring the Liquidating Trustee to get Court approval prior to closing any of the Debtors' bank accounts and requiring that the Liquidating Trustee have procedures in place to ensure the collection and remittance of Sapientes Direct Payments to Sapientes in connection with the closing of any bank accounts; and (v) the Plan requires the Objectors to file Administrative Expense Claims notwithstanding that the Payment Procedures govern the reconciliation and payment of post-petition amounts between the Objectors and the Debtors.  Attached as **Exhibit A** is proposed language to resolve the Objectors' objections (the "Proposed Language").  The Objectors reserve the right to supplement, amend or modify this objection or the Proposed Language at any time prior to the confirmation hearing.

## BACKGROUND

### The Recovery Services Contract[3]

2. On April 29, 2021, debtor American Physician Holdings, LLC ("Holdings") and Wakefield entered into that certain Contract for Bad Debt Recovery Services (with any supplements or amendments thereto and including any other contracts for bad debt recovery services by and between Wakefield and the Debtor, the "Recovery Services Contract").

3. Pursuant to the Recovery Services Contract, Holdings retained Wakefield to perform certain recovery services on its behalf by collecting on certain of the Debtors' Delinquent Accounts (as defined in the Recovery Services Contract).  *See* Recovery Services Agreement, Section 4.

---

[3] The Recovery Services Contract contains confidential business terms and therefore is not attached.

2

4.  From time to time, payments on Delinquent Accounts are paid directly to the Debtors rather than being remitted to Wakefield (such payments, "Wakefield Direct Payments").

5.  Wakefield is entitled to a percentage contingency fee ("Contingency Fees") for amounts recovered on account of Delinquent Accounts (the "Collected Amounts") with the Contingency Fees being earned at the time of collection of the Collected Amounts. *See id.*, at Section. 8.1. Wakefield is entitled to the Contingency Fees regardless of whether the Collected Amounts are paid to Wakefield to be remitted to the Debtors or constitute Wakefield Direct Payments. *See id*.

### The Debt Purchase Agreement[4]

6.  Prior to the Petition Date, Sapientes and American Physician Partners, LLC ("APP") entered into: (i) that certain *Purchase Agreement*, dated February 24, 2022; (ii) that certain *Purchase Agreement*, dated March 14, 2022; (iii) that certain *Purchase Agreement*, dated July 18, 2022; (iv) that certain *Purchase Agreement*, dated April 5, 2023, and (v) that certain *Purchase Agreement*, dated June 1, 2023 (collectively, with any supplements or amendments thereto and including any other debt purchase agreements by and between Sapientes and the Debtor, the "Debt Purchase Agreements")

7.  Pursuant to the Debt Purchase Agreements, Sapientes purchased from APP certain of its Accounts (as defined in the Debt Purchase Agreement) (such accounts purchased by Sapientes, the "Purchased Accounts") on which an unpaid balance remains. *See* Debt Purchase Agreement Section 2. The unpaid amounts owed on the Purchased Accounts are not due and owing to the Debtors, but pursuant to the Debt Purchase Agreement, are due and owing to

---

[4] The Debt Purchase Agreement contains confidential business terms and therefore is not attached.

3

Sapientes.[5]  Notwithstanding this, from time to time, payments on Purchased Accounts are made to the Debtors (such payments, "Sapientes Direct Payments") rather than to Sapientes.  The Sapientes Direct Payments are not property of the Debtors' estates.

### Weekly Reconciliation

8. On an approximately weekly basis, Medical Consultants, Inc. ("MCI"), the Debtors' exclusive revenue cycle management provider, provides Wakefield and Sapientes a report (the "MCI Report"), which details, among other things, new Wakefield Direct Payments and new Sapientes Direct Payments not previously reported in prior MCI Reports.

9. The MCI Reports do not cover a specific period of time, but rather report transactions not previously reported, regardless of when such transactions occurred.  By way of illustration, an MCI Report issued in December 2023 may contain transactions that occurred in October 2023, despite multiple MCI Reports having been issued since October.  Because the October transactions appearing in the December report were previously unreported, Wakefield and/or Sapientes would have been unable to assert amounts due to them based on such October transactions until receiving the December report from MCI.

10. Additionally, each week, Wakefield takes an internal account of the Contingency Fees owed by the Debtors to Wakefield based on the Collected Amounts collected by Wakefield (the "Internal Account").

### The Chapter 11 Cases

11. On September 18, 2023 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code") with the

---

[5] The Debt Purchase Agreement defined "Purchased Accounts" by referencing specific accounts described on Exhibit A to the Debt Purchase Agreement "together with all sums due or to become due thereunder, all supporting obligations, general intangibles and other rights and interests thereunder and products and proceeds of the foregoing."  *See id.*, at Section 2(a).

Court.

12. On November 2, 2023, the Bankruptcy Court entered the *Final Order: (I) Authorizing the Use of Cash Collateral; (II) Granting Adequate Protection to Prepetition Secured Parties and (III) Granting Related Relief* [Docket No. 435] (the "Final Cash Collateral Order"). Among other things, the Final Cash Collateral Order established certain payment procedures, attached thereto as Exhibit B (the "Payment Procedures") which procedures govern the reconciliation and payment of post-petition Collected Amounts due to the Debtors and post-petition Contingency Fees and Sapientes Direct Payments due to the Objectors.

13. On October 16, 2023, the Bankruptcy Court entered the *Order: (I) Setting Bar Dates for Filing Proofs of Claim, Including Requests for Payment under Section 503(b)(9) of the Bankruptcy Code; (II) Setting a Bar Date for the Filing of Proofs of Claim by Governmental Units; (III) Setting a Bar Date for the Filing of Requests for Allowance of Administrative Expense Claims; (IV) Establishing an Amended Schedules Bar Date and a Rejection Damages Bar Date; (V) Approving the Form of and Manner for Filing Proofs of Claim; (VI) Approving a Notice of Bar Dates; and (VII) Granting Related Relief* [Docket No. 243] (the "Bar Date Order"). In compliance with the Bar Date Order, the Objectors timely filed proof of claims asserting both liquidated and unliquidated amounts.

14. On October 27, 2023, the Objectors filed the *Limited Objection to: (I) The Debtors' Cash Collateral Motion and (II) The Debtors' Combined Disclosure Statement and Plan* [Docket No. 285] (the "DS Objection").

15. On November 1, 2023, the Bankruptcy Court entered the *Order (I) Granting Conditional Approval of the Adequacy of Disclosures in the Combined Disclosure Statement and Plan; (II) Scheduling a Combined Confirmation Hearing and Setting Deadlines Related Thereto;*

166106733v3

(III) *Approving Solicitation Packages and Procedures; (IV) Approving Form of Ballots; and (V) Granting Related Relief* [Docket No. 390] (the "Disclosure Statement Order").

## LIMITED OBJECTION TO PLAN

**I.  The Plan Must Provide a Claw Back Mechanism to Ensure Payment in Full of the Objectors' Administrative Expense Claims in the Event of Insufficient Funds**

16. The Plan provides that Holders of Class 2 Claims shall be paid from the Liquidating Trust Assets, after reserving for, *inter alia*, all Allowed Administrative Expense Claims on or as soon as practicable after the Effective Date. Additionally, the Plan provides for the establishment of the Administrative / Priority / Other Distributions Reserve (the "Reserve"), which is defined as a reserve fund established by the Liquidating Trustee on or as soon as reasonably practicable after the Effective Date, in an amount determined by the Liquidating Trustee, subject in consultation with the Debtors, needed to pay in full, *inter alia*, all Allowed Administrative Expense Claims.

17. By the DS Objection, the Objectors sought confirmation that if the funds in the Reserve are insufficient to pay Allowed Administrative Expense Claims in full, such Allowed Administrative Expense Claims will be paid from other estate assets. In other words, Allowed Administrative Expense Claims are not capped at the amount funded into Reserve.

18. In response to this issue, at the hearing to approve the Disclosure Statement, counsel for the Debtors confirmed that the reserve was not intended to be a cap stating "our reserve is truly not intended to be a cap. We are aware of our responsibilities as the Chapter 11 debtor that if we want a case and a plan that goes effective then we have to pay our administrative claims in full unless otherwise agreed." *See Transcript Excerpt,* **Exhibit B**. In response, the Court noted that the amount in the Reserve "may be an open issue….. for purposes of confirmation." *Id.*

19. There is a real possibility that the Liquidating Trust Assets could be paid out to the Holders of Class 2 Prepetition Lenders Secured Claims and the funds in the Reserve could

ultimately be less than needed to pay the Objectors' Allowed Administrate Expense Claims in full. There are several reasons for this risk. First, unlike other creditors, the Objectors rely on a third party, MCI, to assist the Objectors in determining amounts due and owing by the Debtors. Until MCI reports to Wakefield the Wakefield Direct Payments, Wakefield has no way to determine the Contingency Fees owed to Wakefield on account of such Wakefield Direct Payments, which Contingency Fees constitute an Administrative Expense Claim, and Sapientes has no way to determine the Sapientes Direct Payments that have been received by the Debtors. As discussed below, the Sapientes Direct Payments are not property of the Debtors' estates and are to be remitted to Sapientes pursuant to the Payment Procedures. Under the Payment Procedures, Sapientes holds an Administrative Expense Claim for amounts owed to it setoff of the Collected Amounts. Moreover, because the MCI Reports do not cover a specific period of time, but rather report transactions not previously reported, regardless of when such transactions occurred, the Objectors anticipate that it will be many months after the Effective Date of the Plan (if not longer) before the Objectors are able to determine the precise amount of their claims. As such, the Objectors cannot independently determine if the amount funded into the Reserve will be sufficient to cover their Allowed Administrative Expense Claims.

20. In order to ensure that all Allowed Administrative Expense Claims are paid in full, language must be added to the order approving the plan (the "Confirmation Order") that in the event that distributions are made to the Holders of Allowed Class 2 Claims and there are insufficient funds to pay the Objector's Allowed Administrative Claims in full (a "Repayment Event"), upon notice that a Repayment Event has occurred, the Holders of Allowed Class 2 Claims shall promptly remit to the Liquidating Trustee Cash in an amount necessary to satisfy in full the Objector's Allowed Administrative Expense Claims.

166106733v3

II. **The Plan Must Provide that the Sapientes Direct Payments, Which Are Not Property of the Debtors' Estates, Will be Segregated and Paid by the Liquidating Trustee to Sapientes and Provide Sapientes with Audit Rights to Ensure Proper Payment**

21. Both the Final Cash Collateral Order and the Plan are clear that the Sapientes Direct Payments, which are patient receivables purchased by Sapientes from the Debtors and paid to the Debtors rather than being remitted to Sapientes, do not constitute property of the Debtors' estates. The Sapientes Direct Payments can be grouped into two buckets (i) prepetition direct payments which the Final Cash Collateral Order required the Debtors to segregate or reserve an amount equal to $1,836,528.46 for Sapientes and (ii) direct payments which occur during the chapter 11 cases and after the Effective Date of the Plan, which are governed by the Payment Procedures.

22. The Payment Procedures provide a mechanism by which the Objectors offset the post-petition funds they are owed (*i.e.* Sapientes Direct Payments and Contingency Fees on Wakefield Direct Payments) against the post-petition amount owed to the Debtors (*i.e.* Collected Amounts) and then remit the difference to the Debtors. If, however, the post-petition funds held by the Objectors is less than they are owed, the Objectors are entitled to retain the post-petition funds and the Debtors are required to remit the difference to the Objectors. As of now, Wakefield is continuing to collect the Collected Amounts and as such has been offsetting post-petition amounts owed to the Objectors before remitting the difference to the Debtors.

23. Wakefield anticipates in the near future that it will no longer have the Collected Amounts to offset against post-petition amounts owed to it by the Debtors. The Debtors have filed a motion [Docket No. 677] to sell their remaining account receivable to Cascade Capital Funding, LLC ("Cascade"), which includes approximately $242 million gross face balance of aged patient services receivables that Wakefield has currently been collecting. Once the accounts receivable are sold, Wakefield will no longer be collecting the Collected Amounts for the benefit of the Debtors. Additionally, the Plan provides, with limited exception, that all executory contracts will

be rejected on the Effective Date of the Plan. As such, Wakefield anticipates that the Recovery Services Contract will be rejected as of the Effective Date of the Plan. Upon rejection, Wakefield will cease collecting the Collected Amounts and there will be nothing against which the Objectors can offset post-petition amounts owed to them.

24. Notwithstanding the sale of the patient account receivables or the rejection of the Wakefield Recovery Services Contract, the MCI Reports will continue to reflect Wakefield Direct Payments (for which Wakefield is entitled to the Contingency Fees) and the Sapientes Direct Payment that occurred between the Petition Date and the Effective Date of the Plan. Additionally, after the Effective Date of the Plan, the MCI Reports will continue to reflect Sapientes Direct Payments. As noted above, the MCI Reports do not cover a specific period of time, but rather report transactions not previously reported, and as such it could be months (if not years) after the Effective Date of the Plan before the dust fully settles with respect to Wakefield Contingency Fees and Sapientes Direct Payments.

25. The Contingency Fees on Wakefield Direct Payments that occurred between the Petition Date and the Effective Date of the Plan constitute an Administrative Expense Claim to be paid from the Reserve or addressed in connection with a Repayment Event as discussed above. However, the Sapientes Direct Payments are not property of the Estate and yet there is nothing in the Plan requiring that the Direct Payments be segregated and paid to the Sapientes. The Objectors submit that the Plan must be revised to include language requiring the Liquidating Trustee to segregate the Sapientes Direct Payments and pay the Sapientes Direct Payments to Sapientes.

### III. The Plan Must Provide the Objectors with Audit Rights to Ensure Proper Payment to the Objectors

26. Upon information and belief, MCI's service agreement with the Debtors ends on December 31, 2023 (the "Service End Date"). The Objectors are in discussions with MCI in order

to continue to receive the MCI Reports, which will allow them to reconcile and confirm the amount owed to them.  However, unless and until the Objectors and MCI reach an arrangement, the Objectors need an independent way to confirm the Wakefield Direct Payments (for which Wakefield is entitled to a Contingency Fees) and the Sapientes Direct Payments.  The Objectors submit that the Plan must be revised to include language granting the Objectors audit rights.

**IV.    The Plan Should Require the Liquidating Trustee to Obtain a Bankruptcy Court Order Prior to Closing Any of the Debtors' Bank Accounts**

27.    As set forth in the Debtors' cash management motion [D.I. 6], as of the Petition Date, the Debtors maintain 65 bank accounts (the "Bank Accounts") at Cadence Bank, Legends Bank, Fifth Third Bank, Bank of America, Frost Bank, Texas Bank and Trust, U.S. Bank, Flagstar Bank, and Wells Fargo.  The Sapientes Direct Payments are paid into one or more of the Bank Accounts.  To the extent that the Liquidating Trustee were to close any of the Bank Accounts, this could have a material negative affect on the ability of Sapientes to receive the Sapientes Direct Payments.

28.    This issue, however, is greater than just Sapientes.  Two other purchasers of the Debtors' accounts receivable, Pendrick Capital Partners, LLC ("Pendrick") and Cascade have also filed objections in these chapter 11 case asserting that the accounts receivable sold by the Debtors to such parties are not property of the Debtors' estates.  Moreover, as noted above, the Debtors are selling their remaining accounts receivable to Cascade and Sapientes assumes that these parties will want to know that the Bank Accounts will remain open so that they can get the benefit of their bargain (*i.e.* receive the direct payments paid into the Bank Accounts that belong to such buyer(s)).  Simply put, all account receivables purchasers have a vested interest in ensuring that the Bank Accounts remain open so that direct payments on account of accounts receivable sold by the Debtors can be collected by these purchasers.

166106733v3

29. The Objectors request that language be added to the Plan which requires the Liquidating Trustee to file a motion with the Bankruptcy Court on notice to the Objectors and any other purchaser of the Debtors' accounts receivable (the "Other Purchasers") prior to closing any Bank Accounts and that the Liquidating Trustee shall only be permitted to close any of the Bank Accounts provided that procedures have been put into place, satisfactory to the Objectors and the Other Purchasers, that ensure the collection and remittance of Sapientes Direct Payments and Other Purchaser direct payments to Sapientes and the Other Purchasers, as applicable.

### V. The Payment Procedures Should Govern the Objectors' Administrative Expense Claims

30. The Plan provides that Administrative Expense Claims arising after November 1, 2023 are required to be filed no later than thirty (30) days after the Effective Date. The Objectors submit that they should be carved out of the Plan requirement to file any Administrative Expense Claims in these cases and that the reconciliation and payment of post-petition amounts owed to the Objectors are governed by the Payment Procedures. Language should be added to the Confirmation Order to make this clear.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

## **CONCLUSION**

WHEREFORE, the Objectors respectfully request entry of a Confirmation Order consistent with this Objection and that this Court grant such other and further relief as is just and proper.

Dated: December 20, 2023

Respectfully submitted,

*/s/ Kenneth A. Listwak*
**TROUTMAN PEPPER HAMILTON SANDERS LLP**
Evelyn J. Meltzer (DE No. 4581)
Kenneth A. Listwak (DE No. 6300)
1313 N. Market Street, Suite 5100
Wilmington, DE 19801
Telephone: (302) 777-6500
Email: evelyn.meltzer@troutman.com
kenneth.listwak@troutman.com

*Counsel for Sapientes Funding II, LLC*
*Wakefield & Associates, LLC and affiliates*

166106733v3