**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| AMERICAN PHYSICIAN PARTNERS, LLC, et al.,[1] | Case No. 23-11469 (BLS) |
| Debtor. | (Jointly Administered) |

**MEMORANDUM OF LAW IN SUPPORT OF FINAL APPROVAL OF
DISCLOSURE STATEMENT AND CONFIRMATION OF PLAN OF LIQUIDATION
OF AMERICAN PHYSICIAN PARTNERS AND ITS AFFILIATED DEBTORS
UNDER CHAPTER 11 OF THE BANKRUPTCY CODE, AND
<u>OMNIBUS REPLY TO OBJECTIONS</u>**

---

[1]    A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/AmericanPhysicianPartners.  The location of American Physician Partners, LLC's principal place of business and the Debtors' service address in these Chapter 11 Cases is 5121 Maryland Way Suite 300 Brentwood, TN 37027.

## TABLE OF CONTENTS

**Page**

**I. PRELIMINARY STATEMENT** ...........................................................................2

**II. BACKGROUND** ...........................................................................................5

**III. SUMMARY OF THE PLAN** ........................................................................6

**IV. THE PLAN SATISFIES EACH OF THE REQUIREMENTS FOR CONFIRMATION UNDER THE BANKRUPTCY CODE** ...........................................................10

    A. The Plan Satisfies Section 1129(a)(1) of the Bankruptcy Code .....................................11

        i.   The Plan Meets the Requirements of Section 1122 of the Bankruptcy Code .............11

        ii.  The Plan Meets the Requirements of Section 1123(a) of the Bankruptcy Code.........13

    B. The Plan Complies With the Discretionary Provisions of Section 1123(b) of the Bankruptcy Code ...........................................................................15

        i.   The Exculpation Provision Is Appropriate..............................................16

        ii.  The Debtors' Releases of Claims Are Appropriate ...................................17

        iii. The Consensual Third-Party Releases Are Appropriate ............................19

        iv. The Injunction Provision Is Appropriate and Complies With the Bankruptcy Code. .24

    C. The Debtors Have Satisfied Section 1129(a)(2) of the Bankruptcy Code........................24

        i.   The Debtors Have Complied With the Requirements of Section 1125 of the Bankruptcy Code ...........................................................................25

        ii.  The Debtors Have Complied With the Requirements of Bankruptcy Rules 3017(d) and 3018(c)..................................................................................26

        iii. The Vote Tabulation Satisfied Section 1126(c) and Bankruptcy Rule 3018(a)..........28

    D. The Plan Has Been Proposed in Good Faith (Section 1129(a)(3)) .................................30

    E. Payments for Services and Expenses (Section 1129(a)(4)) ............................................31

    F. Directors and Officers (Section 1129(a)(5)) ....................................................................32

    G. Rate Changes (Section 1129(a)(6)) .................................................................................32

    H. The Plan Satisfies the "Best Interests" Test (Section 1129(a)(7)) ..................................33

I.   Acceptance by Impaired Classes (Section 1129(a)(8)) .....................................................34

J.   Treatment of Priority Claims (Section 1129(a)(9)).........................................................35

K.   Acceptance by at Least One Impaired Class (Section 1129(a)(10)) ...............................36

L.   The Plan Is Feasible (Section 1129(a)(11)) ...................................................................37

M. Payment of Certain Fees (Section 1129(a)(12)).............................................................38

N.  Continuation of the Debtors' Obligations to Pay Retiree Benefits (Section 1129(a)(13)) ....................................................................................................................38

O.  The Plan Satisfies the "Cramdown" Requirements of Section 1129(b)(1) .....................38

     i.   The Plan Does Not Unfairly Discriminate Against the Deemed Rejecting Classes ...39

     ii.  The Plan Is Fair and Equitable as to the Deemed Rejecting Classes.........................41

P.   The Plan's Purpose is Consistent with  the Bankruptcy Code (Section 1129(d)).............41

**V. REPLY TO INFORMAL OBJECTIONS AND RESPONSES .........................................42**

**VI. WAIVER OF THE STAY OF THE CONFIRMATION ORDER ..................................50**

**VII. CONCLUSION..............................................................................................................51**

# TABLE OF AUTHORITIES

**Pages**

**Cases**

*Applewood Chair Co. v. Three Rivers Planning & Dev. Dist. (In re Applewood Chair Co.)*
203 F.3d 914 (5th Cir. 2000) ...................................................................................18

*B.D. Int'l Disc. Corp. v. Chase Manhattan Bank (In re B.D. Int'l Disc. Corp.)*
701 F.2d 1071 (2d Cir. 1983) ..................................................................................27

*Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship*
526 U.S. 434 (1999) ........................................................................................30, 37

*Clarkson v. Cooke Sale & Serv. Co. (In re Clarkson)*
767 F.2d 417 (8th Cir. 1985) ..................................................................................34

*Commodity Futures Trading Comm'n v. Weintraub*
471 U.S. 343 (1985) ................................................................................................15

*FOM Puerto Rico, S.E. v. Dr. Barnes Eyecenter, Inc.*
255 Fed. App'x 909 (5th Cir. 2007)........................................................................18

*Hernandez v. Larry Miller Roofing, Inc.*
628 Fed. App'x 281 (5th Cir. 2016).........................................................................18

*In re 203 N. LaSalle St. P'ship*
190 B.R. 567 (Bankr. N.D. Ill. 1995).......................................................................36

*In re 222 Liberty Assoc.*
108 B.R. 971 (Bankr. E.D. Pa. 1990).......................................................................36

*In re Adelphia Commc'ns Corp.*
368 B.R. 140 (Bankr. S.D.N.Y. 2007) .....................................................................30

*In re Ameriforge Group, Inc.*
No. 17-32660 (Bankr. S.D. Tex. May 24, 2017) .....................................................18

*In re Aztec Co.*
107 B.R. 585 (Bankr. M.D. Tenn. 1989)..................................................................36

*In re Block Shim Dev. Company-Irving*
939 F.2d 289 (5th Cir. 1991)...................................................................................26

*In re Camp Arrowhead, Ltd.*
451 B.R. 678 (Bankr. W.D. Tex. 2011) ...................................................................21

*In re Cypresswood Land Partners, I*
409 B.R. 396 (Bankr. S.D. Tex. 2009).......................................................................8

*In re Energy & Exploration Partners, Inc.*
No. 15-44931 (Bankr. N.D. Tex. April 21, 2016) ...................................................18

*In re Freymiller Trucking, Inc.*
190 B.R. 913 (Bankr. W.D. Okla. 1996)..................................................................36

*In re Heritage Org., L.L.C.*
375 B.R. 230 (Bankr. N.D. Tex. 2007) ...................................................................10

*In re Hornbeck Offshore Servs., Inc.*
No. 20-32679 (Bankr. S.D. Tex. June 19, 2020) ......................................................18

*In re Hous. Reg'l Sports Network, L.P.*
505 B.R. 468 (Bankr. S.D. Tex. 2014)......................................................................15

*In re Idearc Inc.*
423 B.R. 138 (Bankr. N.D. Tex. 2009) .....................................................................37

*In re J T Thorpe Co.*
308 B.R. 782 (Bankr. S.D. Tex. 2003).........................................................................8

*In re Lakeside Glob. II, Ltd.*
116 B.R. 499 (Bankr. S.D. Tex. 1989).......................................................................34

*In re Lapworth*
No. 97-34529, 1998 Bankr. LEXIS 1383 (Bankr. E.D. Pa. Nov. 2, 1998) ...............21

*In re Lason, Inc.*
300 B.R. 227 (Bankr. D. Del. 2003) ..........................................................................30

*In re Lernout & Hauspie Speech Prods.*,
301 B.R. 651 (Bankr. D. Del. 2003) ..........................................................................37

*In re Neff*
60 B.R. 448 (Bankr. N.D. Tex. 1985), *aff'd,* 785 F.2d 1033 (5th Cir. 1986)............30

*In re Orlando Investors, L.P.*
103 B.R. 593 (Bankr. E.D. Pa. 1989).........................................................................34

*In re Performance Nutrition, Inc.*
289 B.R. 93 (Bankr. N.D. Tex. 1999) ........................................................................15

*In re Pisces Energy, LLC*
No. 09-36591-H5-11, 2009 WL 7227880 (Bankr. S.D. Tex. Dec. 21, 2009 ............10

*In re Prussia Assocs.*
322 B.R. 572, 584 (Bankr. E.D. Pa. 2005) ................................................................34

*In re PWS Holdings Corp.*, 228 F.3d 224, 248 (3d Cir. 2000)....................................21

*In re Schepps Food Stores, Inc.*
160 B.R. 792 (Bankr. S.D. Tex. 1993)......................................................................15

*In re Sea Garden Motel & Apartments*,
195 B.R. 294 (D.N.J. 1996)........................................................................................34

*In re Sentry Operating Co. of Tex., Inc.*
264 B.R. 850 (Bankr. S.D. Tex. 2001).........................................................................9

*In re Sound Radio, Inc.*
93 B.R. 849 (Bankr. D.N.J. 1988)..............................................................................27

*In re Sun Country Dev., Inc.*
  764 F.2d 406 (5th Cir. 1985) ...................................................................26, 27

*In re Texaco Inc.*
  84 B.R. 893 (Bankr. S.D.N.Y. 1988) ..................................................21

*In re T-H New Orleans Ltd. P'ships*
  116 F.3d 790 (5th Cir. 1997) .............................................................27, 34

*In re Tribune Co.*,
  464 B.R. 126 (Bankr. D. Del.), *modified*, 464 B.R. 208 (Bankr. D. Del. 2011) ...............17, 34

*In re Vitro Asset Corp.*
  No. 11-32600-HDH, 2013 WL 6044453, at *5 (Bankr. N.D. Tex.
  Nov. 14, 2013) ...............................................................................9

*In re Wool Growers*
  371 B.R. 768 (N.D. Tex. 2007) .............................................................18

*Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.)*
  843 F.2d 636 (2d Cir. 1988) ..............................................................9, 34

*Nexpoint Advisors, L.P v. Highland Capital Mgmt., L.P. (In re Highland Capital Mgmt., L.P.)*
  48 F.4th 419 (5th Cir. 2022) ..............................................................15

*NLRB v. Bildisco & Bildisco*
  465 U.S. 513 (1984) .........................................................................27

*Official Comm. of Unsecured Creditors v. Cajun Elec. Power Coop., Inc. (In re Cajun Elec. Power Coop., Inc.)*
  119 F.3d 349 (5th Cir. 1997) .............................................................16

*Official Comm. v. Michelson (In re Michelson)*
  141 B.R. 715 (Bankr. E.D. Cal. 1992) ..................................................21

*Republic Supply Co. v. Shoaf*
  815 F.2d 1046 (5th Cir. 1987) ............................................................18

## **Statutes**

11 U.S.C. § 1114 ...........................................................................35

11 U.S.C. § 1122 .........................................................................3, 8, 9

11 U.S.C. § 1123(a) .....................................................................10, 11, 12

11 U.S.C. § 1123(a)(1) .....................................................................11

11 U.S.C. § 1123(b)(3)(A) ..................................................................15

11 U.S.C. § 1125 .........................................................................21, 26

11 U.S.C. § 1125(b) .........................................................................21

11 U.S.C. § 1125(e) .........................................................................26

11 U.S.C. § 1126(d) .........................................................................31

11 U.S.C. § 1126(g) .........................................................................25

11 U.S.C. § 1129 (a)(1) ...........................................................................................8

11 U.S.C. § 1129 (a)(9) .........................................................................................11

11 U.S.C. § 1129(a) ...............................................................................................35

11 U.S.C. § 1129(a)(1) ............................................................................................8

11 U.S.C. § 1129(a)(10) ........................................................................................34

11 U.S.C. § 1129(a)(12) ........................................................................................35

11 U.S.C. § 1129(a)(13) ........................................................................................35

11 U.S.C. § 1129(a)(9)(A) .....................................................................................32

11 U.S.C. § 1129(a)(9)(B) .....................................................................................32

11 U.S.C. § 1129(a)(9)(C) .....................................................................................32

11 U.S.C. § 1129(a)(B) ..........................................................................................35

11 U.S.C. § 1129(b)(1) ..........................................................................................35

11 U.S.C. § 3018(a) ...............................................................................................23

11 U.S.C. § 507(a) ...........................................................................................11, 32

11 U.S.C. § 507(a)(3) .............................................................................................32

11 U.S.C. § 507(a)(7) .............................................................................................32

11 U.S.C. § 507(a)(8) .............................................................................................32

28 U.S.C. 1334 .........................................................................................................8

28 U.S.C. 1408 .........................................................................................................8

28 U.S.C. § 1409 ......................................................................................................8

28 U.S.C. § 157 ........................................................................................................8

**Other Authorities**

H.R. Rep. No. 595, 95th Cong. 1st Sess. 412 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5962, 6368 (1977) ..................................................................................................................9

S. Rep. No. 989, 95th Cong. 2d Sess. 126 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5913 (1978) ........................................................9, 21

**Rules**

Fed. R. Bankr. P. 105(d)(2)(B)(vi) ........................................................................22

Fed. R. Bankr. P. 2002(b) ......................................................................................22

Fed. R. Bankr. P. 3002(c) ......................................................................................31

Fed. R. Bankr. P. 3017 ...................................................................................passim

Fed. R. Bankr. P. 3018 ...................................................................................passim

Fed. R. Bankr. P. 3020 .....................................................................................39, 40

Fed. R. Bankr. P. 3020(e) ........................................................................................39

Fed. R. Bankr. P. 6004 ......................................................................................39, 40

Fed. R. Bankr. P. 6004(h) .....................................................................................39

Fed. R. Bankr. P. 6006 ......................................................................................39, 40

Fed. R. Bankr. P. 6006(d) .......................................................................................39

American Physician Partners, LLC and its affiliated debtors (the "Debtors") submit this memorandum of law (the "Memorandum") in support of final approval of the Disclosure Statement and confirmation of the Plan.[2]  Attached hereto is the Debtors' proposed order confirming the Plan (the "Proposed Confirmation Order").

This Memorandum, confirmation of the Plan, and entry of the Proposed Confirmation Order are supported by, *inter alia*, the following documents:

1)  *Second Amended Combined Disclosure Statement and Plan of Liquidation of American Physician Partners, LLC and Its Affiliated Debtors Under Chapter 11 of the Bankruptcy Code* [D.I. 805] (including all exhibits thereto and as amended, supplemented, or otherwise modified from time to time, the "Combined Disclosure Statement and Plan" or, separately in relevant part, the "Disclosure Statement" or the "Plan"), filed on January 2, 2024;

2)  *Order (I) Granting Conditional Approval of the Disclosures; (II) Scheduling a Combined Hearing to Consider Final Approval of the Disclosures and Confirmation of the Combined Plan, and Setting Deadlines Related Thereto; (III) Approving Solicitation Packages and Procedures; (IV) Approving the Forms of Ballots; and (V) Granting Related Relief* [D.I. 390] (the "Solicitation Procedures Order"), entered on November 1, 2023; and

3)  The following documents were filed or are being filed substantially contemporaneously herewith:

a.  *Declaration of John DiDonato in Support of Confirmation of the Combined Disclosure Statement and Plan of Liquidation of American Physician Partners, LLC and Its Affiliated Debtors under Chapter 11 of the Bankruptcy Code* (the "DiDonato Declaration") filed on January 4, 2024;

b.  *Declaration and Certification of Stephenie Kjontvedt of Epiq Corporate Restructuring, LLC Regarding the Solicitation and Tabulation of Ballots Cast on Combined Disclosure Statement and Plan of Liquidation of American Physician Partners, LLC and Its Affiliated Debtors under Chapter 11 of the Bankruptcy Code* (the "Voting Declaration") filed on January 4, 2024;

c.  *Notice of Filing of Plan Supplement for the Combined Disclosure Statement and Plan of Liquidation of American Physician Partners, LLC and Its Affiliated Debtors Under Chapter 11 of the Bankruptcy Code* and the *Notice of Filing of Modified Plan Supplement for the Combined Disclosure*

---

[2]  Capitalized terms not defined herein shall have the meanings ascribed in the Combined Disclosure Statement and Plan.

*Statement and Plan of Liquidation of American Physician Partners, LLC and Its Affiliated Debtors Under Chapter 11 of the Bankruptcy Code* [D.I. 521 and 807] (collectively, the "Plan Supplement"); and

d.      The affidavits or other proofs of service of notices with respect to the Plan, Confirmation Hearing and solicitation of voting on the Plan (including, without limitation, D.I. 497) (the "Solicitation Service Filings").

# I.

## PRELIMINARY STATEMENT

1.      Prepetition, prior to the Transition Related Activities primarily starting in July 2023, the Debtors were one of the fastest growing, scaled emergency department (ED) and hospitalist management platforms in the United States.  Headquartered in Brentwood, Tennessee, prepetition, the Company had management and related contracts with more than 100 hospitals (including freestanding emergency departments) and other sites in fifteen states primarily in the southeastern, midwestern and southwestern United States, utilizing over 2,500 physicians who served over 4 million patients each year.  Prepetition, the Debtors were unable to come to agreement with their secured lenders or locate buyers or other financing transaction partners, despite extensive negotiations.  Thus, starting in in mid-July 2023, the Company successfully transitioned its entire portfolio of certain management of contracts and/or other services for their client hospitals and other healthcare provider customers, in order to avoid any interruptions in service, ultimately to the patients, to alternative service providers (competitors) and healthcare systems (customers).  The Debtors commenced these bankruptcy cases on September 18, 2023, to liquidate their remaining assets and wind-down their businesses, in an orderly manner to preserve and maximize the value of the estates' assets for the benefit of all of their stakeholders.

2.      After extensive negotiations undertaken in good faith by the parties, the Debtors, the Prepetition Agent, the Prepetition Lenders, and the Committee appointed in the Chapter 11 Cases have reached a global settlement and resolution of the various Plan-related disputes among

the parties.  The Debtors are pleased to be able to present the proposed amended Plan pursuant to which, on and after the Effective Date, the Liquidating Trustee will complete the wind-down of the Debtors' affairs, sell, liquidate or otherwise dispose of the Debtors' and Estates' remaining assets, address pending claims, including litigation claims, and make distributions to creditors as efficiently as possible.  The Plan, as amended with the agreement of the Committee, the Prepetition Agent, and the Prepetition Lenders, has been revised to substantially increase the distributions to unsecured creditors.

3.      The Plan should be confirmed for the following reasons:

4.      ***First***, the Plan provides creditors with the best return that can be achieved under the circumstances of these Chapter 11 Cases.  Under the Plan, Administrative Claims, Priority Tax Claims, Priority Non-Tax Claims, and Other Secured Claims will be paid in full.  The Holders of Unsecured Claims and Class 2 Claims (Prepetition Lenders Secured Claims) will receive a Pro Rata share of the Liquidating Trust Interests, which entitle the Beneficiaries thereof to the net proceeds of the Liquidating Trust Assets subject to certain terms and conditions under the Plan, which likely far exceeds any distribution that general unsecured creditors would otherwise receive under a chapter 7 liquidation, given that the Prepetition Lenders are substantially undersecured.  In particular, general unsecured creditors will receive pro rata shares of at least $1.75 million of the $2 million GUC Cash Settlement (with the other $250,000 reserved for potential additional funding of the Liquidating Trust) under the Plan, among other potential recoveries as set forth in and subject to the Plan.

5.      ***Second***, the Plan implements the global settlement by and among the Debtors, the Committee, the Prepetition Agent, and the Prepetition Lenders.  The significant stakeholders in

the Debtors' Chapter 11 Cases reached a global resolution of the disputes between the parties as reflected in the Plan, which will pave the way to a prompt resolution of these Chapter 11 Cases.

6.    ***Finally***, the Plan complies with all applicable provisions of title 11 of the United States Code (as amended, the "Bankruptcy Code") and the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").  As demonstrated in Section IV herein, the Plan satisfies all of the requirements of sections 1122, 1123, and 1129 of the Bankruptcy Code and Bankruptcy Rules 3017 and 3018.

7.    The following objections, statements or reservation of rights were filed with respect to the Combined Disclosure Statement and Plan (collectively, the "Objections/Statements"): (i) the Objection filed by the Committee [D.I. 269]; (ii) the Limited Objection and Reservation of Rights filed by certain former employees (Penn Krause, Mary Ann Smokler, Ben Youree, Daniel Crane, Aaron Kidd, Isaac Palmer, Jr., Tressa Gardner, Benjamin Ross, Tracy Young, Joe White, Wendi Keeton and Liz Harris) (the "Former Employee Objectors") [D.I. 639]; (iii) the Limited Objection filed by Cascade Capital Funding, LLC ("Cascade") [D.I. 641]; (iv) the Statement and Reservation of Rights of the Ad Hoc Committee of Healthcare Providers (comprised of approximately 165 of Debtors' former physicians and midlevels) (the "Ad Hoc Providers Committee") [D.I. 310]; (v) the Preliminary Response and Reservation of Rights of Elaine Montoya and Ariana Quinones (the "New Mexico Plaintiffs") [D.I. 642];[3] (vi) the Limited Objection of Sapientes Funding II, LLC and any affiliate thereof and Wakefield & Associates, LLC, f.k.a. Wakefield & Associates, Inc. ("Sapientes/Wakefield") [D.I. 687]; and (vii) the Objection of the United States (the "United States"), on behalf of the Internal Revenue Service

---

[3]    With regard to the New Mexico Plaintiffs, the Debtors acknowledge and accept that they opt-out of the Third Party Release (through its Preliminary Response and Reservation of Rights) and will not be Releasing Parties.

("IRS") and the Department of Health and Human Services ("HHS") [D.I. 690]. The Debtors also received additional informal comments to the Plan including from the U.S. Trustee, which have been addressed to the best of the Debtors' knowledge in the amended Plan.

8.      Together, this Memorandum, the Combined Disclosure Statement and Plan, the DiDonato Declaration, the Voting Declaration, the Plan Supplement, and the Solicitation Service Filings, along with the files and records in these Chapter 11 Cases, reflect that the Plan complies with the applicable provisions of the Bankruptcy Code and the Bankruptcy Rules, and provide the legal and evidentiary bases necessary for this Court to confirm the Plan.

## II.

## BACKGROUND

9.      On September 18, 2023 (the "Petition Date"), the Debtors filed with this Court voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors are managing their properties as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these Chapter 11 Cases.

10.      On or about October 2, 2023, the Office of the United States Trustee (the "UST") formed the Committee [D.I. 79, 82].

11.      The factual background regarding the Debtors is set forth in detail in the *Declaration of John C. DiDonato in Support of Debtors' Chapter 11 Petitions and First Day Relief* [D.I. 18] and is fully incorporated herein by reference.

12.      On October 30, 2023, the Debtors filed the Amended Combined Disclosure Statement and Plan of Liquidation of American Physician Partners, LLC and Its Affiliated Debtors Under Chapter 11 of the Bankruptcy Code [D.I. 303]. On November 1, 2023, the Court entered the Solicitation Procedures Order [D.I. 390]. The Debtors solicited the solicitation version of the

Combined Disclosure Statement and Plan [D.I. 455] in accordance with the Solicitation Procedures Order.  See Voting Decl.

## III.

## SUMMARY OF THE PLAN[4]

13.     The Plan is a plan of liquidation that, among other things, provides for a Liquidating Trust to liquidate, collect, sell, or otherwise dispose of the Debtors' and Estates' remaining assets (including, without limitation, certain causes of action), and to distribute all net proceeds to creditors generally in accordance with the priority scheme under the Bankruptcy Code, subject to the terms of the Plan.  In particular, under the Plan, there will be a $2,000,000 GUC Cash Settlement to be used to fund Distributions to general unsecured creditors (excluding the Prepetition Lenders in relation to the Prepetition Lenders Deficiency Claim) (which may be reduced by up to $250,000 for the GUC Funding Reserve).  In addition, general unsecured creditors as Beneficiaries of the Liquidating Trust will receive their Pro Rata Share of any net proceeds of the Shared Assets and Causes of Action[5] subject to a 60% / 40% division.  The Prepetition Lenders will receive 60% of the net proceeds from any and all Shared Assets and Causes of Action, with the remaining 40% to be distributed to the Holders of Allowed Unsecured Claims (excluding Holders of the Prepetition Lenders Deficiency Claim).

---

[4]    To the extent that there is any inconsistency between this Summary and the Plan itself, the Plan controls.

[5]    The Shared Assets and Causes of Action include, without limitation, (i) all claims and Causes of Action of the Debtors and Estates against non-released directors, officers, managers, members and shareholders of any of the Debtors; (ii) all claims and causes of action of the Prepetition Agent and the Prepetition Lenders against non-released directors, officers and managers of any of the Debtors; (iii) all claims and causes of action commenced by Debtors prepetition; (iv) all Avoidance Actions other than Non-Insider Preference Actions; (v) all refunds and other recoveries owing to the Debtors or Estates from any insurance companies, including in connection with the MagMutual Policies, and all claims and causes of action related thereto; (vi) tax attributes relating to net operating losses; and (vii) all claims for tax refunds and employee retention credits payable to the Debtors or the Estates.

14.     Further, the Liquidating Trust will also have the $750,000 Liquidating Trust Funding, a potential $250,000 GUC Funding Reserve, and an available $250,000 Liquidating Trust Funding Contribution by the Prepetition Lenders under the Plan to fund the administration and costs and expenses of the Liquidating Trust.[6]

15.     Under the Plan, certain Claims are not classified and are entitled under the Bankruptcy Code (and the Plan) to a full recovery (*i.e.*, Administrative Claims and Priority Tax Claims).  *See* Plan Section 8.  As discussed further below, the Plan designates six classes of Claims and two classes of equity interests (Intercompany Interests and Interests):

| Class | Designation | Treatment | Entitled to Vote |
|---|---|---|---|
| 1 | Priority Non-Tax Claims | Unimpaired | No (presumed to accept) |
| 2 | Prepetition Lenders Secured Claims | Impaired | Yes |
| 3 | Prepetition Other Secured Claims | Unimpaired | No (presumed to accept) |
| 4 | Unsecured Claims | Impaired | Yes |
| 5 | Intercompany Claims | Impaired | No (presumed to reject) |
| 6 | Intercompany Interests | Impaired | No (presumed to reject) |
| 7 | Interests | Impaired | No (presumed to reject) |

16.     Under the Plan, a Holder of a Class 1 Priority Non-Tax Claim will receive a full recovery as soon as practicable following the later of:  (a) the Effective Date, and (b) the date such Priority Non-Tax Claim becomes an Allowed Claim (or as otherwise permitted by law).  Class 1 Priority Non-Tax Claims (to the extent any such claims exist) are unimpaired under the Plan.

---

[6] Pursuant to Section 14.2 of the Plan, the Liquidating Trust Asset Proceeds derived from Shared Assets and Causes of Action (subject to approval by the Liquidating Trust Oversight Committee) may also be used to fund the administration of the Liquidating Trust and pay Liquidating Trust Expenses.

17.     Class 2 Prepetition Lenders Secured Claims are to be paid on account of Allowed Class 2 Claims pursuant to the terms of the Plan and agreed not to participate in the GUC Cash Settlement on account of the Prepetition Lenders Deficiency Claims.  Class 2 Claims are impaired under the Plan.

18.     Class 3 Other Secured Claims, except to the extent previously paid in full and to the extent any such claims exist, at the option of the Debtors or the Post-Effective Date Debtors, as applicable, shall be provided one of the following treatments:  (i) the Holder of such Claim shall retain its Lien on its Collateral until such Collateral is sold, and the proceeds of such sale, less costs and expenses of disposing of such Collateral, shall be paid to such Holder in full satisfaction and release of such Allowed Other Secured Claim (subject to any applicable intercreditor rights or obligations); (ii) on or as soon as practicable after the later of (a) the Effective Date, or (b) the date upon which the Bankruptcy Court enters a Final Order determining or allowing such Claim, or as otherwise agreed between the Holder of such Claim and the Debtors or Post-Effective-Date Debtor(s), the Holder of such Other Secured Claim will receive a Cash payment equal to the amount of its Allowed Other Secured Claim in full satisfaction and release of such Other Secured Claim; or (iii) the Collateral securing the Creditor's Other Secured Claim shall be abandoned to such Creditor, in full satisfaction and release of such Other Secured Claim.[7]  Class 3 Other Secured Claims are unimpaired under the Plan.

19.     Holders of Class 4 Unsecured Claims are impaired.  Holders of Class 4 Claims shall receive a Pro Rata share of the Liquidating Trust Interests in exchange for their Allowed Claims, which entitle the Beneficiaries thereof to a Pro Rata share of the GUC Cash Settlement (which will

---

[7]     The claims of the Former Employee Objectors were resolved by stipulation providing for an aggregate allowed Class 3 Other Secured Claim against Debtor American Physician Partners, LLC in the amount of $600,000, which will be entitled to the cash payment treatment stated above.

be distributed only to Allowed Class 4 Claims other than the Prepetition Lenders Deficiency Claim) and certain shares of net proceeds of the remaining Liquidating Trust Assets. As explained above, general unsecured creditors as Beneficiaries of the Liquidating Trust will receive their Pro Rata Share of any net proceeds of the Shared Assets and Causes of Action subject to the 60% / 40% split (the Prepetition Lenders will receive 60% of the net proceeds from all Shared Assets and Causes of Action, with the remaining 40% to be distributed to the Holders of Allowed Unsecured Claims (excluding Holders of the Prepetition Lenders Deficiency Claim)).  Unsecured Claims are subject to all statutory, equitable, and contractual subordination claims, rights, and grounds available to the Debtors, the Estates, and pursuant to the Plan, except as may be expressly provided otherwise, the Liquidating Trustee, which subordination claims, rights, and grounds are fully enforceable prior to, on, and after the Effective Date.

20.     Class 5 Intercompany Claims are impaired, deemed to have rejected, and will not receive any distributions under the Plan.

21.     Class 6 Intercompany Interests are impaired, deemed to have rejected, and will not receive any distributions under the Plan.

22.     Class 7 Interests are impaired, deemed to have rejected, and will not receive any distributions under the Plan.

23.     On the Effective Date, the Liquidating Trust shall be established pursuant to the Plan and the Liquidating Trust Agreement for the purposes of, *inter alia*, (a) administering the Liquidating Trust Assets, (b) prosecuting and/or resolving any and all Disputed Claims, (c) investigating and pursuing  Causes of Action, (d) making all Distributions to the Beneficiaries and other Creditors provided for under the Plan, (e) taking possession of the Debtors' books and records, subject to appropriate restrictions on privileged matters, (f) taking actions consistent with,

and ensuring the performance of the Debtors' obligations after the Effective Date under, postpetition purchase agreements governing the Debtors' sales of Non-Estate Patient Receivables to third parties entered into prior to the Effective Date, (g) taking actions consistent with, and ensuring the performance of the Debtors' obligations after the Effective Date under the Final Cash Collateral Order with respect to Non-Estate Patient Receivables that were sold to third parties prepetition, and (h) establishing and administering any necessary reserves for Disputed Unsecured Claims that may be required.  The Liquidating Trustee shall be deemed the representative of the Estates in accordance with section 1123 of the Bankruptcy Code for the purposes set forth in the Plan and shall have all powers, authority, and responsibilities specified in the Plan and the Liquidating Trust Agreement, including, without limitation, the powers of a trustee under Sections 704 and 1106 of the Bankruptcy Code and Rule 2004 of the Bankruptcy Rules to act on behalf of the Liquidating Trust.

24.    The Plan also includes certain releases: a Debtors' release provision, a voluntary third-party release provision, an exculpation provision, and an injunction provision.  The Plan provides for the release of claims and causes of action by the Debtors and the Releasing Parties. These provisions are appropriate and consistent with applicable provisions of chapter 11 and are the product of good-faith, arm's length negotiations among the Debtors, the Prepetition Agent, the Prepetition Lenders, and the Committee.  Further, pursuant to the Plan, all Non-Insider Preference Actions will be released and waived by the Debtors, the Estates, and the Liquidating Trustee.

**IV.**
**THE PLAN SATISFIES EACH OF THE REQUIREMENTS**
**FOR CONFIRMATION UNDER THE BANKRUPTCY CODE**

25.    Jurisdiction over this matter is proper pursuant to 28 U.S.C. § 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding within the

meaning of 28 U.S.C. § 157(b) and the Bankruptcy Court may enter a final order consistent with Article III of the United States Constitution.

26.    The Plan complies with all relevant sections of the Bankruptcy Code and the Bankruptcy Rules relating to confirmation.  The Debtors must show by a preponderance of the evidence that the Plan satisfies section 1129 of the Bankruptcy Code in order to confirm the Plan.[8] In particular, the Plan complies with the requirements of sections 1123 and 1129 of the Bankruptcy Code.  This Memorandum addresses each requirement below.

**A.    The Plan Satisfies Section 1129(a)(1) of the Bankruptcy Code**

27.    Section 1129(a)(1) of the Bankruptcy Code provides that a plan may be confirmed only if "[t]he plan complies with the applicable provisions of this title."  11 U.S.C. § 1129(a)(1). The legislative history of section 1129(a)(1) indicates that the primary focus of this requirement is to ensure that the plan complies with sections 1122 and 1123 of the Bankruptcy Code, which govern classification of claims and interests and the contents of a plan, respectively.[9]  The Plan complies with these provisions in all respects.

**i.    The Plan Meets the Requirements of Section 1122 of the Bankruptcy Code**

28.    The classification requirements of section 1122(a) of the Bankruptcy Code provide, in pertinent part, as follows:

> Except as provided in subsection (b) of this section, a plan may place
> a claim or an interest in a particular class only if such claim or

---

[8]    *See, e.g., Heartland Fed. Sav. & Loan Ass'n v. Briscoe Enters. (In re Briscoe Enters.)*, 994 F.2d 1160, 1165 (5th Cir.1993) ("The . . . preponderance of the evidence is the debtor's appropriate standard of proof both under § 1129(a) and in a cramdown.").

[9]    *See* S. Rep. No. 989, 95th Cong. 2d Sess. 126 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5913 (1978)  ("Senate Report"); H.R. Rep. No. 595, 95th Cong. 1st Sess. 412 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5962, 6368 (1977) ("House Report"); *see also Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 843 F.2d 636, 648–49 (2d Cir. 1988).

interest is substantially similar to the other claims or interests of such class.[10]

29.     Section 1122(a) does not require that similar claims be classified together, only that claims grouped together in a class should be similar.  *Teamsters Nat'l Freight Indus. Negotiating Comm. v. U.S. Truck Co. (In re U.S. Truck Co.)*, 800 F.2d 581, 585 (6th Cir. 1986).  The Third Circuit has recognized that debtors have significant flexibility in placing similar claims into different classes under section 1122, provided there is a rational basis to do so and it is not done to gerrymander a consenting impaired class.[11]

30.     The classification of claims and interests under the Plan is proper under the Bankruptcy Code.  There are five classes of Claims and two classes of interests:  (1) Class 1 Priority Non-Tax Claims (the only class of priority claims subject to classification), (2) Class 2 Prepetition Senior Lenders Claims (all prepetition senior lender claims, to the extent any exist), (3) Class 3 Other Secured Claims (all remaining secured prepetition claims, to the extent any exist), (4) Class 4 Unsecured Claims (all nonpriority unsecured prepetition claims), (5) Class 5 Intercompany Claims (all intercompany claims);   (6) Class 6 Intercompany Interests (all intercompany interests); and (7) Class 7 Interests (all other interests in the Debtors).  As the foregoing descriptions of the classes reflect, valid reasons exist for separately classifying the various Classes of Claims and Interests created under the Plan and, accordingly, the classification

---

[10]    11 U.S.C. § 1122(a).

[11]    *See In re Jersey City Med. Ctr.*, 817 F.2d 1055, 1060–61 (3d Cir. 1987) (observing that separate classes of claims must be reasonable, and allowing a debtor to group similar claims in different classes); *Frito-Lay, Inc. v. LTV Steel Co. (In re Chateaugay Corp.)*, 10 F.3d 944, 956–57 (2d Cir. 1993) (finding separate classification appropriate because a classification scheme had a rational basis where separate classification was based on a bankruptcy court-approved settlement); *Aetna Cas. & Sur. Co. v. Clerk of the U.S. Bankr. Ct. (In re Chateaugay Corp.)*, 89 F.3d 942, 950 (2d Cir. 1996) (finding that classification was proper since the plan did not classify similar claims separately to gerrymander an impaired assenting class); *In re Adelphia Commc'n Corp.*, 368 B.R. 140, 246–47 (Bankr. S.D.N.Y. 2007) ("When considering assertions of gerrymandering, courts in the Second Circuit have inquired whether a debtor has classified substantially similar claims in separate classes for the sole purpose of obtaining at least one impaired assenting class.").

of Claims and Interests under the Plan satisfies the requirements of section 1122 of the Bankruptcy Code.

### ii.    The Plan Meets the Requirements of Section 1123(a) of the Bankruptcy Code

31.    Section 1123(a) of the Bankruptcy Code sets forth seven requirements with which every chapter 11 plan must comply.  The Plan complies fully with each requirement.

32.    First, paragraph (1) of section 1123(a) requires that a plan designate classes of claims, other than claims with the priority specified in subparagraphs 1, 2, and 8 of section 507(a) of the Bankruptcy Code.  Section II of the Plan designates classes of Claims and Interests and does not classify Administrative Claims or Priority Tax Claims because they must receive the treatment specified in the Bankruptcy Code and cannot otherwise be impaired.  *See* 11 U.S.C. §§ 1123(a)(1) and 1129(a)(9).

33.    Second, paragraph (2) of section 1123(a) of the Bankruptcy Code requires that a plan specify those classes or interests that are not impaired.  Section 10 of the Plan specifies that Classes 1 and 3 are unimpaired.

34.    Third, paragraph (3) of section 1123(a) of the Bankruptcy Code requires that a plan specify those classes of claims or interests that are impaired.  Section 10 of the Plan specifies that Classes 2, 4, 5, 6, and 7 are impaired.

35.    Fourth, paragraph (4) of section 1123(a) of the Bankruptcy Code requires that a plan provide the same treatment for each claim in a particular class unless the holder of a claim in that class agrees to less favorable treatment for such claim.  All of the Holders of Claims or Interests within each Class are treated identically under the Plan as required by section 1123(a)(4) of the Bankruptcy Code.

36.     Fifth, paragraph (5) of section 1123(a) of the Bankruptcy Code requires that a plan provide adequate means for its implementation.  Here, Section 13 (Treatment of Executory Contracts and Unexpired Leases), Section 14 (Means for Implementation of the Plan), Section 15 (Effect of Confirmation), and Section 17 (Conditions Precedent to Confirmation and Consummation of the Plan), among other provisions of the Plan, set forth the means for the Plan's implementation.

37.     Sixth, paragraph (6) of section 1123(a) of the Bankruptcy Code requires that a plan impose certain restrictions on a corporate debtor's equity securities.  Consistent with section 1123(a)(6), the Plan provides in Section 19.15: " Effective upon the Effective Date, the Debtors' formation documents shall be deemed amended to prohibit the issuance by the Debtors of nonvoting securities to the extent required under Section 1123(a)(6) of the Bankruptcy Code."  Thus, section 1123(a)(6) is satisfied because the Plan provides that to the extent required, the Debtors shall comply with the provisions of section 1123(a)(6) of the Bankruptcy Code.

38.     Finally, paragraph (7) of section 1123(a) of the Bankruptcy Code requires that a plan contain only provisions that are consistent with the interests of creditors, equity security holders, and public policy with respect to the manner of selection of any officer, director, or trustee under a plan and any successor thereto.  The Plan satisfies this requirement.  Section 14 of the Plan describes the manner of selection and powers of the Liquidating Trustee.  The identity of the Liquidating Trustee has been disclosed in the amended Plan Supplement.  Pirinate Consulting Group, LLC, of which Eugene Davis is Chairman and Chief Executive Officer, will be appointed the Liquidating Trustee.  Sections 14.6 and 14.7 of the Plan describe the powers of the Liquidating Trustee.  The engagement of the Liquidating Trustee is consistent with the interests of Holders of Claims and with public policy and so satisfy section 1123(a)(7) of the Bankruptcy Code.

**B.     The Plan Complies With the Discretionary**
<u>**Provisions of Section 1123(b) of the Bankruptcy Code**</u>

39.     Section 1123(b) of the Bankruptcy Code sets forth various discretionary provisions that may be incorporated into a chapter 11 plan.  Among other things, section 1123(b) of the Bankruptcy Code provides that a plan may:  (a) impair or leave unimpaired any class of claims or interests, (b) provide for the assumption or rejection of executory contracts and unexpired leases, (c) provide for the settlement or adjustment of any claim or interest belonging to the debtor or the estate, and (d) include any other appropriate provision not inconsistent with the applicable provisions of chapter 11.  11 U.S.C. § 1123(b)(1).

40.     The Plan is consistent with section 1123(b) of the Bankruptcy Code.  Specifically, under Section 10 of the Plan, Classes 1 and 3 are unimpaired because the Plan provides the holders of such claims with the treatment required under the Bankruptcy Code.  On the other hand, Classes 2, 4, 5, 6, and 7 are impaired because the Plan modifies the rights of the Holders of Claims and Interests within such classes.  In addition, pursuant to section 1123(b)(2) of the Bankruptcy Code, Section 13 of the Plan provides for the rejection of all executory contracts and unexpired leases under section 365 of the Bankruptcy Code to the extent not already assumed or rejected or the subject of a pending motion to assume, except as specified in the Plan.

41.     The Plan's discretionary provisions also include certain releases, a Debtors' release provision, a voluntary third-party release provision, an exculpation provision, and an injunction provision.  The Plan also provides for the release of claims and causes of action by the Debtors and the Releasing Parties.  These provisions are appropriate and consistent with the applicable provisions of chapter 11 because, among other things, they are the product of good-faith, arm's length negotiations.

### i.    The Exculpation Provision, As Modified, Is Appropriate

42.    Section 16.1 of the Plan, as amended, provides for the exculpation of the Debtors, the Debtors' officers, directors, managers, and professionals (including, without limitation, Huron and the personnel provided to the Debtors pursuant to the Huron Approval Order), the Committee and its professionals and the members of the Committee, each solely in their capacities as such who served during the Chapter 11 Cases.  However, based on subsequent discussions with the UST, the Debtors will make further clarifications in the Confirmation Order of the exculpation:

"The first sentence in Section 16.1 of the Plan is modified to provide as follows:

The Debtors, the Debtors' officers, directors, managers, and professionals (including, without limitation, the personnel provided to the Debtors pursuant to the Huron Approval Order who served as estate fiduciaries), the Committee and its professionals and the members of the Committee, each solely in their capacities as such who served during the Chapter 11 Cases (collectively, the "Exculpated Parties")…."

43.    At the outset, it is important to underscore the difference between the Third Party Release (discussed below) and the Exculpation Provision.  Unlike the Third Party Release, the Exculpation Provision does not affect the liability of third parties *per se* but rather sets forth a standard of liability under the Bankruptcy Code.[12]  A bankruptcy court has the power to approve an exculpation provision in a chapter 11 plan because a bankruptcy court cannot confirm a chapter 11 plan unless it finds that the plan has been proposed in good faith.[13]  Once the court makes its good faith finding, it is appropriate to set the standard of care of the parties involved in the formulation of that chapter 11 plan.[14]

---

[12]    *See, e.g.*, *In re PWS Holding Corp.*, 228 F.3d 224, 246 (3d Cir. 2000) (holding that an exculpation provision "is apparently a commonplace provision in Chapter 11 plans, [and] does not affect the liability of these parties, but rather states the standard of liability under the Code.").

[13]    *See* 11 U.S.C. § 1129(a)(3).

[14]    *See PWS*, 228 F.3d at 246–47 (observing that creditors providing services to the debtors are entitled to a "limited grant of immunity . . . for actions within the scope of their duties . . . .").

44. The Exculpation Provision is narrowly tailored to exclude acts of willful misconduct, fraud and gross negligence, and it relates only to acts or omissions in connection with or arising out of the administration of the Debtors' cases. Accordingly, the Exculpation Provision should be approved.

**ii. The Debtors' Releases of Claims Are Appropriate**

45. Section 16.2(a).1 of the Plan contains a release by the Debtors and the Estates of the Released Parties (the "Debtor/Estate Release"). Released Parties means, collectively, (a) the Debtors; (b) the Debtors' outside professionals and advisors, in their respective capacities as such, who provided services to the Debtors postpetition, including without implied limitation, the Debtors' Chief Restructuring Officer (John DiDonato), Deputy CRO and Interim CEO (James Nugent), and all other Huron personnel who provided services postpetition to the Debtors; (c) counsel to the Board of Managers of APP in its capacity as such; (d) the following individuals who have provided services to the Debtors: (i) James Frary, (ii) Lawrence Hirsh, (iii) James Decker, and (iv) Jay Martus; (e) the Committee and the individual members thereof in their capacity as such, and their professionals in their respective capacities as such; (f) the Prepetition Agent in its capacity as such; (g) the Prepetition Lenders in their respective capacity as such; and (h) the Related Persons of the parties in preceding items (f) and (g), solely in their respective capacities as such. For the avoidance of doubt, John Rutledge and any person who served as an officer of a Debtor who is not expressly identified as a Released Party by name in the Plan definition of Released Parties, APP Holdco LLC, CPV APP Blocker Inc. and Brown Brothers Harriman Capital Partners and its non-Debtor affiliates (whether or not they hold directly or indirectly equity interests in the Debtors, or are Prepetition Lenders), shall not be "Released Parties". For the avoidance of doubt, as part of the settlement embodied in the Plan, the Debtors, the Committee,

the Prepetition Agent, and the Prepetition Lenders acknowledge and agree with all of the foregoing terms.

46.     Section 1123(b)(3)(A) of the Bankruptcy Code provides that a chapter 11 plan may provide for "the settlement or adjustment of any claim or interest belonging to the debtor or to the estate."[15]  A debtor may release claims under section 1123(b)(3)(A) of the Bankruptcy Code "if the release is a valid exercise of the debtor's business judgment, is fair, reasonable, and in the best interests of the estate."[16]

47.     In determining whether a debtor release is proper, courts consider whether:

(i)     the nondebtor has made a substantial contribution to the debtor's reorganization;

(ii)     the release is essential to the debtor's reorganization;

(iii)     a substantial majority of creditors support the release;

(iv)     there is an identity of interest between the debtor and the third party; and

(v)     a plan provides for payment of all or substantially all of the claims in the class or classes affected by the release.[17]

---

[15]     *See In re Coram Healthcare Corp.*, 315 B.R. 321, 334–35 (Bankr. D. Del. 2004) ("The standards for approval of settlement under section 1123 of the Bankruptcy Code are generally the same as those under Bankruptcy Rule 9019 . . . .").  Generally, courts in the Third Circuit approve a settlement by the debtors if the settlement "exceed[s] 'the lowest point in the range of reasonableness.'"  *In re Exaeris, Inc.*, 380 B.R. 741, 746–47 (Bankr. D. Del. 2008) (quoting *Coram*, 315 B.R. at 330).

[16]     *U.S. Bank Nat'l Assn' v. Wilmington Trust Co.* (*In re Spansion, Inc.*), 426 B.R. 114, 143 (Bankr. D. Del. 2010); *see also In re Washington Mut., Inc.*, 442 B.R. 314, 327 (Bankr. D. Del. 2011) ("In making its evaluation [whether to approve a settlement], the court must determine whether 'the compromise is fair, reasonable, and in the best interest of the estate.'") (quoting *In re Louise's, Inc.*, 211 B.R. 798, 801 (D. Del. 1997)).

[17]     *See, e.g., In re Zenith Elecs. Corp.*, 241 B.R. 92, 110 (Bankr. D. Del. 1999) (citing *In re Master Mortg. Inv. Fund, Inc.*, 168 B.R. 930, 935 (Bankr. W.D. Mo. 1994)); *Washington Mut.*, 442 B.R. at 346 (citing the *Zenith* factors); *Spansion*, 426 B.R. at 143 n.47 (same).

*In re Indianapolis Downs, LLC*, 486 B.R 286, 303 (Bankr. D. Del. 2013) (citing *Zenith*, 241 B.R.at

110). "These factors are neither exclusive nor are they a list of conjunctive requirements." *Id.*

(citing *Washington Mut.*, 442 B.R. at 346).

48.    The Debtor/Estate Releases in the Plan are fair and reasonable, supported by

creditors, and in the best interests of the Estates.  The Debtor/Estate Releases are based upon a

substantial contribution to the Plan and the Debtors' chapter 11 case.  Notably, no creditor has

objected to the proposed Debtor/Estate Releases.  The Debtor/Estate Releases are also limited in

scope by the carve-out for willful misconduct, fraud, or gross negligence.

49.    As in *Indianapolis Downs*, the Debtors' releases are integral to settlements

facilitating a plan.  The Plan is predicated on the global settlement between the Debtors and the

significant stakeholders in these Chapter 11 Cases, namely the Prepetition Agent, the Prepetition

Lenders, and the Committee.  Thus, there is an identity of interests between the Debtors and the

Released Parties based on their "common goal of confirming the [] Plan."  *In re Tribune Co.*, 464

B.R. 126, 187 (Bankr. D. Del.), *modified*, 464 B.R. 208 (Bankr. D. Del. 2011); *Zenith*, 241 B.R.

at 110 (concluding that certain released parties who "were instrumental in formulating the Plan"

shared an identity of interest with the debtor "in seeing that the Plan succeed and the company

reorganize").

50.    For these reasons, the Debtor/Estate Releases are justified, are in the best interests

of creditors, are an integral part of the Plan, and satisfy the key factors considered by courts in

determining whether a debtor release is proper.

### iii.    The Consensual Third Party Releases Are Appropriate

51.    Section 16.2(a).2 of the Plan provides for a voluntary release by certain creditors

of the Debtors who are unimpaired or affirmatively votes to accept the Plan and do not opt out

or object to the releases (the "<u>Third Party Release(s)</u>").  Releasing Parties means, as defined in

Plan Section 16.2, each Released Party and each Claimant who (i) is not Impaired under the Plan or (ii) votes to accept the Plan and who does not elect to "opt-out" by marking the appropriate box on such Releasing Party's respective Ballot or by submitting an opt-out form for (1) themselves and their respective successors, assigns, transferees, and (2) and such Claimants' officers and directors, managers, agents, members, financial and other advisors, attorneys, employees, partners, affiliates, and representatives (in each case in their capacity as such).[18]

52.     The consensual Third Party Releases in the Plan are fully consistent with governing law.  "Courts in this jurisdiction have consistently held that a plan may provide for a release of third party claims against a non-debtor upon consent of the party affected."  *Indianapolis Downs*, 486 B.R. at 305 (citing *Zenith*, 241 B.R. at 111, and *Spansion*, 426 B.R. at 144).  The Third Party Releases are narrowly tailored and only applicable to certain creditors.  The Third Party Releases are only applicable to creditors whose claims are unimpaired by the Plan or creditors who vote in favor of the Plan and do not elect to opt out of or object to the Third Party Releases.

53.     The opt-out provision was highlighted in, as applicable, the Combined Disclosure Statement and Plan, Combined Hearing Notice, Non-Voting Notices and/or Ballots, in order to notify creditors as to this option.  The Debtors acknowledge that the New Mexico Plaintiffs opted out of the Third Party Release (through its Preliminary Response and Reservation of Rights) and will not be Releasing Parties.  Subject to the foregoing, no creditor objected to the Third Party Releases.  As discussed further herein, only the United States (on behalf of the IRS and HHS) filed

---

[18]    As set forth in Plan Section 16.2, strictly as to the scope of the Third Party Release by the Additional Release Parties in favor of the Released Parties, the Third Party Release will apply only to claims and causes of action of an Additional Release Party that (a) are derivative of the claims held by the Releasing Party to whom the Additional Release Party is related, or (b) solely to the extent such Additional Release Party would be obligated to grant a release under applicable non-bankruptcy law if they were so directed by the Releasing Party to whom they are related.

an Objection to the Third Party Releases on the basis that the Debtors have purportedly failed to provide sufficient basis therefor in relation to claims of the United States.

54.    Because the Plan does not purport to impose nonconsensual releases, the Third Party Releases are entirely consistent with applicable precedent and decisions in this District. *See In re AeroCentury Corp.*, No. 21-10636, Findings of Fact, Conclusions of Law and Order ¶ O (Bankr. D. Del. Aug. 31, 2021) (Dorsey, J.), ECF No. 296 ("The releases . . . are consensual as they pertain to the Releasing Parties because they are given and made after due notice and an opportunity to object and be heard with respect thereto, as the Combined Disclosure Statement and Plan, the Confirmation Hearing Notice, and the Ballots each unambiguously state that (a) the Plan contains such releases, (b) affected parties may object to such releases, and (c) the Release Opt-Election may be exercised as provided for in the Plan."); *In re RTI Holding Co.*, No. 20-12456, Debtors' Second Amended Chapter 11 Plan ¶ 163 (Bankr. D. Del. Feb. 10, 2021) (Dorsey, J.), ECF No. 1093 ("For the avoidance of doubt, a Holder of a Claim shall constitute a Releasing Party unless it affirmatively opts out of granting the releases by indicating on and returning its ballot."); *In re PQ New York*, No. 20-11266, Findings of Fact and Conclusions of Law ¶ OO at 17 (Bankr. D. Del. Sept. 25, 2020) (Dorsey, J.), ECF No. 597 ("The releases . . . are binding on all (a) Creditors who are unimpaired, (b) Creditors who returned a Ballot and did not check the opt-out box on the Ballot, and (c) Creditors who were sent a solicitation package but did not vote and did not return a Ballot with the opt-out box checked . . . ."); *In re Cred Inc.*, Modified First Amended Combined Joint Plan of Liquidation ¶ 18.2 (Bankr. D. Del. March 10, 2021) (Dorsey, J.), ECF No. 619 ("[A]ll Holders of Claims or Equity Interests, who (1) vote in favor of the Combined Plan and Disclosure Statement or (2) (A) abstain from voting, are not entitled to vote, or vote to reject the Combined Plan and Disclosure Statement and (B) do not opt out of the this release on a timely submitted

Ballot or the Opt-Out Election Form shall be deemed to have released and discharged each Released Party from any and all claims and Causes of Action . . . ."); *In re Extraction Oil & Gas*, No. 20-11548, Sixth Amended Joint Plan of Reorganization ¶ 186 (Bankr. D. Del. Oct 22, 2020) (Sontchi, J.), ECF No. 883 ("'Releasing Parties' means . . . (b) the holders of all Claims or Interests whose vote to accept or reject the Plan is solicited but who do not vote either to accept or to reject the Plan; (c) the holders of all Claims or Interests who vote, or are deemed, to reject the Plan but do not opt out of granting the releases set forth therein; (d) the holders of all Claims and Interests who were given notice of the opportunity to opt out of granting the releases set forth therein but did not opt out . . . ."); *In re AAC Holdings*, No. 20-11648, Order Confirming Second Amended Joint Chapter 11 Plan ¶ 36 (Bankr. D. Del. June 20, 2020) (Dorsey, J.), ECF No. 695 ("[E]ach Releasing Party was given due and adequate notice that they would be granting the Third Party Release by voting to accept the Plan, failing to opt out of the Third Party Release if voting against the Plan or abstaining from voting on the Plan, failing to object to the Third Party Release prior to the deadline to object to Confirmation of the Plan or as otherwise described in the Plan."); *In re Orchard Acquisition Co.*, No. 17-12914, Joint Pre-Packaged Plan of Reorganization ¶ 1.114 (Bankr. D. Del. Dec. 12, 2017) (Gross, J.), ECF No. 9 ("'Releasing Parties" means . . . "Holders of Claims or Equity Interests (i) who vote to accept the Plan, (ii) who are Unimpaired under the Plan and do not timely object to the releases provided herein, (iii) whose vote to accept or reject the Plan is solicited but who do not vote either to accept or to reject the Plan and do not opt out of granting the releases herein, or (iv) who vote to reject the Plan but do not opt out of granting the releases herein.").

55.     Here, the Third Party Releases are narrowly tailored and only applicable to certain creditors.  For example, the Third Party Releases are only applicable to creditors whose claims are

unimpaired by the Plan or creditors who vote in favor of the Plan and do not elect to opt out of or object to the Third Party Releases. As noted, the opt-out provision was highlighted in, as applicable, the Combined Disclosure Statement and Plan, Combined Hearing Notice, Non-Voting Notices and/or Ballots, in order to alert creditors as to this option. The Voting Declaration sets forth the general unsecured creditors who made the opt-out election on their Class 4 Ballots. The Debtors acknowledge and accept that the New Mexico Plaintiffs opted out of the Third Party Release and will not be Releasing Parties. Subject to the foregoing, no creditor objected to the Third Party Releases. Only the United States, on behalf of the IRS and HHS, filed an Objection to the Third Party Releases on the grounds that the Debtors have failed to provide sufficient basis therefor in relation to claims of the United States.

56.     In addition to being consensual, the Third Party Releases satisfy the other factors referenced in Third Circuit case law. *First*, the Third Party Releases are sufficiently specific—describing potential causes of action to be released—so as to put the Releasing Parties on notice of the released claims. *Second*, the Third Party Releases are integral to the Plan and a condition of the comprehensive settlement embodied therein. The provisions of the Plan were heavily negotiated by sophisticated parties during these Chapter 11 Cases. The Third Party Releases are a key inducement to bring stakeholder groups to the bargaining table. Put simply, the Debtors' key stakeholders are unwilling to support the Plan (and make valuable contributions and concessions like the GUC Cash Settlement in the case of the Prepetition Lenders) without the assurance that they and their collateral would not be subject to post-emergence litigation or other disputes related to the Debtors.

57.     *Third*, the Third Party Releases were given for consideration. The significant consideration provided by the Released Parties inured not only to the benefit of the Debtors as

described above, but inured to the benefit of all stakeholders by allowing the Chapter 11 Cases to efficiently proceed and, thus, maximize the value of the Debtors' assets. All parties in interest benefit from the transactions contemplated by the Plan.

> **iv.    The Injunction Provision Is Appropriate and Complies With the Bankruptcy Code.**

58.    The injunction provision set forth in Section 16.3 of the Plan (the "Injunction Provision") implements the Plan's release and exculpation provisions, in part, and allows for and facilitates the implementation of the Plan and its specified treatment of Claims and Interests by permanently enjoining all entities from commencing or maintaining any action against the Debtors, the Estates, the Liquidating Trust or the Liquidating Trust Assets.  The Injunction Provision is thus a key provision of the Plan because it provides a mechanism to enforce the terms of the Plan and to prevent third parties from commencing litigation against the protected parties simply to launch a collateral attack on the Plan in another forum. As such, to the extent the Court finds that the Plan's Exculpation and Release Provisions are appropriate, the Court should approve the Injunction Provision.

**C.    The Debtors Have Satisfied
Section 1129(a)(2) of the Bankruptcy Code**

59.    Section 1129(a)(2) of the Bankruptcy Code requires the proponent of a plan to comply with "applicable provisions of the Bankruptcy Code."  11 U.S.C. § 1129(a)(2).  The principal purpose of section 1129(a)(2) of Bankruptcy Code is to ensure that a debtor has complied

with the disclosure and solicitation requirements of sections 1125 and 1126 of the Bankruptcy Code.[19]

### i. The Debtors Have Complied With the Requirements of Section 1125 of the Bankruptcy Code

60.     Section 1125 of the Bankruptcy Code prohibits the solicitation of acceptances or rejections of a chapter 11 plan from holders of claims or interests "unless, at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved . . . by the court as containing adequate information."  11 U.S.C. § 1125(b).  In these Chapter 11 Cases, the Court entered the Solicitation Procedures Order, conditionally approving the Disclosure Statement as containing adequate information within the meaning of section 1125 of the Bankruptcy Code.

61.     Pursuant to the Solicitation Procedures Order, the Debtors—through their claims, noticing, balloting, and solicitation agent, Epiq—transmitted the approved Solicitation Package notices in accordance with the instructions of the Court in the Solicitation Procedures Order.  *See* Voting Decl.  In addition, in compliance with the Solicitation Procedures Order, copies of the Solicitation Procedures Order, the Plan, and the Disclosure Statement have been available upon request from the Debtors' counsel and free of charge at https://dm.epiq11.com/case/americanphysicianpartners/documents.

---

[19]     *See In re PWS Holdings Corp.*, 228 F.3d 224, 248 (3d Cir. 2000) (stating that section 1129(a)(2) requires debtors to comply with the adequate disclosure requirements of section 1125); *see also In re Lapworth*, No. 97-34529, 1998 Bankr. LEXIS 1383, at *10 (Bankr. E.D. Pa. Nov. 2, 1998) ("The legislative history of § 1129(a)(2) specifically identifies compliance with the disclosure requirements of § 1125 as a requirement of § 1129(a)(2)."); *Official Comm. v. Michelson (In re Michelson)*, 141 B.R. 715, 719 (Bankr. E.D. Cal. 1992) ("Compliance with the disclosure and solicitation requirements is the paradigmatic example of what the Congress had in mind when it enacted section 1129(a)(2)."); *In re Texaco Inc.*, 84 B.R. 893, 906–07 (Bankr. S.D.N.Y. 1988) (stating that the "principal purpose of Section 1129(a)(2) is to assure that the proponents have complied with the requirements of section 1125 in the solicitation of acceptances to the plan"); Senate Report at 126 ("Paragraph (2) of [section 1129(a)] requires that the proponent of the plan comply with the applicable provisions of chapter 11, such as section 1125 regarding disclosure.").

62.     The Solicitation Package was served in accordance with the requirements of Bankruptcy Rules 2002(b) and 3017(d)–(f) and the Solicitation Procedures Order.  The Solicitation Package clearly stated that, consistent with the Solicitation Procedures Order and section 105(d)(2)(B)(vi) of the Bankruptcy Code, final approval of the Disclosure Statement and any objections thereto would be heard at the Confirmation Hearing.

63.     After notice to all creditors, certain parties filed Objections/Statements or provided informal comments to the Debtors.  The Debtors have made certain modifications to the Combined Disclosure Statement and Plan and/or are amenable to making certain revisions to the proposed Confirmation Order, to address many of the Objections/Statements.  To the extent that the parties are unable to reach agreement on any remaining Objections/Statements, the Debtors request the Court to overrule such Objections/Statements for the reasons provided herein.

64.     Based on the foregoing, and the additional reasons supporting the adequacy of the Disclosure Statement as set forth in the Solicitation Procedures Motion, approval of the Disclosure Statement on a final basis as part of the Confirmation Order is appropriate.

### ii.    The Debtors Have Complied With the Requirements of Bankruptcy Rules 3017(d) and 3018(c)

65.     Bankruptcy Rules 3017 and 3018 require, in relevant part, that a debtor transmit its plan and disclosure statement to all affected creditors and equity security holders, that it adopt effective procedures for the transmission of its plan and disclosure statement to beneficial owners of securities, and that it afford creditors and equity security holders a reasonable period of time in which to accept or reject the proposed plan.  Fed. R. Bankr. P. 3017, 3018.  The Debtors respectfully submit that they have met all such requirements.

66.     Bankruptcy Rule 3017(d) requires that, unless a court orders otherwise, a debtor must transmit to all creditors, equity security holders, and the United States Trustee:  the plan (or

a court-approved summary of the plan), the disclosure statement approved by the court, notice of the time within which acceptances and rejections of such plan may be filed, and such other information as the court may direct, including any opinion of the court approving the disclosure statement or a court approved summary of the opinion.

67.    Bankruptcy Rule 3017 also requires that the debtor give notice of the time fixed for filing objections to the proposed disclosure statement and for the hearing on confirmation to all creditors and equity security holders, and that a debtor mail a ballot to each creditor and equity security holder entitled to vote on the plan.

68.    Bankruptcy Rule 3018(c) governs the form of ballot for accepting or rejecting a plan, providing in relevant part that an "acceptance or rejection shall be in writing, identify the plan or plans accepted or rejected, be signed by the creditor or equity security holder or an authorized agent and conform to the appropriate Official Form."  Fed. R. Bankr. P. 3018(c). Pursuant to Bankruptcy Rule 3018(a) and the Solicitation Procedures Order, the Court established October 27, 2023 as the record date (the "Voting Record Date") for determining which holders of claims and interests were entitled to vote to accept or reject the Plan.

69.    Epiq completed solicitation of the Plan by November 6, 2023, by causing the Solicitation Package (as defined and described in the Solicitation Procedures Order) to be transmitted to all known holders of claims in Classes 2 and 4 as of the Voting Record Date.  All other creditors were unimpaired and therefore conclusively presumed to have accepted the Plan.[20] Holders of Intercompany Claims or Interests were not provided with a Solicitation Package because they are deemed to have rejected the Plan and not entitled to vote thereon.  The nonvoting

---

[20]    *See* 11 U.S.C. § 1126(f), (g).

parties were served with the Confirmation Hearing Notice and the applicable Notice of Non-Voting Status.

70.     As required by Bankruptcy Rule 3017(d), the Solicitation Package included, *inter alia*, the Combined Disclosure Statement and Plan.  In addition, each Solicitation Package included the appropriate Ballot with voting instructions, the Confirmation Hearing Notice, and a pre-addressed return envelope each in the form approved by the Court in the Solicitation Procedures Order.  The Disclosure Statement, Ballots, and Confirmation Hearing Notice provided clear notice of the voting deadline to submit the Ballots, which the Court established as December 7, 2023 at 4:00 p.m. (Eastern Time).

71.     The Debtors and their professionals and agents followed the procedures set forth in the Solicitation Procedures Order for soliciting acceptances of the Plan as evidenced by the Voting Report and the certificates of service for the Solicitation Packages filed of record with the Court. In addition, the Debtors served the Confirmation Hearing Notice on the U.S. Trustee, counsel for the Committee, all creditors on the list of creditors maintained by the Debtors' Claims Agent, and those parties that requested notice pursuant to Bankruptcy Rule 2002.  The Debtors did not solicit acceptances or rejection of the Plan from any creditor or equity interest holder before the conditional approval of the Disclosure Statement by this Court.

### iii.     The Vote Tabulation Satisfied Section 1126(c) and Bankruptcy Rule 3018(a)

72.     The Debtors submit that the voting and tabulation procedures followed by Epiq are in accordance with the Solicitation Procedures Order, Bankruptcy Code section 1126(c), and Bankruptcy Rule 3018(a).

73.     Bankruptcy Code section 1126(c) provides:

> A class of claims has accepted a plan if such plan has been accepted by creditors, other than any entity designated under subsection (e) of this

section, that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class held by creditors, other than any entity designated under subsection (e) of this section, that have accepted or rejected such plan.

11 U.S.C. § 1126(c). Section 1126 of the Bankruptcy Code provides in part that only holders of allowed claims and interests in impaired classes that will receive or retain property under a plan on account of such claims or interests may vote to accept or reject a plan. 11 U.S.C. § 1126(f)–(g). Classes 1 and 3 are unimpaired under the Plan. Accordingly, Classes 1 and 3 are deemed to have accepted the Plan and are not entitled to vote on the Plan. Holders of Intercompany Claims in Class 5 are deemed to have rejected the Plan and not entitled to vote on the Plan. Holders of Interests in Classes 6 and 7 are impaired and will not receive any distributions under the Plan. As a result, pursuant to section 1126(g) of the Bankruptcy Code, Classes 5, 6 and 7 are deemed to have rejected the Plan. Class 2 (Prepetition Secured Lenders Claims) and Class 4 (Unsecured Claims) are impaired and, to the extent any such claims exist, will receive distributions under the Plan. Based on the foregoing, pursuant to section 1126 of the Bankruptcy Code, the holders of claims in Classes 2 and 4 are the only parties entitled to vote on the Plan. As set forth in the Voting Summary, in accordance with section 1126 of the Bankruptcy Code and the Solicitation Procedures Order, the Debtors solicited acceptances and rejections of the Plan from the holders of Claims in Classes 2 and 4. Class 2 voted to accept the Plan. Class 4 voted to reject the Plan.

Every validly cast Ballot was counted and considered when tabulating votes for the acceptance or rejection of the Plan.[21]

74.     Based on the facts and arguments set forth above, the Debtors submit that the Plan-related solicitation efforts satisfied the requirements of Bankruptcy Code sections 1125 and 1126 and Bankruptcy Rules 3017(d), 3018(a), 3018(c), and 3018(e).

75.     Additionally, given the clear evidence of good faith on the part of the parties involved in the solicitation and the Debtors' compliance with Bankruptcy Code section 1125, the Debtors request that the Court grant the parties the protections provided under Bankruptcy Code section 1125(e).

**D.     The Plan Has Been Proposed in Good Faith (Section 1129(a)(3))**

76.     Section 1129(a)(3) of the Bankruptcy Code requires that a plan be proposed in good faith and not by any means forbidden by law.  11 U.S.C. § 1129(a)(3).  Although the term "good faith" is not defined in the Bankruptcy Code, courts have determined that "'[f]or purposes of determining good faith under section 1129(a)(3) . . . the important point of inquiry is the plan itself and whether such a plan will fairly achieve a result consistent with the objectives of the Bankruptcy Code." *In re PWS Holding Corp.*, 228 F.3d at 242 (quoting *In re Abbotts Dairies*, 788 F.2d 143, 150 n.5 (3d Cir. 1986)).  The requirement of good faith must be viewed in light of the totality of the circumstances surrounding the proposal of a chapter 11 plan.  *In re W.R. Grace & Co.*, 475

---

[21]     *See* Voting Declaration and exhibits thereto.  The Debtors note that nearly all voting creditors submitted their Ballots prior to the settlement reached by and among the Debtors, the Prepetition Agent, the Prepetition Lenders, and the Committee that is embodied in the Plan, as amended, being presented for confirmation.  As discussed herein, general unsecured creditors will receive substantially more favorable treatment under the amended Plan, and the Debtors believe that if the Voting Deadline were to be extended further, materially more Class 4 members would vote in favor of the Plan, as amended.  Nonetheless, to minimize further delays and administrative costs associated with re-solicitation, the Debtors are seeking to have the Plan confirmed and crammed down on Class 4.

B.R. 34, 87 (D. Del. 2012).  In determining whether the plan will succeed and accomplish goals consistent with the Bankruptcy Code, courts look to the terms of the plan itself.[22]

77.    The Plan has been proposed in good faith, achieves an effective, orderly liquidation and distribution of the Debtors' remaining assets, and provides for meaningful distributions to creditors.  The Plan contains only provisions that are consistent with the Bankruptcy Code.  In light of the foregoing, the Plan complies with section 1129(a)(3) of the Bankruptcy Code.

### E.    Payments for Services and Expenses (Section 1129(a)(4))

78.    Section 1129(a)(4) of the Bankruptcy Code requires that the Debtors not make any payment for services, costs, or expenses in connection with these Chapter 11 Cases unless such payments are disclosed and subject to bankruptcy court approval as reasonable.  Courts have construed this section as requiring the bankruptcy court's review and approval of the reasonableness of all professional fee payments made from estate assets.  Courts have construed this section as requiring the bankruptcy court's review and approval of the reasonableness of all professional fee payments made from estate assets.  *See In re NH Holdings, Inc.*, 288 B.R. 356, 362–63 (Bankr. D. Del. 2002) (finding in a confirmation order that the plan complied with section 1129(a)(4) of the Bankruptcy Code where all final fees and expenses payable to professionals remained subject to final review by the court); *In re Resorts Int'l*, 145 B.R. 412, 475 (Bankr. D.N.J. 1990).

79.    No payment for services or costs and expenses in connection with the Debtors' Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, has been or will be made, other than payments that have been authorized by an order of the Court.  The

---

[22]    *See In re Sound Radio, Inc.*, 93 B.R. 849, 853 (Bankr. D.N.J. 1988) (concluding that the good-faith test provides courts with significant flexibility and is focused on examination of the plan itself, rather than external factors), *aff'd in part and remanded in part on other grounds*, 103 B.R. 521 (D.N.J. 1989), *aff'd*, 908 F.2d 964 (3d Cir. 1990).

Court has previously authorized the interim payment of the fees and expenses incurred by estate professionals. Pursuant to Section 8.2(b) of the Plan, professionals shall file and serve applications for allowance of final compensation and reimbursement of expenses no later than 60 days after the Effective Date. Such applications will be subject to review and approval by the Court. Accordingly, the Plan complies with the requirements of section 1129(a)(4) of the Bankruptcy Code.

**F.**     **Directors and Officers (Section 1129(a)(5))**

80.     Section 1129(a)(5) of the Bankruptcy Code requires that the identity and affiliations of the individuals proposed to serve after confirmation as a director or officer, and the identity and nature of any insider compensation, be disclosed.[23] The Debtors have complied with section 1129(a)(5) by providing the identity of the Liquidating Trustee, Pirinate Consulting Group, LLC, which is not an insider of the Debtors. The Debtors believe that the appointment of this representative is "consistent with the interests of creditors and equity security holders and with public policy," and no party in interest has objected to the Plan on these grounds. Therefore, the requirements of section 1129(a)(5) are satisfied.

**G.**     **Rate Changes (Section 1129(a)(6))**

81.     Section 1129(a)(6) of the Bankruptcy Code permits confirmation only if any regulatory commission that has or will have jurisdiction over a debtor after confirmation has approved any rate change provided for in the plan. Section 1129(a)(6) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

---

[23]  *See In re Landing Assocs.,* 157 B.R. 791, 817 (Bankr. W.D. Tex. 1993) ("In order to lodge a valid objection under § 1129(a)(5), a creditor must show that a debtor's management is unfit or that the continuance of this management post-confirmation will prejudice the creditors.").

H.    **The Plan Satisfies the "Best Interests" Test (Section 1129(a)(7))**

82.    The "best interests of creditors" test of section 1129(a)(7) of the Bankruptcy Code requires that, with respect to each impaired class of claims or interests, each individual holder of a claim or interest has either accepted the plan or will receive or retain under the plan property having a present value, as of the effective date of the plan, of not less than what such holder would receive if the debtor were liquidated under chapter 7 of the Bankruptcy Code at that time.  The best-interests-of-creditors test is generally satisfied through a comparison of the estimated recoveries for a debtor's stakeholders in a hypothetical chapter 7 liquidation of that debtor's estate against the estimated recoveries under that debtor's plan.[24]

83.    Under section 1129(a)(7), the best-interests-of-creditors test applies only to non-accepting holders of impaired claims or interests.[25]  For the reasons discussed in Section 6.8 of the Combined Disclosure Statement and Plan, and as evidenced by the Liquidation Analysis, the best-interests-of-creditors test is satisfied in these Chapter 11 Cases.  The Plan is expected to provide a greater recovery than would a chapter 7 liquidation.  Foremost, in a chapter 7 case, unsecured creditors would not have the benefit of the $2 million GUC Cash Settlement and other assets contributed by the Prepetition Lenders pursuant to the Plan.

84.    As explained in the Combined Disclosure Statement and Plan, in a chapter 7 case, the value available for satisfaction of Claims and Interests in the Debtors would be reduced by the costs, fees, and expenses of the liquidation under chapter 7, which would include disposition

---

[24]    *See In re Lason, Inc.*, 300 B.R. 227, 232 (Bankr. D. Del. 2003)  (citations omitted) ("Section 1129(a)(7)(A) requires a determination whether 'a prompt chapter 7 liquidation would provide a better return to particular creditors or interest holders than a chapter 11 reorganization.'"); *In re Adelphia Commc'ns Corp.*, 368 B.R. 140, 251 (Bankr. S.D.N.Y. 2007) (stating that section 1129(a)(7) is satisfied when an impaired holder of claims would receive "no less than such holder would receive in a hypothetical chapter 7 liquidation").

[25]    *Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 441 n.13 (1999) ("The 'best interests' test applies to individual creditors holding impaired claims, even if the class as a whole votes to accept the plan.").

expenses, the sliding scale fees and compensation of a chapter 7 trustee, the fees of the trustee's counsel and other professionals, and certain other costs arising from conversion of the chapter 11 case to a case under chapter 7.  Moreover, the monetization of the Debtors' assets and distributions to creditors likely would suffer additional delays while the chapter 7 trustee and the trustee's professionals take time to get up to speed on the myriad relevant matters to complete the administration of the Estates.  Furthermore, a chapter 7 liquidation could further delay payments being made to creditors because, in addition to the reasons described above, Bankruptcy Rule 3002(c) provides that conversion of a chapter 11 case to chapter 7 will trigger a new bar date for filing claims against the Estates.  Not only could a chapter 7 liquidation delay distribution to creditors, but it is possible that additional claims that were not asserted in the chapter 11 cases or that were filed late could be filed against the Estate.

85.     Accordingly, the Plan provides an equal or better potential recovery for creditors and interest holders as compared to a liquidation under chapter 7 of the Bankruptcy Code.  Therefore, the Plan satisfies the "best interests" of creditors test under section 1129(a)(7) of the Bankruptcy Code.

## I.     Acceptance by Impaired Classes (Section 1129(a)(8))

86.     A plan is accepted by the holders of the allowed claims of each class that voted if (i) at least two-thirds in dollar amount (the "Amount Requirement") and (ii) more than one-half in number (the "Creditor-Numerosity Requirement") have voted to accept the plan.  *See* 11 U.S.C. § 1126(c).  A class of interests accepts the plan if the plan is accepted by holders of interests that hold at least two-thirds in amount of the allowed interests in the class that actually vote on a plan (together with the Creditor-Numerosity Requirement, the "Numerosity Requirement").  *See* 11 U.S.C. § 1126(d).

87.     As discussed above, whether a class has accepted the plan is determined by reference to section 1126 of the Bankruptcy Code.  Under section 1126(f), any unimpaired class is conclusively presumed to have accepted the plan.  Because the Plan does not impair Classes 1 and 3, these Classes are deemed to have accepted the Plan and were not entitled to vote.  As explained in the Voting Declaration, Class 2 (Prepetition Lenders Secured Claims) overwhelmingly voted in favor of the Plan, while Class 4 (Unsecured Claims) voted against the Plan.  Classes 5, 6, and 7 were deemed to reject the Plan, but, as discussed herein, the Debtors seek confirmation of the Plan under the cramdown provisions of section 1129(b).

## J.      <u>Treatment of Priority Claims (Section 1129(a)(9))</u>

88.     Section 1129(a)(9) of the Bankruptcy Code contains a number of requirements concerning the payment of priority claims.  11 U.S.C. § 1129(a)(9).  First, section 1129(a)(9)(A) requires that claims of a kind specified in section 507(a)(1), which gives first priority to certain administrative expenses, be paid in full in cash on the effective date of a plan.  Second, section 1129(a)(9)(B) requires that claims of a kind specified in subsection 507(a)(3) through 507(a)(7) receive deferred cash payments equal to the allowed amount of such claims on the effective date.  Finally, section 1129(a)(9)(C) requires that the holder of a claim of a kind specified in section 507(a)(8) of the Bankruptcy Code—priority tax claims—must receive regular installment payments in cash of the total value equal to the allowed amount of such claim over a period ending not later than five years after the petition date.

89.     The Plan satisfies these requirements.  Under Section 8.2 of the Plan, each Holder of an Allowed Administrative Claim, other than a Professional Fee Claim, shall receive, from the Administrative / Priority / Other Distributions Reserve, without interest, Cash equal to the Allowed amount of such Claim: (a) on or as soon as practicable after the later of (i) the Effective Date, or

(ii) the date upon which the Bankruptcy Court enters a Final Order determining or approving such Claim; (b) in accordance with the terms and conditions of agreements between the Holder of such Claim and the Debtors or Post-Effective-Date Debtor(s), as the case may be; (c) with respect to any Administrative Claims representing obligations incurred in the ordinary course of the Debtors' business, upon such regular and customary payment or performance terms as may exist in the ordinary course of the Debtors' business or as otherwise provided in the Plan; or (d) with respect to statutory fees due pursuant to 28 U.S.C. § 1930(a)(6), as and when due under applicable law.

90.     Under Section 8.2(c) of the Plan, each holder of an Allowed Priority Tax Claim, except to the extent that a holder of such claim agrees to a less favorable treatment, in exchange for full and final satisfaction of each such claim, will receive, from the Administrative / Priority / Other Distributions Reserve, the full unpaid amount of such Allowed Priority Tax Claim on the earliest of the following dates:  (i) on or as soon as practicable after the Effective Date, (ii) on or as soon as practicable after the date such Allowed Priority Tax Claim becomes an Allowed Claim, and (iii) the date such Allowed Priority Tax Claim is payable under applicable non-bankruptcy law.

91.     Thus, the treatment of priority claims under the Plan satisfies the requirements of section 1129(a)(9) of the Bankruptcy Code.

**K.    Acceptance by at Least One Impaired Class (Section 1129(a)(10))**

92.     Section 1129(a)(10) of the Bankruptcy Code requires as a condition of confirmation that if a class of claims is impaired under the plan, at least one class of claims that is impaired under the plan has accepted the plan, determined without including any acceptance of the plan by any insider.  *See* 11 U.S.C. § 1129(a)(10).  The voting members of Class 2 are impaired and have voted in favor of the Plan.  Therefore, the requirement of section 1129(a)(10) is satisfied.

L.    **The Plan Is Feasible (Section 1129(a)(11))**

93.    Section 1129(a)(11) of the Bankruptcy Code provides that a plan may be confirmed only if "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtors or any successor to the debtors under the plan, unless such liquidation or reorganization is proposed in the plan."  11 U.S.C. § 1129(a)(11).

94.    Courts generally have held that the determination of the feasibility requirement contemplates "'the probability of actual performance of the provisions of the plan.'"[26]  Only a reasonable assurance of success is required.[27]  Further, "a relatively low threshold of proof will satisfy § 1129(a)(11) so long as adequate evidence supports a finding of feasibility."[28]

95.    The completion of the Debtors' liquidation is proposed in the Plan and no further financial reorganization of the Debtors is contemplated.  The Debtors anticipate the Liquidating Trust having sufficient funds available as of the Effective Date to pay all claims and expenses that are required to be paid on the Effective Date under the Plan (including Administrative Claims, Priority Tax Claims, and Priority Non-Tax Claims).  The Liquidating Trust will also have the $750,000 Liquidating Trust Funding, a potential $250,000 GUC Funding Reserve, and an available

---

[26]    *Clarkson v. Cooke Sale & Serv. Co. (In re Clarkson)*, 767 F.2d 417, 420 (8th Cir. 1985) (quoting *Chase Manhattan Mortg. & Realty Tr. v. Bergman (In re Bergman)*, 585 F.2d 1171, 1179 (2d Cir. 1978)).  "The test is whether the things which are to be done after confirmation can be done as a practical matter under the facts."  *Id.*; *see also In re Orlando Investors, L.P.*, 103 B.R. 593, 600 (Bankr. E.D. Pa. 1989) ("Feasibility does not require that substantial consummation of the plan be guaranteed; rather the plan proponent must demonstrate that there be a reasonable assurance of compliance with plan terms.").

[27]    *In re T-H New Orleans Ltd P'ship*, 116 F.3d 790, 801 (5th Cir. 1997) (citations omitted) ("[T]he [bankruptcy] court need not require a guarantee of success . . . , [o]nly a reasonable assurance of commercial viability is required.");  *Kane v. Johns-Manville Corp.*, 843 F.2d 636, 649 (2d Cir. 1988) ("[T]he feasibility standard is whether the plan offers a reasonable assurance of success. Success need not be guaranteed.");  *In re Lakeside Glob. II, Ltd.*, 116 B.R. 499, 506 (Bankr. S.D. Tex. 1989)  (noting that the feasibility standard "has been slightly broadened and contemplates whether the debtor can realistically carry out its plan").

[28]    *In re Prussia Assocs.*, 322 B.R. 572, 584 (Bankr. E.D. Pa. 2005); *Tribune*, 464 B.R. at 185.

$250,000 Liquidating Trust Funding Contribution by the Prepetition Lenders under the Plan.[29]

Thus, section 1129(a)(11) of the Bankruptcy Code is satisfied.

**M.**  **Payment of Certain Fees (Section 1129(a)(12))**

96.     Section 1129(a)(12) of the Bankruptcy Code requires that certain fees listed in 28

U.S.C. § 1930, determined by the Court at the hearing on confirmation of a plan, be paid or that

provision be made for their payment.  *See* 11 U.S.C. § 1129(a)(12).  All outstanding fees payable

to the Office of the United States Trustee under 28 U.S.C. § 1930 that have not been paid as of the

Effective Date will be paid by the Debtors in Cash on the Effective Date (or when otherwise due

in the ordinary course).  *See* Plan, Section 19.1.  Consequently, section 1129(a)(12) of the

Bankruptcy Code is satisfied.

**N.**  **Continuation of the Debtors' Obligations to
        Pay Retiree Benefits (Section 1129(a)(13))**[30]

97.     Section 1129(a)(13) of the Bankruptcy Code requires that a plan provide for the

continuation of retiree benefits at levels established by agreement or by court order pursuant to

section 1114 of the Bankruptcy Code, for the duration of the period that the debtor has obligated

itself to provide such benefits.  *See* 11 U.S.C. § 1129(a)(13).  The Debtors have no retiree benefit

plans within the meaning of section 1129(a)(13) of the Bankruptcy Code.

**O.**  **The Plan Satisfies the "Cramdown" Requirements of Section 1129(b)(1)**

98.     Section 1129(b)(1) of the Bankruptcy Code provides that, if all applicable

requirements of section 1129(a) are met other than section 1129(a)(8), a plan may be confirmed

---

[29]   Pursuant to Section 14.2 of the Plan, the Liquidating Trust Asset Proceeds derived from Shared Assets and Causes of Action (subject to approval by the Liquidating Trust Oversight Committee) may also be used to fund the administration of the Liquidating trust and pay Liquidating Trust Expenses.

[30]   The remaining elements of section 1129(a)—namely, subsections (a)(14) (domestic obligations), (15) (individual debtors), and (16) (nonprofit entities)—are inapplicable to the Debtors and will not be discussed.  *See* 11 U.S.C. § 1129(a)(14), (a)(15), and (a)(16).

so long as the requirements set forth in section 1129(b) are satisfied.  To confirm a plan that has not been accepted by all impaired classes (thereby failing to satisfy section 1129(a)(8) of the Bankruptcy Code), the debtor must show that the plan does not "discriminate unfairly" and is "fair and equitable" with respect to the nonaccepting impaired classes.[31]

99.     As discussed herein, Class 2 (Prepetition Lenders Secured Claims) has voted in favor of the Plan.  Class 4 (Unsecured Claims) has voted against the Plan.  Classes 5 (Intercompany Claims), 6 (Intercompany Interests) and 7 (Interests) are not entitled to any recovery and thus are deemed to have rejected the Plan.  To confirm the Plan, the Debtors must satisfy the Bankruptcy Code's "cramdown" requirements as to Classes 4, 5, 6, and 7 (the "Deemed Rejecting Classes").

100.     The Debtors note that nearly all voting creditors submitted their Ballots prior to the settlement reached by and among the Debtors, the Prepetition Agent, the Prepetition Lenders, and the Committee that is embodied in the Plan, as amended, being presented for confirmation.  As discussed herein, general unsecured creditors will receive substantially more favorable treatment under the amended Plan, and the Debtors believe that if the Voting Deadline were to be extended further, materially more Class 4 members would vote in favor of the Plan, as amended.  Nonetheless, to minimize further delays and administrative costs associated with re-solicitation, the Debtors are seeking to have the Plan confirmed and crammed down on Class 4.

### i.    The Plan Does Not Unfairly Discriminate Against the Deemed Rejecting Classes

---

[31]    11 U.S.C. § 1129(b); *see also John Hancock Mut. Life Ins. Co. v. Route 37 Bus. Park Assocs.*, 987 F.2d 154, 157 n.5 (3d Cir. 1993); *Zenith*, 241 B.R. at 105 (explaining that "[w]here a class of creditors or shareholders has not accepted a plan of reorganization, the court shall nonetheless confirm the plan if it 'does not discriminate unfairly and is fair and equitable.'").

101.    The Bankruptcy Code does not provide a standard for determining when "unfair discrimination" exists.[32]   Rather, courts typically examine the facts and circumstances of the particular case to determine whether unfair discrimination exists.[33]   In general, courts have held that a plan unfairly discriminates in violation of section 1129(b)(1) of the Bankruptcy Code only if it provides materially different treatment for creditors and interest holders with similar legal rights without compelling justifications for doing so.[34]   A threshold inquiry to assessing whether a proposed plan of reorganization unfairly discriminates against a dissenting class is whether the dissenting class is equally situated to a class allegedly receiving more favorable treatment.[35]

102.    The Court should find that the Plan does not unfairly discriminate against the Deemed Rejecting Classes. There are no equally situated classes that are receiving more favorable treatment under the Plan, and consequently there is no discrimination against the Deemed Rejecting Classes.

---

[32]    *See In re 203 N. LaSalle St. P'ship*, 190 B.R. 567, 585 (Bankr. N.D. Ill. 1995) (noting "the lack of any clear standard for determining the fairness of a discrimination in the treatment of classes under a Chapter 11 plan" and that "the limits of fairness in this context have not been established"), *rev'd on other grounds*, 526 U.S. 434 (1999).

[33]    *See Genesis Health Ventures,.* 266 B.R. at 611 ("The hallmarks of the various tests have been whether there is a reasonable basis for the discrimination, and whether the debtor can confirm and consummate a plan without the proposed discrimination."); *see also In re 222 Liberty Assoc.*, 108 B.R. 971, 990-991 (Bankr. E.D. Pa. 1990) ; *In re Johns-Manville Corp.*, 68 B.R. 618, 636 (Bankr. S.D.N.Y. 1986) ("The language and legislative history of the statute provides little guidance in applying the 'unfair discrimination' standard . . . ."), *aff'd*, 843 F.2d 636 (2d Cir. 1988); *In re Freymiller Trucking, Inc.*, 190 B.R. 913, 916 (Bankr. W.D. Okla. 1996) (holding that a determination of unfair discrimination requires a court to "consider all aspects of the case and the totality of all the circumstances"); *In re Aztec Co.*, 107 B.R. 585, 589 (Bankr. M.D. Tenn. 1989) (noting that courts "have recognized the need to consider the facts and circumstances of each case to give meaning to the proscription against unfair discrimination").

[34]    *See In re Lernout & Hauspie Speech Prods., N.V.*, 301 B.R. 651, 661–62 (Bankr. D. Del. 2003) (permitting different treatment of two classes of similarly situated creditors upon a determination that the debtors showed a legitimate basis for such discrimination), *aff'd*, 308 B.R. 672 (D. Del. 2004); *In re Idearc Inc.*, 423 B.R. 138, 171 (Bankr. N.D. Tex. 2009) ("[T]he unfair discrimination standard prevents creditors and equity interest holders with similar legal rights from receiving materially different treatment under a proposed plan without compelling justifications for doing so.").

[35]    *See In re Aleris Int'l*, No. 09-10478 (BLS), 2010 Bankr. LEXIS 2997, at *94–96 (Bankr. D. Del. May 13, 2010) (citing *In re Armstrong World Indus., Inc.*, 348 B.R. 111, 121 (D. Del. 2006)).

###### ii.     The Plan Is Fair and Equitable as to the Deemed Rejecting Classes

103.    A plan is "fair and equitable" with respect to an impaired class of claims or interests that rejects a plan (or is deemed to reject a plan) if it follows the "absolute priority" rule.[36]  This requires that an impaired rejecting class of claims or interests either be paid in full or that a class junior to the impaired accepting class not receive any distribution under a plan on account of its junior claim or interest.[37]

104.    No class junior to the Deemed Rejecting Classes is entitled to any distributions under the Plan.  Further, as noted above, there is no other class equally situated to the Deemed Rejecting Classes that will receive more favorable treatment under the Plan.  The foregoing treatment conforms to the absolute priority rule and is therefore fair and equitable within the meaning of section 1129(b).

105.    Accordingly, the Plan satisfies the cramdown requirements of section 1129(b) of the Bankruptcy Code and may be confirmed notwithstanding the rejection of the Plan by the Deemed Rejecting Classes.

### P.     The Plan's Purpose is Consistent with the Bankruptcy Code (Section 1129(d))

106.    Section 1129(d) of the Bankruptcy Code provides that a court may not confirm a plan if the principal purpose of the plan is to avoid taxes or the application of section 5 of the Securities Act of 1933.  11 U.S.C. § 1129(d).  The principal purpose of the Plan is to provide for an orderly liquidation of the estate's remaining assets and distribute the net proceeds thereof to the

---

[36]    *Bank of Am. v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 441–42 (1999) ("As to a dissenting class of impaired unsecured creditors, such a plan may be found to be 'fair and equitable' only if the allowed value of the claim is to be paid in full, or, in the alternative,  if 'the holder of any claim or interest that is junior to the claims of such [impaired unsecured] class will not receive or retain under the plan on account of such junior claim or interest any property.'  That latter condition is the core of what is known as the 'absolute priority rule.'" (quoting 11 U.S.C. § 1129(b)(1), (b)(2)(B)).

[37]    *Id.*

Debtors' creditors.  The Plan's purpose is not avoidance of taxes or avoidance of the requirements of section 5 of the Securities Act of 1933, and there has been no filing by any governmental agency asserting such avoidance.

<div align="center">

**V.**

**MODIFICATIONS TO THE PLAN ONLY BENEFIT,
AND DO NOT ADVERSELY AFFECT, HOLDERS OF UNSECURED CLAIMS
AND DO NOT REQUIRE RESOLICITATION.**

</div>

107.    The Debtors have made certain modifications to the Plan to embody the global settlement among the Debtors, the Prepetition Agent, the Prepetition Lenders, and the Committee and address certain concerns and issues raised by the Objections/Statements and certain informal comments.  These modifications serve to substantially increase the distributions to unsecured creditors.  Section 1127(a) of the Bankruptcy Code provides a plan proponent with the right to modify the plan "at any time" before confirmation.  Section 1127(d) of the Bankruptcy Code provides that all stakeholders that previously accepted the plan also are deemed to have accepted the modified plan if such modifications are found to not adversely change the treatment of the claims in the voting classes.  11 U.S.C. § 1127(d); Fed. R. Bankr. P. 3019.  Courts routinely allow plan proponents to make non-prejudicial changes to a plan without requiring the proponent to re-solicit the plan for acceptances.  *See, e.g.*, *Enron Corp. v. New Power Co. (In re New Power Co.)*, 438 F.3d 1113, 1117-18 (11th Cir. 2006).  The Debtors submit that all of the modifications to the Plan, as reflected in the amended Plan being filed concurrently herewith, do not adversely affect the recoveries of the Debtors' creditors.  In fact, the Holders of Allowed Class 4 Claims (Unsecured Claims) will receive a much greater recovery under the Plan, with the agreement and consent of the Prepetition Agent and Prepetition Lenders.  The Prepetition Agent and the Prepetition Lenders, comprising the only other Voting Class (Class 2), have consented to the modifications in the amended Plan.

108.    In light of these modifications, the Debtors are not required to re-solicit the Plan and all creditors that previously voted to accept the First Amended Plan should be deemed to accept the Plan.

## VI.

## REPLY TO OBJECTIONS AND INFORMAL COMMENTS

109.    The Debtors received several objections and informal responses to the Plan, which the Debtors believe have been resolved as set forth below.

110.    **UST:**  The Debtors revised the Plan to exclude non-officer employees of the Debtors from the scope of the Exculpated Parties, and based on further discussions with the UST, the Debtors are amenable to clarifying the exculpation further, as described above, in the Confirmation Order.

111.    **Sapientes/Wakefield:**   The Debtors are continuing to consider appropriate language to preserve rights of Sapientes/Wakefield with respect to collections of accounts receivable that were previously sold by the Debtors.  The Plan expressly acknowledges that the Non-Estate Patient Receivables are not property of the Debtors or Estates.  *See, e.g.,* Plan Section 3 (definitions of Available Cash and Distributable/Remaining Assets expressly excluding Non-Estate Patient Receivables; definition of Non-Estate Patient Receivables expressly providing said property is not property of the Debtors), Section 4.8(d) ("The Non-Estate Patient Receivables are not property of the Debtors' estate and therefore any identifiable cash proceeds paid to the Debtors on account of such Non-Estate Patient Receivables will not be used to fund any amounts pursuant to the Combined Plan and Disclosure Statement.").

112.    While the parties continue to discuss the appropriate language for the Confirmation Order, the Debtors do note that certain requests are unacceptable to the Debtors and the Prepetition

Lenders, including a requested claw back mechanism. In particular response to the demand for a motion to be filed by the Liquidating Trustee to close any bank accounts, the imposition of an additional hurdle for the Liquidating Trustee (with limited resources) beyond the mechanisms previously agreed to or may be agreed to is unjustified under all the circumstances. The Debtors are amenable to including in the Confirmation Order a provision for the Liquidating Trustee to provide 14 days' notice to Sapientes/Wakefield of any applicable accounts that the Liquidating Trustee proposes to close. The Debtors believe that the interests of Sapientes/Wakefield in relation to Non-Estate Patient Receivables are adequately protected, but will continue to attempt to resolve issues raised by Sapientes/Wakefield.

113. **Former Employee Objectors:** The claims of the Former Employee Objectors have been resolved by stipulation with an aggregate allowed Class 3 Other Secured Claim against Debtor American Physician Partners, LLC in the amount of $600,000, which shall be entitled to cash payment of such amount under the Plan.

114. **Cascade:** This Objection is moot given that Cascade is the buyer of the Debtors' remaining accounts receivable and is waiving claims against the Debtors in connection with such sale. Cascade has withdrawn its Objection [D.I. 699].

115. **Ad Hoc Providers Committee:** The Debtors have revised the Plan and Confirmation Order to include certain reservations of rights requested by the Ad Hoc Providers Committee.

116. **New Mexico Plaintiffs:** The Debtors acknowledge and accept that the New Mexico Plaintiffs opted-out of the Third Party Release (through its Preliminary Response and Reservation of Rights) and will not be Releasing Parties, and will include a provision to that effect in the Confirmation Order.

117.   **United States:**  The Debtors are prepared to include language in the Confirmation Order to preserve rights of the United States and to reasonably address other issues raised by the United States.  The Debtors will continue to work with counsel to the United States in an effort to reach agreement on the remaining objections.

118.   However, in the event that an agreement cannot be reached, the Debtors respond as follows to the United States' objections:

(i)   Objection: The Plan purportedly does not comply with Code sections 1129(a)(9) and 511 by not expressly providing for the payment of any applicable interest on account of federal tax claims pursuant to said Code sections.   Debtors' Response:  The Plan does not fail on these points.  Dependent on the circumstances of the particular tax claims, the I.R.S. is not unequivocally entitled to post-petition or post-Effective Date interest on account of their asserted (but not yet Allowed) tax claims.[38]  Notwithstanding the foregoing, in the interest of facilitating a resolution, the Debtors are amenable to including language in the Confirmation Order providing that Allowed Priority Tax Claims will be entitled to postpetition and/or post-Effective-Date interest to the extent payable under applicable law, including Code section 511 as may be applicable.

---

[38]   *See, e.g., In re Bake-Line Grp., LLC*, 2019 Bankr. LEXIS 1946 (Bankr. D. Del. July 1, 2019) ("Finally, the IRS does not have an allowed claim for interest pursuant to sections 502(b)(2) and (i).… Section 502(b)(2) provides that claims for unmatured interest that accrue after the bankruptcy filing cannot be allowed claims.  Accordingly, section 502(b)(2) prohibits payment of postpetition interest on prepetition unsecured claims, including prepetition tax claims."); *In re Burford*, 231 B.R. 913 (Bankr. N.D. Tex. 1999) ("in the event of an objection, the court could not allow the government's claim to the extent it included the post-petition interest, even though non-bankruptcy law provides the government with a right to that payment"); *In re White Farm Equip., Co.*, 146 B.R. 736, 738-39 (Bankr. N.D. Ill. 1992) ("The Plan did not provide for deferred cash payments for the IRS. It provided for payment as soon as the IRS' claim became an allowed claim. The purpose of making deferred cash payments on a priority claim is to increase cash flow and thus increase the prospect of a successful reorganization. Here, no such purpose exists. White Farm's Plan is a liquidating plan that did not provide for payments over time to facilitate reorganization. The plan simply provided for payment of allowed claims at the time they became allowed. Therefore, any payments made to the IRS are not deferred payments, § 1129(a)(9)(C) is inapplicable, and the IRS is not entitled to post-confirmation interest.").

(ii)    Objection:  By imposing the Administrative Expense Bar Date, the Plan purportedly does not comply with Delaware Local Rule 3002-1(a), providing that the government is not required to file a proof of claim or an application for an administrative claim under Code section 503(b)(1) (B), (C), or (D).   Debtors' Response:  Such administrative claims bar dates in liquidating plans have been rather commonly approved by bankruptcy courts because they facilitate the prompt implementation of the plan for the benefit of the estate's creditors, especially where as here, the applicable governmental authority is informed of the liquidating case and the proposed bar date, and in the case of liquidating plans of substantially insolvent debtors, the establishment of reasonable claim bar dates (for administrative claims, rejection claims, or other claims) is in all creditors' interests because of limited post-confirmation resources and relatively limited plan implementation periods.[39]    Notwithstanding the foregoing, the Debtors will continue to try to resolve this Objection.

(iii)   Objection:  Purportedly, Plan Section 12.6 (Disallowance of Claims) may improperly expunge certain of the United States' claims without any further notice.

Debtors' Response:  The Debtors submit that provisions like Plan Section 12.6 are frequently and justifiably approved in liquidating chapter 11 cases, especially in a highly insolvent debtor case, given the need for expeditious, but reasonable, efficient and effective administration of the post-confirmation liquidation

---

[39] *See, e.g., In re INCA Ref., LLC*, 2018 Bankr. LEXIS 1086, at *45-*46 (Bankr. E.D. La. Apr. 9, 2018) (confirming chapter 11 liquidating plan with provision expressly applying the general administrative claims bar date set forth in the plan to governmental units asserting federal, state, or local tax claims).

process.[40] However, the Debtors will continue to attempt to consensually resolve this issue.

(iv)    Objection: Plan Section 14.1 (Global Settlement of Claims) is allegedly inappropriate in relation to any of the United States' claims since the Debtors have not yet filed certain federal tax returns and "the United States does not yet know the universe of its owns claims and it cannot settle what it cannot identify" (United States Objection, p. 5).  Debtors' Response: To resolve this Objection, the Debtors are amenable to including in the Confirmation Order language that Plan Section 14.1 does not apply to any claims of the IRS and/or HHS.

(v)    Objection:  The Debtors have purportedly not made the requisite showing in support of the Third Party Releases in relation to any claims of the United States against the Released Parties.  Debtors' Response: As explained above, there are sufficient and reasonable grounds for the Third Party Releases, and accordingly should be approved by the Court.

(vi)    Objection: The GUC Trust allegedly violates the priority scheme under the Bankruptcy Code: "The United States objects to any distribution from the GUC fund to any general unsecured creditor unless and until all claims of the United States that are senior in priority under the waterfall scheme of the Bankruptcy Code

---

[40] *See, e.g., In re Gems TV (USA) Ltd.*, 2010 Bankr. LEXIS 6199, at *46-*47 (Bankr. D. Del. Oct. 12, 2010) ("Unless otherwise permitted by Final Order, any Proof of Claim on account of the Debtor's rejection of an executory contract or unexpired lease pursuant to the Plan that is not filed on or before the Rejection Bar Date shall automatically be deemed a late-filed Claim that is disallowed in the Chapter 11 Case, without the need for (i) any further action by the Debtor or the Plan Administrator, as applicable, or (ii) an order of the Court, and the Holder of such Claim shall be forever barred and enjoined from asserting such Claim against the Debtor's Estate and shall not be entitled to any distribution under the Plan on account thereof."); *Chille v. United Airlines*, 2006 U.S. Dist. LEXIS 55299, at *2 (W.D. N.Y. Aug. 8, 2006) ("Under the terms of the Plan, any untimely filed claims 'shall be deemed disallowed and expunged as of the Effective Date' of the Plan.... *See Berger v. TWA (In re TWA)*, 96 F.3d 687, 690 (3d Cir. 1996) ('The bar date means just that; it is a 'drop-dead date' that bars all prepetition claimants who received the required notice').").

have been paid in full" (United States Objection, pp. 7-8)).  <u>Debtors' Response</u>: The Plan, at Sections 8.2(a) and (c) and 10.3(b), provides for the full payment of all Allowed Administrative Claims, Priority Tax Claims, and Other Secured Claims (if the cash payment treatment is selected by the Debtors under the Plan), and the Debtors, as set forth in the Plan, the Liquidation Analysis, and the DiDonato Declaration, have demonstrated that the Plan is feasible.  Under such circumstances, the GUC Cash Settlement, to be paid to general unsecured creditors other than the Prepetition Lenders on account of their deficiency claims, is appropriately set aside for such creditors' benefit (as is often done in liquidating plans), as agreed to as part of the global settlement among the Debtors, the Prepetition Lenders, and the Committee.

(vii)    <u>Objection</u>: Allegedly, the Plan improperly grants prospective relief by providing "[a]ny abatement, interruption, or tolling of the statutes of limitations pertaining to the Liquidating Trust Assets in favor of the Debtors or the Estates shall also apply to the benefit of the Liquidating Trustee" (United States Objection, p. 8 (quoting Plan Section 14.7)).  <u>Debtors' Response</u>:  The Debtors do not view Plan Section 14.7 as impermissible or even controversial.  It is logical and reasonable that, post-Effective Date the Liquidating Trustee be subject to any applicable tolling of the statutes of limitation that were in favor of the Debtors and Estates pre-confirmation, because the Liquidating Trustee is the Estates' representative for the purposes of the Plan as of the Effective Date (*e.g.*, Plan Section 14.7) and as such, succeeds the Debtors as beneficiaries of the tolling.

(viii)   Objection:  The United States objects to the Plan to the extent it fails to preserve the setoff and recoupment rights of the United States.  Debtors' Response: There is no Plan provision expressly affecting third parties' setoff and recoupment rights in general.  To the extent it had, any such Plan provision would be permissible under the Bankruptcy Code.  *See, e.g., In re Richards*, 616 B.R. 879, 883 (Bankr. S.D. Ind. 2020) (debtor's plan can include provision limiting setoff rights). However, to resolve this issue, the Debtors are amenable to having language in the Confirmation Order that any setoff and recoupment rights of the United States, to the extent valid and enforceable under applicable law, are preserved.

(ix)   Objection: The United States objects to the rejection claims bar date provided for under the Plan (generally, 30 days after the Effective Date) "to the extent that it effectively shortens the Government Bar Date for federal creditors" (United States Objection, p. 10).  Debtors' Response:  As discussed above regarding preceding Objection (iv), bar dates in liquidating plans (whether for rejection claims or administrative claims or other claims) are commonly approved by bankruptcy courts because they facilitate the prompt implementation of the plan and subsequent case closing for the general benefit of the estate's creditors, particularly, where as here, the applicable governmental authority is informed of the liquidating case and the proposed bar date.[41]  Notwithstanding the foregoing, to

---

[41] *See, e.g., In re Gems TV (USA) Ltd.*, 2010 Bankr. LEXIS 6199, at *46-*47 (Bankr. D. Del. Oct. 12, 2010) ("Unless otherwise permitted by Final Order, any Proof of Claim on account of the Debtor's rejection of an executory contract or unexpired lease pursuant to the Plan that is not filed on or before the Rejection Bar Date shall automatically be deemed a late-filed Claim that is disallowed in the Chapter 11 Case, without the need for (i) any further action by the Debtor or the Plan Administrator, as applicable, or (ii) an order of the Court, and the Holder of such Claim shall be forever barred and enjoined from asserting such Claim against the Debtor's Estate and shall not be entitled to any distribution under the Plan on account thereof.").

facilitate the confirmation of the Plan, the Debtors are amenable to including in the Confirmation Order language that the rights of the IRS and HHS to assert any of their section 365 rejection claims, whenever filed, are/were timely filed are preserved.

(x)    <u>Objection</u>: Purportedly, there is no basis for the Debtors' requested waiver of the 14-day stay under Bankruptcy Rule 3020(e) and 6004(g).    <u>Debtors' Response</u>: As explained above, there is good and sufficient basis for the requested stay waivers, given a global settlement has been reached among the key constituencies (which settlement parties all favor the stay waivers) and expeditiously having the Plan become effective, Distributions being made, and the Liquidating Trustee liquidating and monetizing the remaining assets are in the best interests of the Estates and their creditors.

## VII.

## <u>WAIVER OF THE STAY OF THE CONFIRMATION ORDER</u>

119.    Bankruptcy Rule 3020(e) provides that "[a]n order confirming a plan is stayed until the expiration of 14 days after the entry of the order, unless the Court orders otherwise."  Fed. R. Bankr. P. 3020(e).  Bankruptcy Rules 6004(h) and 6006(d) provide similar stays to orders authorizing the use, sale, or lease of property (other than cash collateral) and orders authorizing a debtor to assign an executory contract or unexpired lease under section 365(f) of the Bankruptcy Code.  Each rule also permits modification of the imposed stay upon court order.

120.    The Debtors submit that good cause exists for waiving and eliminating any stay of the Confirmation Order pursuant to Bankruptcy Rules 3020, 6004, and 6006 so that the Confirmation Order will be effective immediately upon its entry.  The Debtors submit that, based

on the circumstances of these Chapter 11 Cases discussed above (including the global settlement among the key constituencies reflected therein), it is reasonable and amply justified for the Debtors and interested parties to proceed with implementing the Plan and to provide, as promptly as possible, distributions to the Debtors' creditors.

## VIII.

## <u>CONCLUSION</u>

**WHEREFORE**, for the reasons set forth in this Memorandum, the Debtors respectfully submit that the Plan fully satisfies all applicable requirements of the Bankruptcy Code and requests that the Court enter an order confirming the Plan substantially in the form attached hereto.

*[Remainder of Page Intentionally Left Blank]*

Dated:  January 4, 2023                    PACHULSKI STANG ZIEHL & JONES LLP


                                           */s/ Laura Davis Jones*
                                           Laura Davis Jones (DE Bar No. 2436)
                                           David M. Bertenthal (CA Bar No. 167624)
                                           Timothy P. Cairns (DE Bar No. 4228)
                                           Peter J. Keane (DE Bar No. 5503)
                                           919 North Market Street, 17th Floor
                                           P.O. Box 8705
                                           Wilmington, Delaware 19899-8705 (Courier 19801)
                                           Telephone:  302-652-4100
                                           Facsimile:  302-652-4400
                                           Email:  ljones@pszjlaw.com
                                                   dbertenthal@pszjlaw.com
                                                   tcairns@pszjlaw.com
                                                   pkeane@pszjlaw.com

                                           *Counsel for Debtors and Debtors in Possession*