IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>AMERICAN PHYSICIAN PARTNERS, LLC, *et al.,*<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 23-11469 (BLS)<br><br>(Jointly Administered)<br><br>Ref. Docket No. 805 |

**STATEMENT OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS IN SUPPORT OF CONFIRMATION OF THE SECOND AMENDED COMBINED DISCLOSURE STATEMENT AND PLAN OF LIQUIDATION OF AMERICAN PHYSICIAN PARTNERS, LLC AND ITS AFFILIATED DEBTORS UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

The Official Committee of Unsecured Creditors (the "Committee") of the debtors and debtors-in-possession in the above-captioned cases (referenced alternatively herein as the "Debtors" or the "Company"), by and through its undersigned counsel, respectfully submits this statement (the "Statement") in support of confirmation of the *Second Amended Combined Disclosure Statement and Plan of Liquidation of American Physician Partners, LLC and its Affiliated Debtors Under Chapter 11 of the Bankruptcy Code* [Dkt. No. 805] dated January 2, 2024 (the "Amended Plan").[2] In support of its Statement, the Committee represents as follows:

**STATEMENT IN SUPPORT**

**I.    The Amended Plan**

1.    As a result of extensive, good-faith and arm's length negotiations by and among the Committee, the Debtors, the Prepetition Agent, and the Prepetition Lenders (the "Settling

---

[1] A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/AmericanPhysicianPartners. The location of American Physician Partners, LLC's principal place of business and the Debtors' service address in these Chapter 11 Cases is 5121 Maryland Way, Suite 300, Brentwood, TN 37027.
[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Amended Plan.

Parties"), the Settling Parties have agreed to the terms of a consensual Amended Plan. The Committee believes that all of the modifications set forth in the Amended Plan comply with the Bankruptcy Code and are in the best interest of general unsecured creditors. Furthermore, the enhancements set forth in the Amended Plan are substantial and, among other things, settle potential protracted, uncertain and expensive litigation by and among the parties so as to enable the Debtors and Liquidating Trustee to wind down the Estates for the benefit of creditors as swiftly as possible.

2.  Under the Amended Plan, among other things, (i) the Cash distribution available to Holders of Class 4 Claims (excluding the Holders of the Prepetition Lenders Deficiency Claim) has increased from $250,000 to $2 million (subject to reduction for the $250,000 GUC Funding Reserve); (ii) funding for the Liquidating Trust has increased from $75,000 to $750,000, plus an additional (a) up to $250,000 GUC Funding Reserve and (b) $250,000 of available Liquidating Trust Funding Contribution by the Prepetition Lenders to fund the administration and costs and expenses of the Liquidating Trust pursuant to the terms of the Plan[3]; and (iii) the scope of the Released Parties was narrowed with releases for certain officers of the Debtors being removed from the Amended Plan.

3.  In addition, Holders of Class 4 Claims and Holders of the Prepetition Lenders Deficiency Claim will now split the net proceeds of the Shared Assets and Causes of Action 40%/60%, respectively. The Shared Assets and Causes of Action include: (a) all claims and Causes of Action of the Debtors and Estates against certain non-released parties; (b) all claims and causes of action of the Prepetition Agent and the Prepetition Lenders against certain non-released parties; (c) all claims and causes of action commenced by Debtors prepetition; (d) all

---

[3] Proceeds of the Shared Assets and Causes of Action may also be used under certain circumstances to fund the administration of the Liquidating Trust.

refunds and other recoveries owing to the Debtors or Estates from any insurance companies; and (e) claims for tax refunds and employee retention credits payable to the Debtors or the Estates. These assets could potentially result in significant recoveries for the Liquidating Trust. Significantly, absent settlement, almost all of the proceeds from these assets would have been distributed to the Prepetition Lenders in respect of their prepetition liens therein and/or overwhelming deficiency claim.

4.    In assessing the settlement that is embodied in the Amended Plan, the Committee carefully examined all potential alternatives and concluded that the transactions set forth in the Amended Plan were the most favorable for unsecured creditors. As a result, the Committee respectfully requests that the Court enter an order confirming the Amended Plan.

**II.    Response to Objections**

*A. Limited Objection Filed by Sapientes Funding II, LLC and Wakefield & Associates, LLC, f.k.a. Wakefield & Associates, Inc. [D.I. 687]*

5.    On December 20, 2023, Sapientes Funding II, LLC and Wakefield & Associates, LLC, f.k.a. Wakefield & Associates, Inc. (collectively, "Sapientes") filed an objection to the Plan. Among other objections, Sapientes argues that to ensure that Allowed Administrative Claims are paid in full, the confirmation order must provide language that, in the event that distributions are made to the Holders of Allowed Class 2 Claims and there are insufficient funds to pay any Allowed Administrative Claim of Sapientes in full, Holders of Allowed Class 2 Claims shall remit Cash to the Liquidating Trustee in an amount necessary to fully satisfy any Allowed Administrative Claim of Sapientes. *See* D.I. 687, ¶¶ 16-20.

6.    Sapientes seems to implicitly raise concerns over the feasibility of the Amended Plan. Section "1129(a)(11) does not require a guarantee of the plan's success; rather the proper standard is whether the plan offers a 'reasonable assurance' of success." *In re Indianapolis*

3

*Downs*, 486 B.R. 286, 298 (Bankr. D. Del. 2013); *see also In re W.R. Grace & Co.*, 729 F.3d 332, 349 (3d Cir. 2013) ("[Debtor] needed only to demonstrate a reasonable likelihood of success, not an absolute certainty."); *In re W.R. Grace & Co.*, 475 B.R. 34, 115 (Bankr. D. Del. 2012) ("In making this finding, the bankruptcy court need not require a guarantee of success, but rather only must find that 'the plan present[s] a workable scheme of organization and operation from which there may be reasonable expectation of success.' ") (citations omitted). This is a low threshold. *See In re Emerge Energy Servs. LP*, 2019 WL 7634308, at *15 (Bankr. D. Del. Dec. 5, 2019). Speculative prospects of failure cannot defeat feasibility. *See In re Drexel Burnham*, 138 B.R. 723, 762 (Bankr. S.D.N.Y. 1992) ("The mere prospect of financial uncertainty cannot defeat confirmation on feasibility grounds ....") (citing *In re U.S. Truck Co.*, 47 B.R. 932, 944 (E.D. Mich. 1985), *aff'd*, 800 F.2d 581 (6th Cir. 1986)).

7. In order to confirm the Amended Plan, the Debtors are not required to provide an absolute guarantee to their creditors that the reserves for the Debtors' estimated Allowed Administrative Claims will be sufficient to satisfy every Allowed Administrative Claim. The Debtors are required to present evidence providing reasonable assurance that the Amended Plan is feasible, and, thus, that its reserves are reasonably assured to provide sufficient funds to pay all Allowed Administrative Claims. Debtors continue to incur administrative expenses until the occurrence of the effective date of a confirmed chapter 11 plan. Plans are regularly confirmed in this District containing administrative expense bar dates that occur after confirmation and the effective date of the plan. *See, e.g., In re RevitaLid Pharmaceutical Corp.*, Case No. 23-11704 (BLS) [D.I. 90, 126]; *In re Redwood Liquidating Co.;* Case No. 22-10621 (BLS) [D.I. 425, 430]; *In re RentPath Holdings, Inc.*, Case No. 20-10312 (BLS) [D.I. 812, 900]; *In re HRB Winddown, Inc.*, Case No. 19-122689 (BLS) [D.I. 609, 619]; *In re Hospital Acquisition LLC*, Case No. 19-

10998 (BLS) [D.I. 889, 893]. It is impossible to state at the confirmation hearing, with exact certainty, the amount of the administrative expense claims that will come due and guarantee payment of those claims. As such, debtors appropriately and necessarily estimate a reserve for administrative expense claims in nearly all chapter 11 cases.

8. The Debtors, in consultation with their professionals and the Prepetition Agent, will estimate their payment obligations under the Amended Plan and will ensure that sufficient funding is reserved to meet those obligations. The Administrative / Priority / Other Distributions Reserve will be funded from Available Cash of the Debtors immediately prior to the Effective Date, in an amount determined by the Debtors, subject to consultation with the Prepetition Agent, to be sufficient to pay all Administrative Claims, Priority Tax Claims, Priority Non-Tax Claims, Cash payments in satisfaction of Class 3 Claims, and any other amounts required to be funded under the Plan, including the Liquidating Trust Funding Contribution and any U.S. Trustee fees accrued or anticipated to be owed in the future until the Chapter 11 Cases are closed. Amended Plan § 3.3.

9. When determining the amounts for the reserves, the Committee understands that the Debtors chose figures that they believed reasonably approximated the aggregate amount of Allowed Administrative Claims, including amounts representing a potential for latent claims not previously identified in the cash collateral budget. *See* D.I. 822, Liquidation Analysis ¶ C.15.

10. In support of confirmation, the Debtors submitted, among other things, the *Declaration of John C. DiDonato in Support of Confirmation of the Combined Disclosure Statement and Plan of Liquidation of American Physician Partners, LLC and its Affiliated Debtors under Chapter 11 of the Bankruptcy Code* [D.I. 815] and the *Liquidation Analysis* [D.I. 822]. The Debtors' Chief Restructuring Officer attested to his belief that the Plan is

feasible and noted that the Liquidation Analysis "establishes that the Debtors and the Liquidation Trust will have sufficient funds available to meet their obligations under the Plan." *See* DiDonato Decl. ¶ 42. Likewise, the Liquidation Analysis estimates the Allowed Administrative Claims and reflects payment in full of such claims. *See* D.I. 822. The Committee submits that the Debtors have and will at the confirmation hearing present sufficient evidence to the Court to show that the Plan is feasible under section 1129(a)(11) of the Bankruptcy Code.

11. Accordingly, the Committee requests that the Court overrule the Sapientes Objection and confirm the Amended Plan without modification to the Confirmation Order.

    B. *Objection Filed by the United States [D.I. 690]*

12. On December 21, 2023, the United States, on behalf of the Internal Revenue Service ("IRS") and the Department of Health and Human Services ("HHS") filed an objection to the Plan. Among a number of objections raised, the United States argues that the establishment of the GUC Fund (now the GUC Cash Settlement in the Amended Plan) violates the priority scheme set forth in the Bankruptcy Code. *See* D.I. 690, ¶ 11. The United States objects to any distribution from the GUC Cash Settlement to general unsecured creditors "unless and until all claims of the United States that are senior in priority" have been paid in full. The Committee understands that the United States seeks to make the GUC Cash Settlement subject to a lien such that it would be entitled to payment from the GUC Cash Settlement if its alleged claims were not paid in full. Under the Amended Plan, the Prepetition Lenders through various concessions intend to fund the GUC Cash Settlement for distribution to general unsecured creditors, who would otherwise receive no distribution under the Bankruptcy Code's priority scheme as the Prepetition Lenders' secured claims are undersecured by in excess of $500 million.

13. As set forth above, the Debtors have provided adequate reserves for Administrative Claims, Priority Tax Claims, Priority Non-Tax Claims, Cash payments in satisfaction of Class 3 Claims, and any other amounts required to be funded under the Plan and have submitted sufficient evidence to support the feasibility of the Amended Plan under section 1129(a)(11) of the Bankruptcy Code.  The claims of the United States senior in priority to Class 4 general unsecured claims have been adequately reserved for by the Debtors and such claims will be paid out of those reserves consistent with the terms of the Amended Plan.  To the extent that the United States believes the reserves for its alleged claims are inadequate, it should present evidence to this Court to support its contention.  The Debtors have submitted sufficient evidence to support a finding that the Amended Plan is feasible and such evidence is all that is required of the Debtors at the juncture with respect to the claims allegedly held by the United States that are senior in priority to Class 4 general unsecured claims.  The Debtors are not required to guarantee payment of the claims of the United States.

14. Since the claims of the United States have been properly reserved for, the United States cannot be entitled to a lien on the GUC Cash Settlement, and the Court should not countenance such a result.  The Liquidating Trustee must not be prevented from distributing amounts in the GUC Cash Settlement until all claims of the United States senior in priority to general unsecured claims are paid in full.  General unsecured creditors cannot be left at the mercy of the United States government to liquidate its claims and seek payment of the same.  If the Liquidating Trustee is in a position to make distributions to Holders of Allowed Class 4 Claims (other than Holders of the Prepetition Lenders Deficiency Claim) from the GUC Cash Settlement or other Liquidating Trust Assets before the claims of the United States have been

Allowed, the Liquidating Trustee must be permitted to do so in order to not delay distributions to potentially thousands of general unsecured creditors.

15.     Though the United States also seemingly attempts to raise concerns related to "vertical gifting" in violation of the absolute priority rule, the body of law that prohibits the gifting of a distribution from a senior class of creditors in a manner that skips over an intermediary junior class of dissenting creditors in violation of the absolute priority rule is inapplicable here. *See, e.g., In re Armstrong World Indus., Inc.,* 432 F.3d 507 (3d Cir. 2005). The absolute priority rule is not implicated as there is no higher priority dissenting creditor that is not being paid in full under the Amended Plan – there simply is no class skipping in the Amended Plan.  The Amended Plan provides for the full payment of all Allowed Administrative Claims, Priority Tax Claims, Priority Non-Tax Claims, and Prepetition Other Secured Claims. As such, each Allowed Administrative Claim, Priority Tax Claim, Priority Non-Tax Claim, and Prepetition Other Secured Claim is unimpaired.  The provision of a cash distribution to general unsecured creditors under the Amended Plan does not implicate the absolute priority rule.

16.     Accordingly, the Committee requests that the Court overrule the United States' objection and confirm the Amended Plan without modification to the Confirmation Order.

## **CONCLUSION**

WHEREFORE, the Committee respectfully requests that the Court (i) confirm the Debtors' Amended Plan and enter the Confirmation Order, as proposed by the Debtors; (ii) overrule the objections filed by Sapientes and the United States; and (iii) grant any such other and further relief as the Court may deem just and appropriate.

| | |
|---|---|
| Dated: January 8, 2024<br>Wilmington, Delaware | */s/ Morgan L. Patterson*<br>**WOMBLE BOND DICKINSON (US) LLP**<br>Donald J. Detweiler (DE Bar No. 3087)<br>Morgan L. Patterson (DE Bar No. 5388)<br>Elazar A. Kosman (DE Bar No. 7077)<br>1313 North Market Street, Suite 1200<br>Wilmington, Delaware 19801<br>Telephone: (302) 252-4320<br>Facsimile: (302) 252-4330<br>Email: don.detweiler@wbd-us.com<br>         morgan.patterson@wbd-us.com<br>         elazar.kosman@wbd-us.com<br><br>- and -<br><br>**KILPATRICK TOWNSEND & STOCKTON LLP**<br>Todd C. Meyers (*admitted pro hac vice*)<br>David M. Posner (*admitted pro hac vice*)<br>Kelly E. Moynihan (*admitted pro hac vice*)<br>The Grace Building<br>1114 Avenue of the Americas<br>New York, New York 10036<br>Telephone: (212) 775-8700<br>Facsimile: (212) 775-8800<br>Email: tmeyers@ktslaw.com<br>         dposner@ktslaw.com<br>         kmoynihan@ktslaw.com<br><br>*Counsel to the Official Committee*<br>*of Unsecured Creditors* |